# In the United States Court of Federal Claims

| | |
|---|---|
| **In re DOWNSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS** ) ) ) ) ) ) ) **THIS DOCUMENT RELATES TO:** ) ) **ALL DOWNSTREAM CASES** ) | Sub-Master Docket No. 1:17-9002L |

**JOINT STATUS REPORT REGARDING THE PARTIES MEET AND CONFER ABOUT PROPOSED TEST PROPERTIES**

In accordance with the Court's instruction during the March 1, 2018 hearing and in compliance with the Court's March 2, 2018 Order, the parties have continued to negotiate test property selection and on March 14, 2018 had a forty-five-minute telephonic meet and confer. Although the parties are continuing to discuss a proposed discovery plan and deposition witness list as directed in the Court's March 2, 2018 Order, they have reached an impasse on test property selection.

The disputes are as follows:

- The number of test properties. Plaintiffs propose 16 test properties. The United States proposes no more than 14 test properties. The United States opposes the inclusion of the properties owned by the Salos ("Salo"), the Miltons ("Milton"), and Welling as unnecessary and redundant. If these properties are included, the United States withdraws its previous proposal of two test properties, owned by the Castroparedeses ("Castroparedes") and the Hollises ("Hollis"). Plaintiffs wish to include all of these properties as test properties.

- The inclusion of Memorial SMC Investment 2013 LP. ("Memorial SMC"), as a test property. Plaintiffs assert that Memorial SMC is an appropriate test property. The United States disagrees because the property will necessitate a substantial discovery burden during a short discovery period. Other similarly-situated commercial properties exist that present a more reasonable discovery burden. The United States

has proposed Memorial Turkey Creek, LTD ("Memorial Turkey Creek") as an alternative to Memorial SMC.

The United States specifically objects to the inclusion of Memorial SMC, and *all* five of Milton, Castroparedes, Hollis, Salo, and Welling as redundant and unnecessary. The United States does not oppose the inclusion of one, but no more than three, of Milton, Castroparedes, Hollis, or Welling. It further reiterates its objection to designating more than 14 test properties. Plaintiffs decline to withdraw their proposed designation of Memorial SMC and object to the substitution of Memorial Turkey Creek, Ltd. for Memorial SMC. The following chart identifies the potential test properties:

| Plaintiff | Address | Test Property Pick | Plaintiff Type | Status |
|---|---|---|---|---|
| Aldred, Val | 835 Thornvine Ln, Houston, TX 77079 | Plaintiff | Class | Agreed |
| Azar, Philip | 3 Magnolia Bend Dr., Houston, Texas 77024 | DOJ | Individual | Agreed |
| Beyoglu, Gokhan and Jana | 107 Warrenton Dr, Houston, TX 77024 | Plaintiff | Class | Agreed |
| Castroparedes, Jessica and Carlos | 935 Ivy Wall Dr, Houston, TX 77079 | Plaintiff | Individual | U.S. Objects |
| Cutts, Paul and Dana | 311 Blue Willow Dr, Houston, TX 77042 | Plaintiff | Individual | Agreed |
| Godejord, Arnstein and Inga | 14334 Heatherfield Dr, Houston, TX 77079 | Plaintiff | Class | Agreed |
| Good Resources LLC | 760 Memorial Mews St. #4, Houston, Texas 77079 | DOJ | Individual | Agreed |
| Ho, Becky | 419 West Sam Houston Parkway North, Houston, TX 77024 | Plaintiff | Class | Agreed |
| Hollis, Wayne JR and Peggy | 14914 River Forest Dr, Houston, TX 77079 | Plaintiff | Class | U.S. Objects |

| | | | | |
|---|---|---|---|---|
| Memorial SMC Investment 2013 LP | 777 S. Mayde Creek Dr, Houston, TX | Plaintiff | Individual | U.S. Objects |
| Memorial Turkey Creek, Ltd. | 15115 Memorial Drive, Houston, TX 77079 | DOJ | Individual | Plaintiff Objects |
| Milton, Virginia and Arnold | 850 Silvergate Dr, Houston, TX 77079 | Plaintiff | Class | U.S. Objects |
| Salo, Matthew and Gabriella | 231 Faust Ln, Houston, TX 77024 | Plaintiff | Individual | U.S. Objects |
| Shipos, Jennifer | 931 Bayou Parkway, Houston, TX 77077 | Plaintiff | Individual | Agreed |
| Silverman, Peter and Zhennia | 12515 Westerley Ln, Houston, TX 77077 | Plaintiff | Class | Agreed |
| Stahl, Tim | 265 Chimney Rock, Houston, TX 77024 | Plaintiff | Class | Agreed |
| Welling, Shawn | 5731 Logan Ln, Houston, TX 77007 | Plaintiff | Class | U.S. Objects |

**Plaintiffs' Argument Regarding Proposed Test Properties**

The Court will likely note that the United States is now objecting to considerably more proposed test properties than it objected to during the March 1, 2018 hearing, and that Plaintiffs' proposal for 16 test properties has not changed.  Plaintiffs previously agreed to all of the government's picks for test properties, and have advised the government that if it will resolve the matter, Plaintiffs will agree to adding DOJ's proposed Turkey Creek property to the list of 16 proposed (including Memorial SMC) properties for a total of 17 test properties.  However, Plaintiffs do object to the substitution of the Turkey Creek property for Memorial SMC, and they address that specific issue later in this report.

Plaintiffs believe that the sixteen test properties they have selected are a fair and representative sampling of the properties affected by the reservoir releases.  Representative plaintiffs exist in varying proximities to the Buffalo Bayou for each of seven zones downstream of the Addicks and Barker Reservoirs.  *See* Consolidated And Amended Downstream Master Complaint (Dkt. 23) ¶ 89 and Appendix D.  The seven zones are as follows:

**Zone 1** – State Hwy 6 (West Border) to Eldridge Pkwy (East Border) between I-10 (North Border) and Briar Forest (South Border);

**Zone 2** - Eldridge Pkwy (West Border) to North Dairy Ashford Rd. (East Border) between I-10 (North Border) and Briar Forest (South Border);

**Zone 3** - North Dairy Ashford Rd. (West Border) to North Wilcrest (East Border) between Memorial Drive (North Border) and Briar Forest (South Border);

**Zone 4** – North Wilcrest (West Border) to Sam Houston Pkwy (East Border) between Memorial Drive (North Border) and Briar Forest (South Border);

**Zone 5** – Sam Houston Pkwy (West Border) to Piney Point Rd. (East Border) between Kimberly Ln./Shadow Way St. (North Border) and Westheimer (South Border);

**Zone 6** – Piney Point Rd. (West Border) to West Loop N. (East Border) between I-10 (North Border) and Westheimer/Woodway/San Felipe (South Border);

**Zone 7** – West Loop N. (West Border) to Shepherd Dr. (East Border) between I-10 (North Border) and Westheimer (South Border).

The distance down Buffalo Bayou from the Barker Reservoir and Shepherd Drive (the Eastern edge of Zone 7, which is approx. 2.5 miles West of downtown Houston) is well in-excess of 16 miles. Thus, the affected properties are located within a very large geographical area along a meandering curvilinear bayou. The current distribution by Zone for filings in this litigation:

| | |
|---|---|
| Zone 1 | 210 |
| Zone 2 | 102 |
| Zone 3 | 117 |
| Zone 4 | 103 |
| Zone 5 | 223 |
| Zone 6 | 16 |
| Zone 7 | 1 |
| **Grand Total** | **798** |

Plaintiffs chose five test properties in Zone 1 because it is the farthest West and closest to the reservoirs. Plaintiffs chose two test properties in each of Zones 2 – 6, and one test property in

4

Zone 7.  Further, Plaintiffs endeavored to select properties in the seven zones that were a fair mix of class and individual cases, and chose nine class (Aldred, Beyoglu, Godejord, Ho, Hollis, Milton, Silverman, Stahl, and Welling), and seven individual (Azar, Castroparedes, Cutts, Good Resources, Memorial SMC, Salo, and Shipos) cases.

The test properties put forth by Plaintiffs were also selected to exhibit not only geographical diversity, but also diversity with respect to several other factual circumstances (previous flooding, presence in flood zones, etc.) that Defendants told us were important to test through this process.  Of note, save for the one property identified (Memorial SMC), Defendants had not previously taken issue with any of the properties identified below.  The specific reasons Plaintiffs believe that their 16 proposed test properties are appropriate for inclusion are as follows:

| Plaintiff | Type | Zone | Additional Factors |
|---|---|---|---|
| Aldred, Val | Class | 2 | Residential; Flooding after reservoirs opened; Not in a flood zone; Had flooded in 2009; No flood Insurance |
| Azar, Philip | Individual | 6 | Residential; Flooding before reservoirs opened; In 500-year flood zone; No prior flooding; Flood Insurance. |
| Beyoglu, Gokhan and Jana | Class | 5 | Residential; Flooding before reservoirs opened; In 500-year flood zone; No prior flooding; Flood Insurance. |
| Castroparedes, Jessica and Carlos | Individual | 1 | Residential; Flooding after reservoirs opened; Portion of property in 500-year flood zone; Had prior flooding in Hurricane Ike; Flood Insurance. |
| Cutts, Paul and Dana | Individual | 4 | Residential; Flooding after reservoirs opened; Not in flood zone; No prior flooding; Flood Insurance. |
| Godejord, Arnstein and Inga | Class | 3 | Residential; Flooding after reservoirs opened; In 100-year flood zone; No prior flooding; No Flood Insurance. |
| Good Resources LLC | Individual | 1 | Commercial Property (four residential units); Flooding after reservoirs opened; In 500-year flood zone; No prior flooding; No Flood Insurance |

| | | | |
|---|---|---|---|
| Ho, Becky | Class | 4 | Residential; Flooding after reservoirs opened; In 500-year flood zone; No prior flooding; No Flood Insurance. |
| Hollis, Waynr JR and Peggy | Class | 2 | Residential; Flooding after reservoirs opened; In 500-year flood zone; No prior flooding; Flood Insurance. |
| Memorial SMC Investment 2013 LP | Individual | 1 | Commercial Apartment Complex; Flooding after reservoirs opened; In 500-year flood zone; No prior flooding; No Flood Insurance. |
| Milton, Virginia and Arnold | Class | 1 | Residential; Flooding after reservoirs opened; In 500-year flood zone; No prior flooding; No Flood Insurance. |
| Salo, Matthew and Gabriella | Individual | 5 | Residential; Flooding before reservoirs opened; Not in a flood zone; No prior flooding; No Flood Insurance. |
| Shipos, Jennifer | Individual | 1 | Residential; Flooding after reservoirs opened; In 100-year flood zone; No prior flooding; Flood Insurance. |
| Silverman, Peter and Zhennia | Class | 3 | Residential; Flooding after reservoirs opened; Not in a flood zone; Prior flooding on property in 1992 due to poor residential drainage issue – subsequently remediated; No Flood Insurance. |
| Stahl, Tim | Class | 6 | Residential; Flooding before reservoirs opened; In 100-year flood zone; No prior flooding; Flood Insurance. |
| Welling, Shawn | Class | 7 | Commercial; Flooding after reservoirs opened; In 500-year flood zone; No prior flooding; No Flood Insurance. |

Plaintiffs object to the United States' demand to substitute Memorial Turkey Creek, Ltd. for Memorial SMC Investment 2013 LP. Although the two properties are in close proximity to each other, they are vastly different. Memorial SMC is a large multi-unit apartment complex. Memorial Turkey Creek is a small strip center. The photographs below reveal their proximity. In the first photograph, Memorial SMC is the large complex on the left and is clearly visible. Memorial Turkey Creek on the right and somewhat obstructed by the trees. The second picture is the front view of Memorial Turkey Creek.





The test properties selected by the Plaintiffs in this instance are mostly residential single-family dwellings because those types of structures were the majority of the affected properties. However, Plaintiffs agreed to the United States' pick of a small fourplex multi-residential commercial property (Good Resources LLC), as it is one of the types of property that is common in the affected areas. Plaintiffs believe that the United States' objection to Memorial SMC is entirely without merit,[1] as larger multi-unit apartment complexes are also common property types particularly in Zone 1, which is part of Houston's densely populated Energy Corridor. The character of those types of properties and their owners' "reasonable investment-backed expectations" regarding the properties' uses bear upon the determination of whether the government-induced flooding in Houston amounts to a taking. *See Arkansas Game and Fish Com'n v. U.S.,* 568 U.S. 23, 38-39 (2012).

The Master Complaint alleges a claim for damages by Memorial SMC and does not purport to assert a claim for or on behalf of any of the building's tenants. Memorial SMC is not presenting claims by any tenants of a leasehold interest, or any other evidence supporting individual tenants' claims. With respect to the government's alleged concern about ownership of the property, after the flood, the property was conveyed to an entity (majority owned by an affiliate of the mortgagee) in order to restructure the debt on the property. The original ownership group continues to own an interest in the project, and contrary to the government's assertion, there was no bankruptcy.

---

[1] Indeed, Defendants have already had the opportunity to press their objections to the property before the Court at the March 1, 2018 hearing. *See* Mar. 1 Hrg. Tr. at 5-13. That effort was not successful. *Id.* (The Court expressly advised DOJ: "Yeah, but I don't have any problem with them putting in Memorial. You just need to know that.").

Plaintiffs believe that Memorial SMC is not an outlier, that its inclusion as a test property is appropriate, and that the United States' objection to it should be overruled.

**The United States' Argument Regarding Proposed Test Properties**

The United States has proposed a reasonable and representative selection of test plaintiffs, many of whom were pre-selected by Plaintiffs to include in the Master Complaint. The United States opposes the inclusion of Memorial SMC in all respects, and further opposes the inclusion of more than three of the following: Castroparedes, Milton, Hollis, Salo, and Welling. Selecting Memorial SMC as a test plaintiff will impose an impossible discovery burden on the United States, will inject complex and atypical issues, and will not aid in the resolution of any common legal questions or facts. Selecting all five of Castroparedes, Milton, Hollis, Salo, and Welling likewise will cause unnecessary and redundant discovery and will not aid in the resolution of any common legal questions or facts.

### I. The United States' Proposed Test Properties Comprise a Reasonable and Representative Sample

On March 1, 2018, the Court held a hearing to discuss the progress the parties had made in selecting test properties. The Court directed the parties to continue negotiating, "do a little bit more work and swap out some stuff." Mar. 1, 2018 Hr'g Tr. at 24:17-18. The United States then proposed removing Castroparedes and Hollis as test plaintiffs. The United States explained that, while it had previously consented to these properties as test properties, Plaintiffs' proposed additions of Milton, Salo, and Welling made the selection of Castroparedes and Hollis redundant and unnecessary to achieve a representative sample of test properties.

The United States, while continuing to dispute that a property like Memorial SMC is typical and necessary, also proposed Memorial Turkey Creek, a commercial landlord that leases out

properties to commercial tenants, as an alternative to Memorial SMC. Plaintiffs rejected the United States' proposal, and the United States now proposes the following test properties:

| Plaintiff | Type | Plaintiffs' Zone | Plaintiff Status |
|---|---|---|---|
| Aldred, Val | Class | 2 | Selected by Plaintiffs in the Master Complaint and approved by United States |
| Azar, Philip | Individual | 6 | Selected by United States and approved by Plaintiffs |
| Beyoglu, Gokhan and Jana | Class | 5 | Selected by Plaintiffs in the Master Complaint and approved by United States |
| Cutts, Paul and Dana | Individual | 4 | Selected by Plaintiffs in the Master Complaint and approved by United States |
| Godejord, Arnstein and Inga | Class | 3 | Selected by Plaintiffs in the Master Complaint and approved by United States |
| Good Resources LLC | Individual | 1 | Selected by United States and approved by Plaintiffs |
| Ho, Becky | Class | 4 | Selected by Plaintiffs in the Master Complaint and approved by United States |
| Memorial Turkey Creek | Individual | 1 | Selected by United States and approved by Plaintiffs |
| Shipos, Jennifer | Individual | 1 | Selected by Plaintiffs in the Master Complaint and approved by United States |
| Silverman, Peter and Zhennia | Class | 3 | Selected by Plaintiffs in the Master Complaint and approved by United States |
| Stahl, Tim | Class | 6 | Selected by Plaintiffs in the Master Complaint and approved by United States |

The United States further proposes including only one, and certainly no more than three, of the following properties:

10


| Plaintiff | Type | Plaintiffs' Zone | Plaintiff Status |
|---|---|---|---|
| Castroparedes, Jessica and Carlos | Individual | 1 | Plaintiff in Master Complaint; very close to Milton; no unique factual circumstances unaddressed by United States' proposed test properties. |
| Hollis, Wayne JR and Peggy | Class | 2 | Plaintiff in Master Complaint; very close to Aldred; no unique factual circumstances unaddressed by United States' proposed test properties. |
| Milton, Virginia and Arnold | Class | 1 | Plaintiff in Master Complaint; very close to Castroparedes; no unique factual circumstances unaddressed by United States' proposed test properties. |
| Salo, Matthew and Gabriella | Individual | 5 | Plaintiff in Master Complaint; very close to Becky Ho and Beyoglu; no unique factual circumstances unaddressed by United States' proposed test properties. |
| Welling, Shawn | Class | 7 | Plaintiff in Master Complaint; outlier and only plaintiff in Plaintiffs' Zone 7; no unique factual circumstances unaddressed by United States' proposed test properties. |

The test properties proposed by the United States offer a representative sample with sufficient geographic and factual diversity to test the legal questions at issue. The proposal already heavily favors properties selected by plaintiffs in the Master Complaint. Only three of the proposed 14 are properties outside of the Master Complaint.[2] Yet Plaintiffs still seek additional test properties that will not advance the resolution of this litigation by resolving common issues of law or fact.

## II.     The Court Should Narrowly Limit the Number of Test Properties

Plaintiffs' current proposal of 16 properties, 14 of which were pre-selected by Plaintiffs to include in the Master Complaint, is unwieldly and burdensome. While the United States agrees

---

[2] These Plaintiffs are Philip Azar, Good Resources LLC, and Memorial Turkey Creek, LTD.

with the Court that there is no "magic"[3] number, the number of test properties should be limited to only those properties necessary to conduct an efficient trial on common legal and factual questions. The United States believes no more than 14 properties are required to achieve this goal.

Limiting the number of test properties is critical. First, reasonably limiting the number of test properties is necessary to ensure that the parties can complete the discovery required to fully investigate Plaintiffs' claims on each property. Second, reasonably limiting the number of test properties is required to ensure an efficient trial. In *Ideker Farms, Inc. v. United States*, the parties chose 44 test properties. After a 4-month long trial on causation alone, the matter is on-going. *See*, Mar. 1, 2018 Order, No. 14-183, ECF No. 423 (discussing Phase II of the litigation and a second trial in October 2018); Mar. 13, 2018 Order, ECF No. 426.

Limiting the total number of test properties is even more critical because, unlike *Ideker Farms*, the downstream docket is proceeding on an expedited basis. In addition, there is a similarly expedited upstream docket that shares common facts, such as the timing and nature of the government action, the circumstances under which the Corps acted, and the history of the Addicks and Barker Reservoirs. Both the upstream and downstream should proceed concurrently through summary judgment and trial, if necessary. Judge Lettow has already allowed for 14 upstream test properties, seven from the United States and seven from Plaintiffs. Upstream Sub-Master Docket, 17-9001, ECF No. 86, 90, 91. The downstream docket should have an equal or fewer number of test properties. The downstream docket does not face the same complicated factual questions of causation. In the upstream case, some plaintiffs allege that their properties flooded due to Addicks Reservoir, and others allege that their properties flooded due to Barker Reservoir. Therefore, some of the upstream test properties are located near Addicks Reservoir, and some are located near

---

[3] March 1, 2018 Hr'g Tr. at 24:7.

Barker Reservoir. By contrast the downstream properties, while geographically spread throughout a larger area, allege only one source for causation: that the United States Army Corps of Engineers released water into Buffalo Bayou. Thus, fewer downstream test properties should be necessary; they certainly should not exceed the number designated in the Upstream Sub-Master Docket.

Plaintiffs have asked this Court to consider geographic "zones" to give a false sense of precision. Plaintiffs fail to explain the significance or relevance of these arbitrarily-created zones. They certainly have not identified any state, federal or other authority that has dissected this area of Houston in such a fashion. Plaintiffs' "zones" are not relevant to the selection of Test Properties. Yet, even if Plaintiffs' zones have significance, the United States' proposal includes a representative sampling from all zones except for Zone 7, which has only one member, Shawn Welling. While the United States does not oppose the inclusion of Welling *per se*, he and his zone, nearly 20 miles east of the Addicks and Barker dams, should be considered outliers, and should not be included as a test property. Further, choosing either Castroparedes or Milton (but not both) and Hollis or Salo (but not both), would still allow Plaintiffs to represent their remaining zones.

Plaintiffs appear to want test properties that can resolve every conceivable factual permutation. Test properties, however, cannot resolve all of the complex factual variables at issue for an individual Plaintiff. Every Plaintiff is different and faces a different flood risk, different reasonable-investment backed expectations, and different flooding during Hurricane Harvey. Moreover, Plaintiffs appear to select test plaintiffs based on factual considerations that the United States first raised when requesting individual fact sheets. These individual fact sheets were designed to aid the United States, not Plaintiffs, in the selection of test plaintiffs. Even if Plaintiffs can rely upon the fact sheets to select test plaintiffs, they fail to explain what specific variables the United States' proposed test properties fail to include.

### III. The Court Should Exclude Memorial SMC from the Test Properties

The United States has offered Memorial Turkey Creek as a superior alternative to Memorial SMC, a massive luxury multi-building complex. Plaintiffs can present the same legal arguments on behalf of both commercial landlords, but selecting Memorial Turkey Creek imposes a more reasonable discovery burden for the United States. As Plaintiffs have noted, Memorial Turkey Creek is geographically near to Memorial SMC, but it is smaller. Thus, inspections of the flooded premises will be simpler and require less time. Unlike Memorial SMC, Memorial Turkey Creek does not have a new shell owner and did not undergo a restructuring. Memorial Turkey Creek has only four to five commercial tenants and thus fewer tenant leases to examine. Plaintiffs claim that Memorial SMC is a common property type within Zone 1, but identify no other similarly-situated Plaintiffs, nor do they argue that Memorial Turkey Creek is an unrepresentative property. Plaintiffs also do not explain what factual or legal questions they would be able to examine if Memorial SMC, rather than Memorial Turkey Creek were selected as a test property. The complications presented by Memorial SMC add to the United States' discovery burden, and create atypical issues for the Court to resolve, but do nothing to advance the primary analysis as to whether a taking occurred.

Further, the property interest held by Memorial SMC, and the viability of its taking claims, would be affected by the existence and nature of any leases. Although the Court has suggested that the United States need not depose tenants of Memorial SMC to address Plaintiffs' reasonable-investment backed expectations, this is not the principal reason that information from tenants would be relevant. The inclusion of Memorial SMC would greatly expand the breadth of discovery and would require the Court to address numerous additional and complex issues, which would undermine the purpose of test property selection.

March 22, 2018

                                                     Respectfully submitted,

| /s/ William S. Consovoy | /s/ David C. Frederick |
|---|---|
| William S. Consovoy | David C. Frederick |
| **CONSOVOY MCCARTHY PARK, P.L.L.C.** | **KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.** |
| 3033 Wilson Boulevard, Suite 700 | 1615 M Street, N.W., Suite 400 |
| Arlington, VA 22201 | Washington, D.C. 20036 |
| Telephone: (703) 243-9423 | Telephone: (202) 326-7900 |
| will@consovoymccarthy.com | dfrederick@kelloghansen.com |

*Co-Lead Counsel for Downstream Plaintiffs as to Jurisdictional Discovery, the Government's Motion to Dismiss, and Scheduling*

| /s/ Rand P. Nolen | /s/ Derek H. Potts |
|---|---|
| Rand P. Nolen | Derek H. Potts |
| **FLEMING, NOLEN & JEZ L.L.P.** | **THE POTTS LAW FIRM, LLP** |
| 2800 Post Oak Blvd., Suite 4000 | 3737 Buffalo Speedway, Suite 1900 |
| Houston, Texas 77056 | Houston, Texas 77098 |
| Telephone: (713) 621-7944 | Telephone: (713) 963-8881 |
| rand_nolen@fleming-law.com | dpotts@potts-law.com |

*Co-Lead Counsel for Downstream Plaintiffs as to Pre-Trial Discovery, Dispositive Motions for Partial or Summary Judgement and/or Cross-Motions and/or a Trial on Liability, and Scheduling*

| /s/ Jack E. McGehee | /s/ Richard Warren Mithoff |
|---|---|
| Jack E. McGehee | Richard Warren Mithoff |
| **MCGEHEE, CHANGE, BARNES, LANDGRAF** | **MITHOFF LAW FIRM** |
| 10370 Richmond Ave., Suite 1300 | 500 Dallas Street, Ste. 3450 |
| Houston, Texas 77042 | Houston, Texas 77002 |
| Telephone: (713) 864-4000 | Telephone: (713) 654-1122 |
| jmcgehee@lawtx.com | mithoff@mithofflaw.com |
| | |
| *Of Counsel for Individual Downstream Plaintiffs as to Jurisdictional Discovery, the Government's Motion to Dismiss, and Scheduling* | *Co-Lead Counsel for Individual Downstream Plaintiffs as to Pre-Trial Discovery, Dispositive Motions for Partial or Summary Judgement and/or Cross-Motions and/or a Trial on Liability, and Scheduling* |

JEFFREY H. WOOD
ACTING ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

*By*     */s/ Jacqueline Brown*
JACQUELINE C. BROWN
LAURA W. DUNCAN
SARAH IZFAR
JESSICA HELD
DANIEL W. DOOHER
BRADLEY L. LEVINE
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
Post Office Box 7611
Washington, D.C. 20044-7611
Tel:  (202) 305-0481
Fax:  (202) 305-0506
E-mail:
jacqueline.c.brown@usdoj.gov
laura.duncan@usdoj.gov
sarah.izfar@usdoj.gov
jessica.held@usdoj.gov
daniel.dooher@usdoj.gov
bradley.levine@usdoj.gov

WILLIAM J. SHAPIRO
Senior Trial Attorney, Natural Resources Section
United States Department of Justice
Environment & Natural Resources Division
501 I Street, Suite 9-700
Sacramento, CA 95814
Tel: 916-930-2207
Fax: 916-930-2210
E-Mail: william.shapiro@usdoj.gov
ATTORNEYS FOR THE UNITED STATES

## **CERTIFICATE OF SERVICE**

I, Rand P. Nolen an attorney of record in this case, hereby certify that on March 22, 2018, I caused the foregoing document to be filed and served on all counsel of record in the above-captioned cases via the Court's electronic filing system.

<div style="text-align: right;">/s/ Rand Nolen</div>