# In the United States Court of Federal Claims

| | | |
|---|---|---|
| IN RE DOWNSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | ) ) ) ) ) | Sub-Master Docket No. 17-cv-9002L |
| _____ | ) | Judge Loren A. Smith |
| THIS DOCUMENT RELATES TO: | ) ) | |
| ALL DOWNSTREAM CASES | ) ) | |
| _____ | ) ) | |

## DOWNSTREAM PLAINTIFFS' RESPONSE TO INSURERS' MOTION TO TEMPORARILY LIFT STAY, LEAVE TO FILE MOTION FOR RECONSIDERATION, MOTION REGARDING CO-LEAD COUNSEL, AND MOTION FOR ENFORCEMENT OF DISCOVERY ORDERS

The Downstream Plaintiffs submit this response in opposition to the Insurers' Motion to Temporarily Lift Stay, Leave to File Motion for Reconsideration, Motion Regarding Co-Lead Counsel, and Motion for Enforcement of Discovery Orders, and would respectfully show the Court as follows:

## I.    INTRODUCTION

1.    Although differing in approach, the Government and Downstream Plaintiffs appear to be united on one point: obtaining a timely determination regarding the viability of Downstream Plaintiffs' claims.  Early in this case, the Court carefully considered a variety of approaches to manage the extensive docket and contemplated future claims, how to structure leadership among plaintiffs' counsel, and who to select as lead counsel.  The Court made these decisions well over a year ago, and since that time, all parties have diligently worked under the framework in place, with a view towards efficient and just resolution of liability issues common to downstream property owners.  The Insurers now seek to unravel this framework, and with it the extensive work undertaken to date, including proposing an unspecified alternative to the bellwether approach.

2.      The Insurers' proposal does not serve the best interests of downstream plaintiffs, nor does it promote efficient and just adjudication of liability issues.  Their proposal can only serve to needlessly delay such adjudication, where extensive fact and expert discovery has already been conducted by the parties.  The Insurers' proposal does not even serve the best interests of the Insurers themselves.  A needless delay in the proceedings at this stage, to craft some unknown alternative framework to determine bellwether liability issues when discovery is nearly complete, can only serve to delay further stages of proceedings, such as resolution of the damages-focused issues recited throughout the Insurers' brief.

3.      The question of liability is nearly ready for the Court's determination, either via trial or the summary judgment proceedings requested by the Government.  The Downstream Plaintiffs and the Insurers have identical interests in that determination, and the very nature of subrogation makes that clear—a subrogee only has the rights of the subrogor against the third party. If there is no liability, neither the Downstream Plaintiffs nor the Insurers will receive compensation from the Government.  *See, e.g., Nat'l Am. Ins. Co. v. United States*, 498 F.3d 1301, 1306 (Fed. Cir. 2007) ("Unfortunately for the surety, the subcontractor had no rights it could enforce against the United States.").  The Downstream Plaintiffs' Co-Lead Counsel therefore have a strong interest in protecting the rights of the Insurers in this initial liability phase.  If the Court finds liability in some or all of the bellwether cases, the Court and the parties will then need to develop a plan for handling liability issues in the remaining cases (whether as a class action or as individual cases), as well as damages.  At that point, the Insurers would need to prove their subrogation rights with respect to specific properties.  At this stage of the proceedings, the Insurers have no interest in the litigation that is unique from any other plaintiff.  The Court properly considered the interests of all such plaintiffs in creating the leadership framework and in selecting the test properties.

4.      Moreover, these Insurers previously filed a motion on February 5, 2018 seeking substantially similar relief.  (Sub-Master Docket No. 17-9002L Dkt.39).   In denying the prior motion, the Court held:

> At this juncture in the litigation, the court has determined that Downstream Co-Lead Counsel adequately represent the interests of all plaintiffs with downstream claims, including the Plaintiff Insurers named in the February 2, 2018 Amended Complaint in *American Home Assurance Co.*, No. 18-144. . . . the interests of justice do not require the court to appoint Mr. Denenberg as Lead Counsel or to require the parties to name one of the properties listed in Plaintiff Insurers' February 2, 2018 Amended Complaint as a test property. For these reasons, Plaintiff Insurers' February 5, 2018 Motion To Lift Administrative Stay And For Leave To File Motion For Todd B. Denenberg To Be Appointed Downstream Lead Counsel For Subrogated Insurers is denied.

*Id*. at 3.[1]  As discussed herein, no unique or changed circumstances exist at this time that would warrant a different outcome, and changing the underlying framework of this litigation at this time would not serve the interests of any of the Downstream Plaintiffs.  The Insurers' Motion should be denied.

## II.      ARGUMENT AND AUTHORITIES

### A.      Insurers' and Downstream Plaintiffs' Interests are Aligned at This Time.

5.      The Court appointed two sets of Co-Lead Counsel:  one set for jurisdictional discovery and one set for pre-trial discovery/dispositive motions.  With respect to those matters, Downstream Plaintiffs' interests, and the interests of the appointed Co-Lead Counsel, are identical to those of the Insurers:  establishing that the Court has jurisdiction over this general matter and proving that the Government is liable for a taking of Downstream Plaintiffs' property.  These issues are central to the claims of Downstream Plaintiffs and the Insurers; if Downstream Plaintiffs cannot survive a jurisdictional challenge and a dispositive motion or trial, neither they nor the

---

[1] Judge Braden opined that "[i]t may be appropriate to consider a similar motion by Plaintiff Insurers in the future," but did not articulate exactly why future consideration might be warranted.

Insurers will recover anything from the Government.  The Insurers are in exactly the same position as all of the other non-test-property plaintiffs in this case whose future recovery in all likelihood is tied to the outcome of the bellwether cases.  In particular, the Insurers state that they seek access to discovery to determine which claims are in a recoverable zone.  Co-Lead Counsel, along with the Court and the Government, carefully selected the Test Properties that would provide a range of factual scenarios to assist in the Court's ultimate determination of liability issues.  Until the Test Plaintiffs' cases are tried or resolved through dispositive motions, the precise "recoverable zone" is unknown.   That resolution will inform Insurers—as it will all other Plaintiffs—of the "recoverable zone."

6.       Some of the properties claimed by the Insurers appear to be facially incompatible with inclusion into any efficient and just determination of liability issues in this litigation.  One such property is in Meyerland Plaza, in the Brays Bayou watershed.  It is not clear what benefit inclusion of a property in a different watershed than Buffalo Bayou would bring to this litigation, when the purpose of Addicks and Barker reservoirs is to "provide floodwater detention for flood risk management on the Buffalo Bayou watershed."  USACE016308 (2012 Water Control Manual).

7.       Once liability issues have been determined by the Court, elements of claims unique to the Insurers may be ripe for consideration.  The Court may then be inclined to consider the Insurers' role or questions of fact or law unique to their claims.  Such issues may include whether the Insurers actually paid property owners for the same damages that property owners seek from the Government, whether in any given case a right of subrogation exists, and the proper method for resolving such issues.  These issues are apparent from the limited set of pleadings advanced by the Insurers to date, but injection of those issues into the liability stage of proceedings serves no discernable purpose that would advance the interests of Downstream Plaintiffs as a whole.  These

issues can be more efficiently and appropriately handled when the Court determines how to proceed with remaining liability cases and damages issues.  The Insurers' Motion should be denied.

**B.      Jurisdiction over Each of Insurers' Claims Must be Individually Determined.**

8.      The Court of Federal Claims and the Federal Circuit have held that this Court only has jurisdiction to hear insurers' claims where insurers are *actually* subrogees of the property owners. *Nat'l Am. Ins. Co. v. United States*, 498 F.3d 1301, 1307 (Fed. Cir. 2007); *M.E.S., Inc. v. United States*, 104 Fed. Cl. 620, 631 (2012).  The Insurers' Motion does not establish the Insurers' alleged subrogation rights for any property, so whether this Court has jurisdiction over the Insurers' claims is an issue the Court will ultimately have to decide.

9.      Downstream Plaintiffs cannot determine the extent of Insurers' subrogation rights, if any, from their pleadings.  Contrary to the Insurers' briefing, an insurer is not subrogated to all rights of an insured to recover from the Government in all circumstances.  In a case cited by Insurers, *Container Co. v. United States*, 90 F. Supp. 689, 694 (Ct. Cl. 1950), the Court of Claims held that the insurer was subrogated to the rights of the insured based on specific language in the insurance contract; the Court also cited other specific instances of subrogation.  Likewise, in another case cited by Insurers, the Court of Federal Claims held that a surety did not have a right to equitable subrogation under the particular facts of the case.  *M.E.S., Inc. v. United States*, 104 Fed. Cl. 620, 631 (2012).

10.      To prove jurisdiction, Insurers will have to supply evidence of individual insurance contracts and any other circumstances supporting jurisdiction.  These are unique, case-specific issues that, by their very nature, cannot advance the interests of Downstream Plaintiffs and the Government in obtaining a timely and just adjudication of overarching liability issues.  Such questions should be resolved *after* the Court hears the liability issues for the Test Properties, together with remaining issues pertaining to management of the other individual and putative class-

action cases filed, consolidated, and presently stayed in the Master Docket.  The Insurers' Motion should be denied.

### C.  Insurers' Claims Regarding Discovery are Unfounded

11.     The Insurers also seek to file a motion for "enforcement of discovery orders," but the Insurers do not cite to any orders that exist to be enforced.  Rather, they allege that one of the Downstream Plaintiffs' Co-Lead Counsel, Jack McGehee, has refused to provide certain discovery information.  The Court's existing Orders do not require Co-Lead Counsel to provide all discovery to any lawyer with a putative claim, and properly so.  Insurers appear to advance a theory, unsupported by law or orders of this Court, that they are entitled to discovery materials served by any party to this litigation—including by Test Property Plaintiffs for whom Insurers allege no insurable interest.[2]  They have no right to the individual discovery provided by the Test Plaintiffs.

12.     Further, the Insurers' claims are factually incorrect.  Mr. McGehee provided all of Downstream Plaintiffs' expert reports to the Insurers.  Moreover, the Insurers previously had access to the online repository containing all of the Government's production.  Apparently the access password previously issued to the Insurers to access that production has expired.  However, Co-Lead counsel are ensuring that a new password is provided to counsel for Insurers, so that they continue to have access to the Government's production.  When the Insurers requested access to the Government's expert reports, Co-Lead counsel reached out to the Government to confer, as portions of those reports have been designated "Confidential."  The Government requested that any such request from Insurers be made directly to the Government, and asked that Downstream

---

[2]Few of the Test Property Plaintiffs had any insurance coverage at all for the damage caused by the release of water from the Addicks and Barker Reservoirs.  Some had coverage through FEMA, which is not part of the Insurers' group, and some had private coverage for vehicles (a very small part of any damages).  It is not clear from Insurers' pleadings whether there is any overlap between property owners who have filed direct claims and properties for which Insurers seek recovery.

Co-Leads not furnish those reports.  Accordingly, Downstream Co-Leads honored the request of the Government, but are willing to furnish those reports if ordered to do so.

13.    The Insurers' Motion for Enforcement of Discovery Orders is unfounded and insupportable, and should be denied.

## III.    CONCLUSION

14.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that the Court deny the Insurers' Motion.

Respectfully submitted,

/s/  *Rand P. Nolen*_____
Rand P. Nolen
**FLEMING, NOLEN & JEZ L.L.P.**
2800 Post Oak Blvd., Suite 4000
Houston, Texas 77056
Telephone: (713) 621-7944
rand_nolen@fleming-law.com

/s/  *Derek H. Potts*_____
Derek H. Potts
**THE POTTS LAW FIRM, LLP**
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Telephone: (713) 963-8881
dpotts@potts-law.com

*Co-Lead Counsel for Downstream Plaintiffs as to Pre-Trial Discovery,*
*Dispositive Motions for Partial or Summary Judgement and/or*
*Cross-Motions and/or a Trial on Liability, and Scheduling*

/s/  *William S. Consovoy*_____
William S. Consovoy
**CONSOVOY MCCARTHY PARK, P.L.L.C.**
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
Telephone: (703) 243-9423
will@consovoymccarthy.com

/s/  *David C. Frederick*_____
David C. Frederick
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com

*Co-Lead Counsel for Downstream Plaintiffs as to Jurisdictional Discovery,*
*the Government's Motion to Dismiss, and Scheduling*

/s/  Jack E. McGehee_____
Jack E. McGehee
**MCGEHEE, CHANG, LANDGRAF**
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
Telephone: (713) 864-4000
jmcgehee@lawtx.com

*Of Counsel for Individual Downstream*
*Plaintiffs as to Jurisdictional Discovery,*
*the Government's Motion to Dismiss, and*
*Scheduling*

/s/  Richard Warren Mithoff_____
Richard Warren Mithoff
**MITHOFF LAW**
500 Dallas Street, Ste. 3450
Houston, Texas 77002
Telephone: (713) 654-1122
rmithoff@mithofflaw.com

*Co-Lead Counsel for Individual Downstream*
*Plaintiffs as to Pre-Trial Discovery, Dispositive*
*Motions for Partial or Summary Judgement*
*and/or Cross-Motions and/or a Trial on*
*Liability, and Scheduling*

## Certificate of Service

The undersigned attorney hereby certified that a true and correct copy of the foregoing instrument was served on the following via CM/ECF on February 11, 2019.

__/s/__ Rand P. Nolen_____

KRISTINE TARDIFF
DAVID A. HARRINGTON
WILLIAM J. SHAPIRO
SARAH IZFAR
LAURA N. DUNCAN
JESSICA HELD
BRADLEY LEVINE
DANIEL W. DOOHER
DAVID DAIN,
Trial Attorneys, Natural Resources Section
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0481
Fax: (202) 305-0506
Email: Kristine.tardiff@usdoj.gov
David.harrington2@usdoj.gov
William.Shapiro@usdoj.gov
Sarah.Izfar@usdoj.gov
Laura.Duncan@usdoj.gov
Jessica.Held@usdoj.gov
Bradley.Levine@usdoj.gov
Daniel.Dooher@usdoj.gov
David.Dain@usdoj.gov
*Attorneys for the United States*

Edwin Armistead "Armi" Easterby
Williams Kherkher Hart Boundas, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone:  (713) 230-2200
aeasterby@williamskherkher.com
*Co-Lead Counsel, Upstream Pre-Trial*
*Discovery and Dispositive Motions*

Charles Irvine
Irvine & Conner PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
Charles@irvineconner.com
*Co-Lead Counsel, Upstream Pre-Trial*
*Discovery and Dispositive Motions*

Daniel Charest
*Co-Lead Counsel, Upstream Pre-Trial Discovery*
*and Dispositive Motions*
Larry Vincent
*Co-Lead Counsel for Upstream Plaintiffs as to*
*Jurisdictional Discovery, Motion to Dismiss and Scheduling*
Burns & Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
Dcharest@Burnscharest.com
lvincent@Burnscharest.com

Ian Gershengorn
Jenner & Block, LLP
1099 New York Ave NW. Suite 900
Washington, D.C. 20001
202-639-6000
igershengorn@jenner.com
*Co-Lead Counsel for Upstream Plaintiffs as to*
*Jurisdictional Discovery, Motion to Dismiss, and Scheduling*

Vuk S. Vujasinovic
VB Attorneys, PPLC
6363 Woodway Dr., Suite 400
Houston, Texas 77057
713-224-7800
Vuk@vbattorneys.com
*Of Counsel for Upstream Individual Plaintiffs as to*
*Jurisdictional Discovery, Motion to Dismiss, and Scheduling*