```
 1            IN THE UNITED STATES COURT OF FEDERAL CLAIMS
 2
 3   IN RE DOWNSTREAM ADDICKS      )
 4   AND BARKER (TEXAS) FLOOD-     ) Master Docket No.
 5   CONTROL RESERVOIRS,           ) 17-9002L
 6            Plaintiffs,          )
 7        vs.                      )
 8   UNITED STATES OF AMERICA,     )
 9            Defendant.           )
10   ------------------------------)
11
12                        Suite 616
13           Howard T. Markey National Courts Building
14                   717 Madison Place, N.W.
15                      Washington, D.C.
16                Wednesday, February 26, 2020
17                         2:50 p.m.
18                Telephonic Status Conference
19
20
21        BEFORE:  THE HONORABLE LOREN A. SMITH
22
23
24
25   Transcribed by:  Elizabeth M. Farrell, CERT
```

```
 1   APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFFS:
 3             RAND P. NOLEN, ESQ.
 4             Fleming, Nolen & Jez, LLP
 5             2800 Post Oak Boulevard, Suite 4000
 6             Houston, Texas   77056
 7             (713) 621-7944
 8             rand_nolen@fleming-law.com
 9
10             JACK E. MCGEHEE, ESQ.
11             McGehee, Chang, Barnes, Landgraf
12             10370 Richmond Avenue, Suite 1300
13             Houston, Texas   77042
14             (713) 864-4000
15             jmcgehee@lawtx.com
16
17             DAVID FREDERICK, ESQ.
18             Kellogg Hansen, et al.
19             1615 M Street, N.W., Suite 400
20             Washington, D.C.   20036
21             (202) 326-7959
22             dfrederick@kellogghansen.com
23
24
25
```

```
 1   APPEARANCES (cont.):
 2   ON BEHALF OF THE PLAINTIFFS:
 3            RICHARD W. MITHOFF, ESQ.
 4            Mithoff Law
 5            3450 One Allen Center
 6            500 Dallas Center
 7            Houston, Texas  77002
 8            (713) 654-1122
 9            rmithoff@mithofflaw.com
10
11            DEREK H. POTTS, ESQ.
12            Potts Law Firm, LLP
13            3737 Buffalo Speedway
14            Suite 1900
15            Houston, Texas 77098
16            (713) 963-8881
17            dpotts@potts-law.com
18
19            WILLIAM S. CONSOVOY, ESQ. (Not Present)
20            Consovoy McCarthy Park PLLC
21            3033 Wilson Boulevard
22            Suite 700
23            Arlington, Virginia 22201
24            will@consovoymccarthy.com
25
```

```
 1    APPEARANCES (cont.):
 2    ON BEHALF OF THE PLAINTIFFS (SUBROGATED CARRIERS):
 3             TODD B. DENENBERG, ESQ.
 4             Denenberg Tuffley PLLC
 5             28411 Northwestern Highway
 6             Suite 600
 7             Southfield, Michigan 480345
 8             (248) 549-3900
 9             tdenenberg@dt-law.com
10
11         ON BEHALF OF THE DEFENDANT:
12             KRISTINE S. TARDIFF, ESQ.
13             WILLIAM SHAPIRO, ESQ.
14             SARAH IZFAR, ESQ.
15             LAURA DUNCAN, ESQ.
16             U.S. Department of Justice
17             Environment & Natural Resource Division
18             601 D Street N.W., 3rd Floor
19             Washington, D.C.  20004
20             (603) 230-2583
21             kristine.tardiff@usdoj.gov
22
23
24
25
```

```
 1                    P R O C E E D I N G S
 2                       -    -    -    -    -
 3              (Proceedings called to order, 2:50 p.m.)
 4              LAW CLERK:  Hi, this is Matney again.  May I
 5    please have a roll call for the record?
 6              MS. TARDIFF:  Yes, good afternoon.  Beginning
 7    with the United States, this is Kris Tardiff.  I have
 8    with me Bill Shapiro, Sarah Izfar, and Laura Duncan.
 9              MR. NOLEN:  For Plaintiffs, this is Rand Nolen,
10    and we're joined by Derek Potts, David Frederick, Jack
11    McGehee, Richard Mithoff.  And Mr. Consovoy is not able
12    to be on today.
13              THE COURT:  Okay.  This is --
14              MR. DENENBERG:  And then Todd Denenberg on
15    behalf of the subrogated carriers.
16              THE COURT:  And who else do we have?
17              MR. DENENBERG:  Todd Denenberg on behalf of the
18    carriers.
19              THE COURT:  Okay, the subrogated carriers.
20              The purpose for the conference was just kind of
21    a minor one.  I wanted to make sure that we had not left
22    anything to be done.  I was remembering that there are 14
23    test cases, and I wasn't 100 percent clear as to whether
24    anything involving any of those cases still required
25    action on the part of the Court.
```

```
 1                  Mr. Nolen?
 2                  MR. NOLEN:  Not to my knowledge, Your Honor.
 3     The only thing is is that -- as you may recall, all of
 4     the other cases in the litigation were stayed.  That was
 5     part of the -- part of the prior orders.  The new cases
 6     that were filed and all cases that were existing that
 7     were not test property cases would be stayed.
 8                  And so our question, based on the ruling, would
 9     be that those matters, instead of simply being dismissed
10     based on the ruling, would -- our suggestion and belief
11     is that those cases should all remain stayed and that
12     this order that the Court has entered be reduced to a
13     final judgment so that it's appealable and we can take --
14                  THE COURT:  Yes.
15                  MR. NOLEN:  -- (inaudible) of the order.
16                  THE COURT:  So leave them in a stayed condition
17     prior -- while the appeal is going on?
18                  MR. NOLEN:  Yes, Your Honor.
19                  THE COURT:  Okay.  That seems like a reasonable
20     thing to do.
21                  Ms. Tardiff, do you have any objections?
22                  MS. TARDIFF:  Well, I think I am reading the
23     procedural history slightly differently.  I agree that
24     all the other Downstream claims are -- were stayed by an
25     administrative order.  But the procedural history is such
```

1    that our motion to dismiss, at the time it was filed,
2    applied to all of the Downstream cases, and that was
3    specified in the order.  The motion to dismiss was
4    actually filed before the selection of the test
5    properties and then Case Management Order 5, paragraph 11
6    of that order specified that the Government's filing
7    under Rule 12, including any motions to dismiss, will
8    apply equally to any complaint adopting the allegations
9    of the master complaint.
10            So I guess we were reading the Court's opinion
11   and order of last week as involving issues in the motion
12   to dismiss and applying to all of the claims so that we
13   would receive an entry of final judgment, rather than an
14   entry of partial final judgment, just as (inaudible) of
15   the test properties.
16            MR. FREDERICK:  This is David Frederick, Your
17   Honor.  Can I speak to that?
18            THE COURT:  Yes.
19            MR. FREDERICK:  I would ask the Government to
20   consider --
21            THE COURT:  Sure.
22            MR. FREDERICK:  I would ask the Government to
23   consider the efficiency of an appeal that would encompass
24   hundreds and hundreds of potential claimants, each of
25   whom would have their own right to file briefs and

```
 1   otherwise be part of the appellate process, and that from
 2   the Government's perspective, it would be much simpler
 3   for us to proceed on a court-appointed class and
 4   individual lead lawyer basis and have the other cases
 5   stayed.  Otherwise, the appeal is going to be
 6   extraordinarily difficult to manage.
 7              THE COURT:  Yeah, that does seem like another
 8   reasonable suggestion.
 9              Ms. Tardiff, do you have any response to that?
10              MS. TARDIFF:  Your Honor, I could see that
11   being a complication for the appeal.  You know, I think
12   as we read through the procedural orders early in the
13   case, I think we had understood that even if there was an
14   appeal on jurisdictional issues, that the court-appointed
15   counsel would still serve in that role for the appeal.
16   But, you know, I realize there could be a difference of
17   opinion on that.
18              THE COURT:  Yeah, yeah, there -- it seems that
19   -- I mean, partly I'm operating somewhat at a
20   disadvantage here since I didn't craft any of those stay
21   orders or any of the structure of the litigation until I
22   took over and then vacated the schedule.  So I'm inclined
23   to -- in order to keep the stability of the system
24   working, I don't think there's any problem with if the
25   appeal comes down negative, then dismissing all the
```

```
 1    cases.  On the other hand, if the appeal were positive,
 2    then you'd have everything together for whatever
 3    proceedings were required.
 4              So I will issue what, in effect, is a partial
 5    judgment on -- that covers all the parties.  But
 6    obviously the Circuit isn't particularly concerned with
 7    the structure of the litigation; it's concerned with the
 8    issue.  And so in the appeal, the issue would be
 9    presumably considered that those other cases would go
10    with that.  So given that, I'll issue the judgment in the
11    cases that were before me, stay all the others pending
12    appellate action.
13              So anything else that we need to do in the
14    case?
15              MR. MITHOFF:  Your Honor, this is Richard
16    Mithoff.
17              THE COURT:  Yes.
18              MR. MITHOFF:  One other matter has been brought
19    to our attention procedurally and that involves the cases
20    that may be filed after this appeal and after this
21    judgment.  There was a requirement early on for fact
22    sheets to be filed, accompanying the pleading at a
23    certain point and served following the filing of a
24    pleading.  And we were wondering whether or not the
25    requirement for the fact sheets could be abated pending
```

```
 1   the appeal because that will involve quite a bit of
 2   paperwork that may or may not be necessary and it may
 3   ease the burden of those filing new cases pending this
 4   appeal.
 5             THE COURT:  Okay.  Anyone have any comment on
 6   that?
 7             MS. TARDIFF:  This is Ms. Tardiff.  I think
 8   that's fine.  I think we assume under the prior orders
 9   that if there are any new complaints or claims filed that
10   relate back, they would just be connected to the master
11   complaint and stayed.
12             THE COURT:  Okay.
13             MS. TARDIFF:  And, Your Honor, the only other
14   issue that we have, Plaintiffs had filed the motion to
15   appoint a special master.  We had addressed that on one
16   of our last conference calls.  But I assume that that
17   will just be denied as moot at this point or does the
18   Court need us to formally file a response to that motion
19   to clean up the --
20             THE COURT:  No, I think that seems to me,
21   clearly as a result of the decision, moot.
22             MS. TARDIFF:  Okay.
23             THE COURT:  So --
24             MS. TARDIFF:  Very good.  We do not have
25   anything else then, Your Honor.
```

```
 1              THE COURT:  Okay.  Anything more from the
 2    Plaintiffs?
 3              MR. FREDERICK:  Your Honor, this is David
 4    Frederick again.
 5              THE COURT:  Yes.
 6              MR. FREDERICK:  I think for the avoidance of
 7    doubt, it would be helpful if the Court would consider
 8    appointing or extending the appointment of court-
 9    appointed Plaintiffs' counsel for purposes of the appeal
10    just so that there is no doubt about how to understand
11    Judge Braden's previous order.
12              THE COURT:  To this question, I mean, I would
13    have thought initially that I wouldn't have authority to
14    appoint counsels.  I'm not sure how that worked.  If
15    anyone has any immediate thoughts on that?  Of what the
16    Court's authority is to appoint counsel to the role -- it
17    isn't the classic appointing counsel where -- you also
18    have the fee issue that the Court provides -- or the
19    criminal justice system provides in criminal cases for
20    appointment of counsel.  But, here, we're, I guess,
21    looking for an authority that the people who will be
22    litigating the case will be the ones designated.
23              I think if this is a significant issue -- at
24    the current time, I've got other things that have to be
25    done that don't allow for an extended discussion of that.
```

```
 1   But if that is significant enough, we can hold another
 2   conference to try to deal with that.
 3              MR. FREDERICK:  I'm not sure that it's
 4   necessary to further delay, Your Honor.  This is David
 5   Frederick.  I do think that to the extent that the
 6   Government understands the original appointment to
 7   include representation of the representative parties for
 8   the (inaudible) --
 9              THE COURT:  Yes.
10              MR. FREDERICK:  -- on appeal, I think that
11   would be sufficient for our purposes.  I would not like
12   to be in a situation where several years from now, if we
13   were to be successful on appeal, for the Government to
14   claim that under the URA we somehow are not entitled to a
15   reasonable attorney's fee for having successfully
16   represented the property owners in a takings case because
17   we were --
18              THE COURT:  Right.
19              MR. FREDERICK:  -- (inaudible) what we did on
20   appeal.
21              THE COURT:  Why don't we -- we --
22              MR. DENENBERG:  Your Honor --
23              THE COURT:  Yes?
24              MR. DENENBERG:  Your Honor, this is Todd
25   Denenberg on behalf of the subrogated carriers.  I think
```

```
 1   -- I know the Court is on a time schedule, but we are now
 2   delving into an issue that there has been significant
 3   disagreement on and we certainly wouldn't agree that the
 4   group technically represents the subrogated carriers, nor
 5   can we agree to that.  That's an issue that would have to
 6   be dealt with, I think, quite frankly, at a later date
 7   and much -- with much greater depth.
 8             THE COURT:  Okay.  I will -- I don't think it
 9   was the --  Mr. Frederick was talking about the
10   subrogated carriers.  Is that correct?  You're here
11   representing the Plaintiffs who were property owners?
12             MR. FREDERICK:  Yes, that's correct.
13             THE COURT:  Okay.  Why don't we -- I do this.
14   Why don't, in the order, when we at least leave the other
15   non-14 cases stayed, indicate that the representation
16   structure will stay the same.
17             MR. FREDERICK:  Thank you, Your Honor.
18             THE COURT:  I think at least as far as the
19   Court's concerned, that keeps the status quo.  And, you
20   know, if there's any -- anyone wants to make a change, we
21   could discuss that later.
22             MS. TARDIFF:  And, Your Honor, this is Kris
23   Tardiff.
24             THE COURT:  Yes.
25             MS. TARDIFF:  I think for the Government it's
```

1  just, I think, the Plaintiffs' selection of counsel
2  whether it's on a representation basis or otherwise,
3  that's really up to the Plaintiffs and not the Government
4  to speak to.
5          THE COURT:  Okay.  Okay.  We will issue an
6  order probably early next week and then we'll talk to you
7  after the appeal, unless something comes up before that
8  on the representation issue.
9          MS. TARDIFF:  Thank you, Your Honor.
10         THE COURT:  Thank you all.
11         COUNSEL:  Thank you, Your Honor.
12         (Whereupon, at 3:03 p.m., the hearing was
13 adjourned.)
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                  CERTIFICATE OF TRANSCRIBER
 2
 3           I, Elizabeth M. Farrell, court-approved
 4   transcriber, certify that the foregoing is a correct
 5   transcript from the official electronic sound recording
 6   of the proceedings in the above-titled matter.
 7
 8
 9
10   DATE:   2/27/2020              S/Elizabeth M. Farrell
11                                  ELIZABETH M. FARRELL, CERT
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```