## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| In re DOWNSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | Sub-Master Docket No. 17-9002L<br><br>Senior Judge Loren A. Smith (E-Filed January 10, 2023) |
| THIS DOCUMENT APPLIES TO: ALL DOWNSTREAM CASES | |

**PLAINTIFFS' APPENDIX IN SUPPORT OF
RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

**<u>VOLUME III OF VIII</u>**

Rand P. Nolen
**FLEMING, NOLEN & JEZ L.L.P.**
2800 Post Oak Blvd., Suite 4000
Houston, Texas 77056
Telephone: (713) 621-7944
rand_nolen@fleming-law.com

Richard Warren Mithoff
**MITHOFF LAW**
500 Dallas Street, Ste. 3450
Houston, Texas 77002
Telephone: (713) 654-1122
mithoff@mithofflaw.com

Jack E. McGehee
**MCGEHEE, CHANGE, BARNES, LANDGRAF**
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
Telephone: (713) 864-4000
jmcgehee@lawtx.com

*Appointed Co-Lead Counsel for Plaintiffs*

*Of Counsel:*
Russell S. Post
David M. Gunn
Parth S. Gejji
Bennett Ostdiek
**BECK REDDEN L.L.P.**
4500 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 951-6292
rpost@beckredden.com

# INDEX TO APPENDIX[1]

| Description of Exhibit | Appendix Page No. |
|---|---|
| **Volume I of VIII** | |
| U.S. Army Corps of Engineers, Galveston District, Water Control Manual (Nov. 2012) (USACE016290-447) (Thomas Dep. Ex. 3) | A1 |
| U.S. Army Corps of Engineers, Galveston District, Draft Operational Assessment of the Addicks and Barker Reservoirs, Fort Bend and Harris Counties, TX (Oct. 2009) (USACE464017-041) | A159 |
| Email from P. Perez to L. Zetterstrom et al. (Aug. 30, 2017) (USACE803617-623) (Zetterstrom Dep. Ex. 27) | A184 |
| U.S. Army Corps of Engineers, Galveston District, Buffalo Bayou, Texas Reservoir Regulation Manual for Addicks and Barker Reservoirs, Buffalo Bayou Watershed (Apr. 1962) (USACE011626-715) | A191 |
| Memorandum for Record (CESWG-EC-HB) re: Addicks & Barker Dams: Deviation for Construction of New Outlet Structures Plan (USACE020346-360) | A281 |
| U.S. Army Corps of Engineers, Galveston District, Emergency Action Plan, Addicks Reservoir and Barker Reservoir, Buffalo Bayou and Tributaries, CESWG PLAN 500-1-3 (May 22, 2014) (USACE019755-897) | A296 |
| Excerpts from Deposition of Robert Thomas (July 31, 2018) | A439 |
| Excerpts from Deposition of Robert Thomas (Aug. 3, 2018) | A445 |
| Excerpts from Deposition of Robert Thomas (Sept. 7, 2018) | A450 |
| **Volume II of VIII** | |
| Excerpts from Depositions of Plaintiffs Regarding Acquisition of Plaintiffs' Test Properties | A458 |
| Excerpts from Depositions of Plaintiffs Regarding Knowledge of Prior Flooding | A493 |

---

[1] Much of the evidence relevant to the current cross-motions for summary judgment is the same evidence from the previous round of summary judgment briefing. *See* Dkt. 175-1 to 175-7. Thus, Plaintiffs have reproduced that summary judgment record and added new materials at the end.

| | |
|---|---|
| Excerpts from Depositions of Plaintiffs Regarding Plaintiffs' Knowledge of Reservoirs | A528 |
| Excerpts from Depositions of Plaintiffs Regarding Absence of Flooding of Plaintiffs' Test Properties Following Acquisition | A599 |
| Excerpts from Depositions of Plaintiffs Regarding Flooding of Plaintiffs' Test Properties Following Acquisition | A626 |
| Excerpts from Depositions of Plaintiffs Regarding Height of Inundation for Plaintiffs' Test Properties | A661 |
| Excerpts from Depositions of Plaintiffs Regarding Evacuation | A696 |
| Excerpts from Depositions of Plaintiffs Regarding Duration Test Properties Were Inaccessible | A717 |
| Excerpts from Depositions of Plaintiffs Regarding Extent of Damages to Test Properties and Loss of Personal Property | A743 |
| Excerpts from Depositions of Plaintiffs Regarding Duration of Exclusion from Ordinary Use of Test Properties | A884 |
| Excerpts from Depositions of Plaintiffs Regarding Flooding Prior to Corps' Release of Water from the Reservoirs | A967 |
| Plaintiffs' Fact Sheets | A1036 |
| Excerpts from Deposition of Richard Long (Aug. 7, 2018) | A1148 |
| Robert Thomas, Memorandum for Commander re: Addicks and Barker Dams, Houston, Texas, New Pool of Record (Oct. 27, 2017) (USACE016689-705) (Thomas Dep. Ex. 25) | A1156 |
| Excerpts from Deposition of Colonel Lars Zetterstrom (Sept. 6, 2018) | A1174 |
| Robert Thomas, Response to Notice of Deposition (Aug. 30, 2018) | A1188 |
| Email from M. Kauffman to M. Sterling with attachment (Sept. 20, 2017) (USACE06089) (Thomas Dep. Ex. 73) | A1194 |
| Expert Report of Dr. R. Nairn (Downstream) (Nov. 13, 2018) | A1205 |
| Expert Report of Dr. R. Nairn (Upstream) (Nov. 5, 2018) | A1477 |

| | |
|---|---|
| Supporting Data for Nairn Upstream Report, Summarizing Results of "Gates Closed" Model for Downstream Plaintiffs (BAIRD0000385) | A1741 |
| Excerpt from Deposition of Barry Keim (Dec. 6, 2018) | A1742 |
| Excerpt from Deposition of Jeffrey Lindner (Sept. 24, 2018) | A1744 |
| Initial Expert Opinion Report of M. Bardol, P.E., C.F.M., D.WRE and R. Bachus, Ph.D., P.E., D.GE (Nov. 13, 2018) | A1752 |
| Affidavit of Matthew Bardol, P.E., CFM, D.WRE (June 12, 2019) | A1843 |
| Affidavit of Robert Bachus, Ph.D., P.E. (June 12, 2019) | A1937 |
| **Volume III of VIII** | |
| Collected Deeds, Plats, and Related Documents Demonstrating Plaintiffs' Ownership of Test Properties | A2029 |
| **Volume IV of VIII** | |
| U.S. Army Corps of Engineers, Addicks and Barker Dam Modification Report (May 2013) (USACE0066025-428) | A2186 |
| **Volume V of VIII** | |
| U.S. Army Corps of Engineers, Environment Assessment re: Addicks and Barker Dams: Dam Safety (Nov. 1981) (USACE012894-963) | A2590 |
| U.S. Army Corps of Engineers, Galveston District, Memorandum re: Buffalo Bayou and Tributaries - Spillways for Addicks and Barker Dams (Nov. 26, 1979) (USACE327070-75) | A2660 |
| U.S. Army Corps of Engineers, Galveston District, Addicks & Barker Reservoirs: Special Report on Flooding (May 1992) (USACE015070-105) | A2666 |
| **Volume VI of VIII** | |
| U.S. Army Corps of Engineers, Galveston District, Addicks & Barker Reservoirs: Dam Safety Assurance, General Design Memorandum (June 1984) (USACE236341-619) | A2702 |
| **Volume VII of VIII** | |
| U.S. Army Corps of Engineers, Galveston District, Addicks Dam Letter Report for Emergency Seepage Control (May 1977) (USACE011966-2100) | A2981 |

| | |
|---|---|
| Letter from R. Kirkpatrick to R. Long (May 7, 1999), and subsequent related correspondence (USACE464769-72) | A3116 |
| Stipulations of Fact for Trial (Upstream Cases), 17-cv-9001-CFL, ECF No. 211 | A3120 |
| Email from M. Kauffman to C. Barefoot (Sept. 3 2017) (USACEII01703361-63) | A3138 |
| U.S. Army Corps of Engineers News Release, USACE Galveston District to Make Intermittent Releases at Addicks and Barker Dams (Aug. 27, 2017) (USACEII00991267) (Zetterstrom Dep. Ex. 15) | A3141 |
| NPR, Army Corps Suit (transcript of radio interview) (Sept. 17, 2017), https://www.npr.org/2017/09/16/551635267/army-corps-suit | A3142 |
| Excerpt of USACE 2017 Annual Report, Galveston District Water Control Activities (2017) (USACE869487-504) (Long Dep. Ex. 14) | A3151 |
| Email from M. Kauffman to L. Zetterstrom re: Forecasts (Sept. 3, 2017) (USACE810313-15) | A3169 |
| Email from R. Thomas to L. Zetterstrom re: DSO Recommendations on Operations at A/B Dams (Aug. 30, 2017) (USACE803952) | A3172 |
| Email from R. Thomas to M. Zalesak re: Addicks Barker (Aug. 26, 2017) (USACE805927-28) | A3173 |
| Addicks and Barker Emergency Coordination Team ("ABECT"), Minutes from ABECT Harvey After-Action Meeting (Apr. 11, 2018) (USACEII00738152-55) (Lindner Dep. Ex. 9) | A3175 |
| Email chain ending from E. Russo to L. Zetterstrom re: DRAFT Potential New Legislation SWG W Missions, Post Harvey (Aug. 30, 2017) (USACE803821-22) (Zetterstrom Ex. 28) | A3179 |
| Excerpts from the Deposition of John Flanagan (Oct. 19, 2018) | A3182 |
| Declaration of J. Britton on Behalf of Memorial SMC (June 12, 2019) | A3185 |
| Excerpts from Deposition of Timothy Stahl (Sept. 5, 2018) | A3322 |
| Cindy George, *Reservoirs That Shield Houston Create Headaches for Neighbors*, Houston Chronicle (April 22, 2016) | A3331 |

| Volume VIII of VIII | |
|---|---|
| Declarations of Plaintiffs Regarding Knowledge of Water Control Manual and Induced Surcharge Flood Regulation and Estimate of Out-of-Pocket Losses | A3333 |
| Declaration of Michael L. Miller | A3357 |
| Excerpts from Deposition of Robert Thomas (Sept. 7, 2018) | A3364 |
| Email chain ending from C. Scheffler to R. Thomas (Aug. 27, 2017) (USACEII00423619-20) (Thomas Dep. Ex. 88) | A3397 |
| Excerpts from Deposition of Richard Long (Aug. 7, 2018) | A3399 |
| Excerpts from Deposition of Colonel Lars Zetterstrom (Sept. 6, 2018) | A3406 |
| *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, No. 17-9001L, Opinion and Order (Oct. 28, 2022) | A3411 |
| Final Judgment from *Brazos River Authority v. City of Graham*, 354 S.W.2d 99 (Tex. 1961) | A3455 |
| Final Judgment from *Tarrant Regional Water District v. Gragg*, 151 S.W.3d 546 (Tex. 2004) | A3460 |
| Corrected Principal and Response Brief for Plaintiffs-Cross Appellants in *Ideker Farms, Inc. v. United States*, No. 2021-1849, -1875 (Fed. Cir.) | A3472 |
| Corrected Brief of the Chamber of Commerce of the United States of America as *Amicus Curiae* Supporting Plaintiffs-Cross Appellants and Affirmance on Causation Issues in *Ideker Farms, Inc. v. United States*, No. 2021-1849, -1875 (Fed. Cir.) | A3575 |
| Excerpts from Deposition of Jeff Lindner (Sept. 24, 2018) | A3614 |
| U.S. Army Corps of Engineers News Release, Corps Release at Addicks and Barker Dams to Begin (Aug. 28, 2017) | A3628 |
| *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, No. 17-9001L, Opinion and Order (Dec. 17, 2019) | A3630 |

Print Details                                                                      Page 1 of 2

HARRIS COUNTY APPRAISAL DISTRICT                    Tax Year: 2017
REAL PROPERTY ACCOUNT INFORMATION
**1024670000024**
🖶**Print**

| Owner and Property Information | | | | | | | |
|---|---|---|---|---|---|---|---|
| Owner Name & Mailing Address: | **ALDRED VAL A & LINDA 835 THORNVINE LN HOUSTON TX 77079-4521** | | Legal Description: | **LT 24 BLK 1 THORNWOOD SEC 4 R/P** | | | |
| | | | Property Address: | **835 THORNVINE LN HOUSTON TX 77079** | | | |
| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map® |
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 8,970 SF | 3,095 SF | 7700 | 25004 | 4858C | 488C |

**Value Status Information**

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

**Exemptions and Jurisdictions**

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| Residential Homestead (Multiple) | 025 | SPRING BRANCH ISD | 147,631 | Certified: 08/11/2017 | 1.394500 | 1.394500 |
| | 040 | HARRIS COUNTY | 251,231 | Certified: 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 251,231 | Certified: 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | 251,231 | Certified: 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 251,231 | Certified: 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 251,231 | Certified: 08/11/2017 | 0.005200 | 0.005195 |
| | 061 | CITY OF HOUSTON | 251,231 | Certified: 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway.**

**Valuations**

| Value as of January 1, 2016 | | | Value as of January 1, 2017 | | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 219,938 | | Land | 219,938 | |
| Improvement | 241,062 | | Improvement | 236,217 | |
| Total | 461,000 | 441,625 | Total | 456,155 | 456,155 |

**Land**

| Market Value Land | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 8,625 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 25.00 | 25.00 | 215,625.00 |
| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 345 | 1.00 | 0.50 | 1.00 | -- | 0.50 | 25.00 | 12.50 | 4,313.00 |

**Building**

https://public.hcad.org/records/Print.asp?taxyear=2017&acct=1024670000024          &c...   12/27/2017

A2029

Print Details                                                                    Page 2 of 2

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1973 | Residential Single Family | Residential 1 Family | Good | 3,095 * | Displayed |

\* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

### Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cond / Desir / Util | Very Good |
| Foundation Type | Slab |
| Grade Adjustment | B+ |
| Heating / AC | Central Heat/AC |
| Physical Condition | Average |
| Exterior Wall | Frame / Concrete Blk |
| Exterior Wall | Brick / Masonry |
| Element | Units |
| Room: Total | 9 |
| Room: Rec | 2 |
| Room: Full Bath | 3 |
| Room: Bedroom | 4 |
| Fireplace: Masonry Firebrick | 1 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 1,005 |
| ONE STORY MAS PRI | 60 |
| ONE STORY MAS PRI | 1,004 |
| MAS/CONC PATIO PRI | 516 |
| OPEN FRAME PORCH PRI | 96 |
| OPEN FRAME PORCH PRI | 21 |
| BASE AREA UPR | 1,005 |
| ONE STORY MAS UPR | 21 |

### Extra Features

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Gunite Pool | Average | Average | 560.00 | 2003 |
| 2 | Frame Detached Garage | Average | Average | 462.00 | 1973 |

A2030

🖨 **Print**

**Ownership History: 1000020000007**

**403 GREENPARK DR**
**HOUSTON TX 77079**

| Owner | Effective Date |
|-------|----------------|
| AGL LLC | 12/12/2016 |
| KLENK DAVID & ROBIN | 6/11/2001 |
| AHMED RIAZ & NIGHAT | 3/11/1988 |
| EQUITABLE RELOC MGMT CORP | 5/26/1986 |
| CURRENT OWNER | 1/2/1985 |
| EKHOLM DENE & CAROL ANN | 1/2/1984 |

[end of record]

**-close window-**

A2031

JUL 21 '97 15:28  FROM GREENPOINT MORTGAGE   TO 7:34671793   PAGE.005
#9977255526

## S564902

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

Alamo Title Company #77
Title Agency Div...

## WARRANTY DEED WITH VENDOR'S LIEN

07/29/97  20:47:00:44  S564902   $11.50

| THE STATE OF TEXAS | )( | |
|---|---|---|
| | )( | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | )( | |

THAT JOHN EDWARD SIMPSON, JR. AND WIFE, DIANNE P. SIMPSON, hereinafter called "Grantor" (whether one or more), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to Grantor paid by VAL A. ALDRED AND LINDA ALDRED , HUSBAND AND WIFE, hereinafter called "Grantee" (whether one or more), the receipt of which is hereby acknowledged and confessed, and the further consideration of the execution and delivery by Grantee of one certain Promissory Note in the principal sum of $157,500.00, of even date herewith, payable to the order of GREENPOINT MORTGAGE CORP., hereinafter called "Mortgagee", bearing interest at the rate therein provided; said Note containing the usual reasonable attorney's fee clause and various acceleration of maturity clauses in case of default, and being secured by Vendor's Lien and superior title retained herein in favor of said Mortgagee, and being also secured by a Deed of Trust of even date herewith from Grantee to JAMES R. MANION, Trustee; and

WHEREAS, Mortgagee has, at the special instance and request of Grantee, paid to Grantor a portion of the purchase price of the property hereinafter described, as included in the above-described Note, said Vendor's Lien against said property securing the payment of said Note is hereby assigned, transferred and delivered to Mortgagee, Grantor hereby conveying to said Mortgagee the said superior title to said property, subrogating said Mortgagee to all the rights and remedies of Grantor in the premises by virtue of said liens; and

Grantor has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto said Grantee, the following described property, to-wit:

LOT 24, IN BLOCK 1, OF REPLAT OF THORNWOOD, SECTION FOUR (4), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 166, PAGE 1 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

97 JUL 29 PH 3:15

TO HAVE AND TO HOLD the above-described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging unto said Grantee, his heirs and assigns, forever. And Grantor does hereby bind himself, his heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto said Grantee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Page 1 of 2 pages
GVA000-1

A2032

JUL 21 '97 15:28   FROM GREENPOINT MORTGAGE   TO 7134671793   PAGE.006

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

Taxes for the current year have been prorated and their payment is assumed by Grantee.

This conveyance is made subject to any and all valid and subsisting restrictions, easements, rights of way, reservations, maintenance charges together with any lien securing said maintenance charges, zoning laws, ordinances of municipal and/or other governmental authorities, conditions and covenants, if any, applicable to and enforceable against the above-described property as shown by the records of the County Clerk of said County.

The use of any pronoun herein to refer to Grantor or Grantee shall be deemed a proper reference even though Grantor and/or Grantee may be an individual (either male or female), a corporation, a partnership or a group of two or more individuals, corporations and/or partnerships, and when this Deed is executed by or to a corporation, or trustee, the words "heirs, executors and administrators" or "heirs and assigns" shall, with respect to such corporation or trustee, be construed to mean "successors and assigns".

It is expressly agreed that the Vendor's Lien is retained in favor of the payee of said Note against the above-described property, premises and improvements, until said Note and all interest thereon shall have been fully paid according to the terms thereof, when this Deed shall become absolute.

EXECUTED this 22ND day of JULY, 1997.

_John Edward Simpson Jr._
JOHN EDWARD SIMPSON, JR.

_Dianne P. Simpson_
DIANNE P. SIMPSON

JUL 29 1997

_Beverly R. Kaufman_
COUNTY CLERK
HARRIS COUNTY TEXAS

RETURN TO:
GRANTEE'S ADDRESS:
Val A. Aldred
835 THORNVINE LANE
HOUSTON, TEXAS 77079

STATE OF Texas , COUNTY OF Harris , ss:

This instrument was acknowledged before me on this 28 day of July 19 97 , by JOHN EDWARD SIMPSON, JR. and DIANNE P. SIMPSON.

PATTI WINGEMUTH
Notary Public State of Texas
My Commission Expires 4/26/99

_Patti Wingemuth_
NOTARY PUBLIC

Page 2 of 2 pages
OV4000-2

** TOTAL PAGE.006 **

A2033

1/16/2018         Property Details

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**1161720120027**

Tax Year: 2017

 Print

| Owner and Property Information | | |
|---|---|---|
| Owner Name & Mailing Address: | **SHIPOS JENNIFER M**<br>**931 BAYOU PKWY**<br>**HOUSTON TX 77077-1137** | Legal Description: **LT 27 BLK 12**<br>**OAKS OF PARKWAY SEC 1**<br><br>Property Address: **931 BAYOU PKY**<br>**HOUSTON TX 77077** |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 9,460 SF | 4,358 SF | 7957.05 | 1122 | 4757B | 488F |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| **Residential Homestead** | 001 | HOUSTON ISD | 147,541 | Certified: 08/11/2017 | 1.206700 | 1.206700 |
| | 040 | HARRIS COUNTY | 122,541 | Certified: 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 122,541 | Certified: 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | 122,541 | Certified: 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 122,541 | Certified: 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 122,541 | Certified: 08/11/2017 | 0.005200 | 0.005195 |
| | 048 | HOU COMMUNITY COLLEGE | 61,270 | Certified: 08/11/2017 | 0.100263 | 0.100263 |
| | 061 | CITY OF HOUSTON | 122,541 | Certified: 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway**.

### Valuations

| Value as of January 1, 2016 | | | Value as of January 1, 2017 | | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 149,280 | | Land | 149,280 | |
| Improvement | 533,400 | | Improvement | 533,400 | |
| Total | 682,680 | 557,003 | Total | 682,680 | 612,703 |

### Land

| | Market Value Land | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 9,200 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 16.00 | 16.00 | 147,200.00 |

A2034

| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 260 | 1.00 | 0.50 | 1.00 | -- | 0.50 | 16.00 | 8.00 | 2,080.00 |

## Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1990 | Residential Single Family | Residential 1 Family | Excellent | 4,358 * | Displayed |

\* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

### Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cond / Desir / Util | Average |
| Foundation Type | Slab |
| Grade Adjustment | A- |
| Heating / AC | Central Heat/AC |
| Physical Condition | Average |
| Exterior Wall | Brick / Veneer |
| Element | Units |
| Room: Total | 9 |
| Room: Rec | 1 |
| Room: Half Bath | 1 |
| Room: Full Bath | 3 |
| Room: Bedroom | 4 |
| Fireplace: Masonry Firebrick | 2 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 1,089 |
| ONE STORY MAS PRI | 289 |
| ONE STORY MAS PRI | 951 |
| MAS/BRK GARAGE PRI | 693 |
| OPEN MAS PORCH PRI | 54 |
| ONE STORY MAS PRI | 247 |
| BASE AREA UPR | 1,089 |
| ONE STORY FRAME UPR | 693 |

### Extra Features

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Canopy - Residential | Average | Average | 195.00 | 2000 |

A2035

12/12/2017                                      HCAD: Ownership History

**Print**

**Ownership History: 1161720120027**

**931 BAYOU PKY**
**HOUSTON TX 77077**

| Owner | Effective Date |
|---|---|
| SHIPOS JENNIFER M | 11/6/2015 |
| SHIPOS MARK J & JENNIFER M | 12/2/1996 |
| BARON IAN | 12/6/1993 |
| TAI ROBERT T & DORCAS | 5/24/1990 |
| CHARTER ASSOCIATES | 3/10/1987 |
| MISCHER CORP | 8/7/1986 |
| CHARTER ASSOCIATES | 1/2/1985 |

[end of record]

**-close window-**

A2036

## HOUSTON ASSOCIATION OF REALTORS ®

**ONE TO FOUR FAMILY RESIDENTIAL EARNEST MONEY CONTRACT (RESALE)**    10-25-93
**ALL CASH, ASSUMPTION, THIRD PARTY CONVENTIONAL OR SELLER FINANCING**

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** E.I. DU PONT DE NEMOURS AND COMPANY _____ (Seller) agrees to sell
and convey to Mark J.Shipos _____ ETUX Jennifer M. Shipos _____ (Buyer) and Buyer
agrees to buy from Seller the property described below.

2. **PROPERTY:** Lot 27 _____, Block 12 _____, Oaks of Parkway Sec. 1 _____
Addition, City of Houston _____, Harris _____ County, Texas,
known as 931 Bayou Parkway, Houston, Texas 77077 _____ (Address), or as described on attached
exhibit, together with the following items, if any: curtains and rods, draperies and rods, valances, blinds, window shades, screens,
shutters, awnings, wall-to-wall carpeting, mirrors fixed in place, ceiling fans, attic fans, mail boxes, television antennae and
satellite dish with controls, permanently installed heating and air conditioning units and equipment, window air conditioning units,
built-in security and fire detection equipment, lighting and plumbing fixtures, water softener, built-in kitchen equipment, garage
door openers with controls, built-in cleaning equipment, all swimming pool equipment, shrubbery, permanently installed outdoor
cooking equipment, built-in fireplace screens and all other property owned by Seller and attached to the above described real
property except the following property which is not included: _____

All property sold by this contract is called the "Property." The Property [X] is [ ] is not subject to mandatory membership in
an owners' association and its assessments and requirements.

3. **SALES PRICE:**
   A. Cash portion of the Sales Price payable by Buyer ................................... $ _____ 26,500.00 _____
   B. Sum of all financing described below (excluding any private mortgage insurance [ PMI ] premium) ... $ _____ 238,500.00 _____
   C. Sales Price (Sum of A and B). ........................................ $ _____ 265,000.00 _____

4. **FINANCING:** The portion of the Sales Price not payable in cash shall be paid as follows: (Check applicable boxes below)
   [ ] A. ASSUMPTION:
       [ ] (1) Buyer shall assume the unpaid principal balance of a first lien promissory note payable to _____
          _____ which unpaid balance at closing will
          be $ _____. The total current monthly payment including principal, interest and reserve deposits
          is $ _____. Buyer's initial payment shall be the first payment due after closing.
       [ ] (2) Buyer shall assume the unpaid principal balance of a second lien promissory note payable to _____
          _____ which unpaid balance at closing will
          be $ _____. The total current monthly payment including principal, interest and reserve deposits
          is $ _____. Buyer's initial payment shall be the first payment due after closing.
   Buyer's assumption of an existing note includes all obligations imposed by the deed of trust securing the note.
   If the unpaid balance(s) of any assumed loan(s) as of the Closing Date varies from the loan balance(s) stated above, the
   [ ] cash payable at closing [ ] sales price shall be adjusted by the amount of any variance; provided, if the total principal balance
   of all assumed loans varies in an amount greater than $350.00 at closing, either party may terminate this contract and the
   Earnest Money shall be refunded to Buyer unless either party elects to eliminate the excess in the variance by an appropriate
   adjustment at closing. If the noteholder requires (a) payment of an assumption fee in excess of $ _____ in A(1) above
   or $ _____ in A(2) above and Seller declines to pay such excess, or (b) an increase in the interest rate to more
   than _____ % in A(1) above, or _____ % in A(2) above, or (c) any other modification of the loan documents, Buyer may
   terminate this contract and the Earnest Money shall be refunded to Buyer. A vendor's lien and deed of trust to secure
   assumption shall be required which shall automatically be released on execution and delivery of a release by noteholder. If
   Seller is released from liability on any assumed note, the vendor's lien and deed of trust to secure assumption shall not be
   required.
   **NOTICE TO BUYER:** The monthly payments, interest rates or other terms of some loans may be adjusted by the lender at
   or after closing. If you are concerned about the possibility of future adjustments, do not sign the contract without examining
   the notes and deed of trust.
   **NOTICE TO SELLER:** Your liability to pay the note assumed by Buyer will continue unless you obtain a release of liability
   from the lender. If you are concerned about future liability, you should use the TREC Release of Liability Addendum.
   [X] B. THIRD PARTY FINANCING:
       [X] (1) A third party first lien note of $ _____ 238,500.00 _____ (excluding any financed PMI premium), due in full
          in _____ 30 _____ year(s), with interest not to exceed _____ 8.000 _____ % per annum for the first 30
          year(s) of the loan. The loan shall be [X] with [ ] without PMI.

Initialed for identification by Buyer _____ and Seller _____     **TREC NO. 20-2**
Printed with AutoContract software. AutoRealty Products, Inc. 1050 West Pipeline, Suite 101 Hurst, TX 76053 (800) 322-1178     File Name: SHIPOS

EXHIBIT / PENGAD 800-631-6989 / 001A

Shipos000189

One to Four Family Residential Earnest Money Contract Concerning 831 Bayou Parkway, Houston, Texas 77077      Page Two      10-25-93
(Address of Property)

☐ (2) A third party second lien note of $ _____, due in full in _____ year(s), with interest not to exceed _____ % per annum for the first _____ year(s) of the loan.

☐ C. TEXAS VETERANS' HOUSING ASSISTANCE PROGRAM LOAN:
A Texas Veterans' Housing Assistance Program Loan (the Program Loan) of $ _____ for a period of at least _____ years at the interest rate established by the Texas Veterans' Land Board at the time of closing.

☐ D. SELLER FINANCING: A promissory note from Buyer to Seller of $ _____, bearing _____ % interest per annum, secured by vendor's and deed of trust liens, in accordance with the terms and conditions set forth in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

☐ E. CREDIT APPROVAL ON ASSUMPTION OR SELLER FINANCING: Within _____ days after the effective date of this contract, Buyer shall deliver to Seller ☐ credit report ☐ verification of employment, including salary ☐ verification of funds on deposit in financial institutions ☐ current financial statement to establish Buyer's creditworthiness for assumption approval or seller financing and ☐ _____
If Buyer's documentation is not delivered within the specified time, Seller may terminate this contract by notice to Buyer within 5 days after expiration of the time for delivery, and the Earnest Money shall be paid to Seller. If this contract is not so terminated, Seller shall be deemed to have accepted Buyer's credit. If the documentation is timely delivered, and Seller determines in Seller's sole discretion that Buyer's credit is unacceptable, Seller may terminate this contract by notice to Buyer within 5 days after expiration of the time for delivery and the Earnest Money shall be refunded to Buyer. If Seller does not so terminate this contract, Seller shall be deemed to have accepted Buyer's credit. Buyer hereby authorizes any credit reporting agency to furnish to Seller at Buyer's sole expense copies of Buyer's credit reports.

Within __5__ days after the effective date of this contract Buyer shall apply for all third party financing or noteholder's approval of any assumption and shall make every reasonable effort to obtain financing or assumption approval. Financing or assumption approval shall be deemed to have been obtained when the lender determines that Buyer has satisfied all of lender's financial conditions (those items relating to Buyer's ability to qualify for assumption approval or a loan). If financing (including any financed PMI premium) or assumption approval is not obtained within __27__ days after the effective date hereof, this contract shall terminate and the Earnest Money shall be refunded to Buyer. Each note to be executed hereunder shall be secured by vendor's and deed of trust liens.

5. EARNEST MONEY: Buyer shall deposit $ _____5,000.00 as Earnest Money with Fidelity National Title
Fidelity National Title _____ at _____
(Address), as Escrow Agent, upon execution of this contract by both parties. ☐ Additional Earnest Money of $ _____ shall be deposited by Buyer with Escrow Agent on or before _____, 19 _____. If Buyer fails to deposit the Earnest Money as required by this contract, Buyer shall be in default.

6. TITLE POLICY AND SURVEY:
☒ A. TITLE POLICY: Seller shall furnish to Buyer at Seller's expense an Owner Policy of Title Insurance (the Title Policy) issued by Fidelity National Title _____ (the Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
(1) Restrictive covenants common to the platted subdivision in which the Property is located.
(2) The standard printed exception for standby fees, taxes and assessments.
(3) Liens created as part of the financing described in Paragraph 4.
(4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
(6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements.
(7) The standard printed exception as to marital rights.
(8) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for Title Insurance (the Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment other than the standard printed exceptions. Seller authorizes the Title Company to mail or hand deliver the Commitment and related documents to Buyer at Buyer's address shown below. If the Commitment is not delivered to Buyer within the specified time, the time for delivery shall be automatically extended up to 15 days. Buyer shall have 5 days after the receipt of the Commitment to object in writing to matters disclosed in the Commitment. Buyer may object to existing building and zoning ordinances and items 6(A)(1) through (8) above if Buyer determines that any such ordinance or items prohibits the following use or activity: _____

001A _____

Initialed for identification by Buyer _____ and Seller _____      TREC NO. 20-2
Printed with AutoContract software. AutoRealty Products, Inc. 1069 West Pipeline, Suite 101 Hurst, TX 76053 (800) 322-1178      File Name: SHIP06

Shipos000190

A2038

One to Four Family Residential Earnest Money Contract Concerning 931 Bayou Parkway, Houston, Texas 77077    Page  Three    10-25-93
(Address  of  Property)

[X] B. SURVEY REQUIRED: (Check one box only)

[X]     (1) Within ____ 10 days after Buyer's receipt of a survey plat furnished to a third-party lender at Buyer's expense, Buyer may object in writing to any matter shown on the plat which constitutes a defect or encumbrance to title.

[ ]     (2) Within _____ days after the effective date of this contract, Buyer may object in writing to any matter which constitutes a defect or encumbrance to title shown on a survey plat obtained by Buyer at Buyer's expense.

The survey shall be made by a Registered Professional Land Surveyor acceptable to the title company and lender. The plat shall: (a) identify the Property by metes and bounds or platted lot description; (b) show that the survey was made and staked on the ground with corners permanently marked; (c) set forth the dimensions of the property; (d) show the location of all improvements, highways, streets, roads, railroads, rivers, creeks or other waterways, fences, easements and rights of way on the Property; (e) show any discrepancies or conflicts in boundaries, any visible encroachments, and any portion of the Property lying within the 100 year floodplain as shown on the current Federal Emergency Management Agency map; and (f) contain the surveyor's certificate that the survey as shown by the plat is true and correct. Utility easements created by the dedication deed and plat of the subdivision in which the Property is located shall not be a basis for objection.

Buyer's failure to object under Paragraph 6A or 6B within the time allowed shall constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment shall not be deemed to have been waived. If objections are made by Buyer or any third party lender, Seller shall cure the objections within 15 days from the date Seller receives them and the Closing Date shall be extended as necessary. If objections are not cured by the extended Closing Date, this contract shall terminate and the Earnest Money shall be refunded to Buyer unless Buyer elects to waive the objections.

NOTICE TO SELLER AND BUYER:

(1) Broker advises Buyer to have an Abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 50 of the Texas Water Code requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(3) Buyer is advised that the presence of wetlands, toxic substances including lead-base paint or asbestos and wastes or other environmental hazards or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum either promulgated by TREC or required by the parties should be used.

(4) If the Property adjoins and shares a common boundary with the tidally influenced submerged lands of the state, Section 33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum either promulgated by TREC or required by the parties should be used.

7. PROPERTY CONDITION.

A. SELLER'S DISCLOSURE OF PROPERTY CONDITION (the "Notice")(Section 5.008 Property Code)(check one box only):

[X]     (1) Buyer has received the Notice.

[ ]     (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the notice to Buyer. If Seller fails to deliver the Notice within the time allowed, Buyer may terminate this contract within three days after the time for delivery of the Notice. If Seller timely delivers the Notice, Buyer may terminate this contract for any reason within seven days after Buyer receives the Notice.

B. REQUIRED REPAIRS OR INSPECTIONS. (Check one box only):

[ ]     (1) Buyer accepts the Property in its present condition. Buyer shall pay for any repairs designated by a lender.

[ ]     (2) Buyer requires the completion of any repairs designated by a lender and the following repairs: _____

[X]     (3) Buyer requires the completion of any repairs designated by a lender and any repairs designated by Buyer pursuant to the attached Property Condition Addendum. Buyer shall pay for inspections, reinspections, reports and certificates.

C. PAYMENT FOR TREATMENT OR REPAIRS. Subject to the limitations set out below, Seller shall pay for any treatment or repairs required by the contract, any lender and any Property Condition Addendum. Seller is not obligated to pay more than $ _____ 0.00 for treatment and repairs resulting from termites or other wood-destroying insects or to pay more than $ _____ 0.00 for all other repairs. Seller shall also pay for turning utilities on for inspections and reinspections.

D. BUYER'S CHOICES. After Seller receives all inspection reports and repair designations made by Buyer or any lender pursuant to 7B(2) or 7B(3), Seller shall notify Buyer within 7 days (1) of the costs of all required treatment and repairs and (2) whether Seller will pay the costs that exceed the amounts in 7C. If Seller notifies Buyer that Seller will not pay the excess costs, Buyer may (1) pay the excess costs (2) accept the Property with the costs of treatment and repairs not to exceed the amounts in 7C (if permitted by any lender), or (3) terminate this contract and the Earnest Money shall be refunded to Buyer.
001A    Buyer shall notify Seller of Buyer's choice within 5 days after Buyer is notified Seller will not pay the excess costs.

Buyer Initialed for identification by Buyer _____ _____ and Seller _____    TREC NO. 20-2
Printed with AutoContract software. AutoRealty Products, Inc. 1060 West Pipeline, Suite 101 Hurst, TX 76053 (800) 322-1178    File Name: SHIPOS

Shipas000191

A2039

One to Four Family Residential Earnest Money Contract Concerning 931 Bayou Parkway, Houston _____  Page Four     10-25-93
(Address of Property)

If Seller does not notify Buyer, Buyer shall notify Seller of Buyer's choice from the three alternatives provided above within 12 days after Seller receives all inspection reports and repair designations from Buyer and any lender. *If Buyer does not notify Seller of Buyer's choice within the specified time, Buyer shall accept the Property with the costs of treatment and repairs limited to the amounts stated in 7C.*

If the total cost of required treatment and repairs exceeds 5 % of the Sales Price and Seller agrees to pay the total cost, Buyer may (1) accept the property with all required treatment and repairs, or (2) terminate this contract and the Earnest Money shall be refunded to Buyer. Buyer shall notify Seller of Buyer's choice within 5 days after Seller notifies Buyer that Seller will pay all costs of treatment and repair. *If Buyer does not notify Seller of Buyer's choice within the specified time Buyer shall accept the Property with all required treatment and repairs.*

  E. COMPLETION OF TREATMENT OR REPAIRS. Seller shall complete required or agreed treatment and repairs prior to the Closing Date. If Seller fails to complete any required or agreed treatment or repairs, Buyer may do so; Seller shall be liable for the cost up to the maximum agreed amount which shall be deducted from the sales proceeds or collected from Seller at closing if necessary. Buyer may also exercise applicable remedies provided in Paragraph 15.

8. BROKERS' REPRESENTATION AND FEES: COLDWELL BANKER UNITED, REALTORS) A1
(Listing Broker) represents  [X] Seller only  [ ] Seller and Buyer.
Any other broker represents:
[ ] Seller as Listing Broker's subagent;
[X] Buyer only as Buyer's agent.
Brokers' fees shall be paid as specified by separate written agreements.

9. CLOSING: The closing of the sale shall be on or before December 6 _____ , 19 96 _____ , or within 7 days after objections to title and survey have been cured, whichever date is later (the Closing Date); *however, if financing or assumption approval has been obtained pursuant to Paragraph 4,* the Closing Date shall be extended up to 15 days only  if necessary to comply with lender's closing requirements (for example, survey, insurance policies, property repairs, closing documents). If either party fails to close this sale by the Closing Date, the non-defaulting party shall be entitled to exercise the remedies contained in Paragraph 15. At closing Seller shall furnish tax statements or certificates showing no delinquent taxes, and a General Warranty Deed conveying good and indefeasible title showing no additional exceptions to those permitted in Paragraph 6.

10. POSSESSION: Seller shall deliver possession of the Property to Buyer on Closing and Funding _____ in its present or required repaired condition, subject to the dollar limitations of Paragraph 7, ordinary wear and tear excepted. Any possession by Buyer prior to closing or by Seller after closing that is not authorized by a temporary lease form promulgated by TREC or required by the Parties shall establish a landlord-tenant at sufferance relationship between the parties. *Consult your insurance agent prior to change of possession as insurance coverage may be limited or terminated.*

11. SPECIAL PROVISIONS: [Insert only factual statements and business details applicable to this sale. A licensee shall not add to a promulgated earnest money contract form factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use. 22 TAC §537.11 (d).]
1. THIS CONTRACT IS CONTINGENT UPON SATISFACTORY INSPECTIONS. IF BUYER DEEMS INSPECTIONS TO BE UNSATISFACTORY, BUYER WILL NOTIFY SELLER IN WRITING WITHIN 10 DAYS FROM THE EFFECTIVE DATE OF THIS CONTRACT AND EARNEST MONEY WILL BE RELEASED TO BUYER.

2. BUYER HAS UNTIL CLOSING TO OBJECT IN WRITING TO ANY MATTER SHOWN ON THE PLAT WHICH CONSTITUTES A DEFECT OR ENCUMBRANCE TO TITLE

12. SALES EXPENSES: The following expenses shall be paid at or prior to closing:
  A. Appraisal fees shall be paid by Buyer _____ .
  B. The total of loan discount and buydown fees (including any Texas Veterans' Housing Assistance Program Participation Fee) shall not exceed _____ 0.000 % of the loan of which Seller shall pay the first _____ 0.000 % of the loan and Buyer shall pay the remainder.
  C. Seller's Expenses: Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses stipulated to be paid by Seller under other provisions of this contract.
  D. Buyer's Expenses: Loan application, origination and commitment fees; loan assumption costs; preparation and recording of deed of trust to secure assumption; lender required expenses incident to new loan(s): (for example, PMI premium, preparation of loan documents, survey, recording fees, tax service and research fees, warehouse or underwriting fees, copies of restrictions and easements, amortization schedule, premiums for mortgagee title policies and endorsements required by lender, credit reports, photos; required premiums for flood and hazard insurance; required reserve deposit for insurance premiums and ad

001A

Initialed for identification by Buyer _____ and Seller _____     TREC NO. 20-2
Printed with AutoContract software. AutoRealty Products, Inc. 1060 West Pipeline, Suite 101 Hurst, TX 76053 (600) 322-1178     File Name: SHIPOS

Shipcs000192

A2040

One to Four Family Residential Earnest Money Contract Concerning 931 Bayou Parkway, Houston, Texas 77077      Page Five      10-25-93
(Address of Property)

valorem taxes; interest on all monthly installment payment notes from date of disbursements to one month prior to dates of first monthly payments; customary Program Loan costs for Buyer; one-half of escrow fee; and other expenses stipulated to be paid by Buyer under other provisions of this contract.

E. PMI premium not to exceed **MARKET PRICE** shall be paid by Buyer, and ☐ paid in cash at closing ☒ added to the amount of the loan or ☐ paid as follows: _____

F. If any sales expense exceeds the amount stated in this contract to be paid by either party, either party may terminate this contract unless either party agrees to pay such excess. In no event shall Buyer pay charges and fees expressly prohibited by the Texas Veteran's Housing Assistance Program or other government loan program regulations.

13. **PRORATIONS:** Flood and hazard insurance premiums (excluding mortgage insurance), taxes for the current year, interest, maintenance fees, assessments and rents shall be prorated through the Closing Date. However, if a loan is assumed and the lender maintains an escrow account for the payment of taxes and insurance, the above items ☐ shall ☐ shall not be prorated. Whether or not prorations are made, the escrow account shall be transferred to Buyer without any deficiency. If prorations are made Buyer shall reimburse Seller for the amount in the transferred account. If prorations are not made, the escrow account shall be transferred to Buyer without reimbursement to Seller. If a transfer is permitted by the insurance carrier, the insurance policy in force ☐ shall ☐ shall not be transferred to Buyer. If the insurance policy in force is not transferred, Buyer shall pay the premium for a new policy.

14. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty loss, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller is unable to do so without fault, Buyer may either (a) terminate this contract and the Earnest Money shall be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date shall be extended as necessary or (c) accept the Property in its damaged condition and accept an assignment of insurance proceeds. Provisions of the Texas Property Code to the contrary shall not apply.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer shall be in default, and Seller may either (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the Earnest Money as liquidated damages, thereby releasing both parties from this contract. If Seller is unable without fault to make any non-casualty repairs or deliver the Commitment within the time allowed, Buyer may either terminate this contract and receive the Earnest Money as the sole remedy or extend the time for performance up to 15 days and the Closing Date shall be extended as necessary. If Seller fails to comply with this contract for any other reason, Seller shall be in default and Buyer may either (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the Earnest Money, thereby releasing both parties from this contract.

16. **ATTORNEY'S FEES:** If Buyer, Seller, Listing Broker, Other Broker or Escrow Agent is a prevailing party in any legal proceeding brought under or with relation to this contract, such party shall be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

17. **ESCROW:** The Earnest Money is deposited with Escrow Agent with the understanding that Escrow Agent is not (a) a party to this contract and does not have any liability for the performance or non-performance of any party to this contract, (b) liable for interest on the Earnest Money or (c) liable for any loss of Earnest Money caused by the failure of any financial institution in which the Earnest Money has been deposited unless the financial institution is acting as Escrow Agent. If either party makes demand for the payment of the Earnest Money, Escrow Agent has the right to require from all parties and brokers a written release of liability of Escrow Agent for disbursement of the Earnest Money. Any refund or disbursement of Earnest Money under this contract shall be reduced by the amount of unpaid expenses incurred on behalf of the party receiving the Earnest Money, and Escrow Agent shall pay the same to the creditors entitled thereto. At closing, the Earnest Money shall be applied first to any cash down payment, then to Buyer's closing costs and any excess refunded to Buyer. Demands and notices required by this paragraph shall be in writing and delivered by hand delivery or by certified mail, return receipt requested.

18. **REPRESENTATIONS:** Seller represents that as of the Closing Date (a) there will be no liens, assessments, Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the Sales Price unless securing payment of any loans assumed by Buyer and (b) assumed loans will be without default. If any representation in this contract is untrue on the Closing Date, this contract may be terminated by Buyer and the Earnest Money shall be refunded to Buyer. All representations contained in this contract and an agreement for mediation shall survive closing.

19. **NOTICES:** All notices shall be in writing and effective when mailed to or hand-delivered at the addresses shown below.

20. **FEDERAL TAX REQUIREMENT:** If Seller is a "foreign person", as defined by applicable law, or if Seller fails to deliver an affidavit that Seller is not a "foreign person", then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. IRS regulations require filing written reports if cash in excess of specified amounts is received in the transaction.

21. **DISPUTE RESOLUTION:** It is the policy of the State of Texas to encourage the peaceable resolution of disputes through alternative dispute resolution procedures. The parties are encouraged to use an addendum approved by TREC to submit to

001A

Initialed for identification by Buyer _____ and Seller _____        TREC NO. 20-2

Printed with AutoContract software. AutoRealty Products, Inc. 1030 West Pipeline, Suite 101 Hurst, TX 76053 (800) 322-1178        File Name: SHIPOS

Shipos000193

A2041

One to Four Family Residential Earnest Money Contract Concerning <u>931 Bayou Parkway, Houston</u>    Page Six    10-25-93
(Address of Property)

mediation disputes which cannot be resolved in good faith through informal discussion.

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (list): <u>DUPONT RIDER TO PURCHASE AGREE-MENT,SELLERS DISCLOSURE, AGREEMENT FOR MEDIATION, PROP. CONDITION ADDENDUM, ADDENDUM FOR SELLERS DISCLOSURE ON LEAD BASED PAINT</u>

23. **CONSULT YOUR ATTORNEY:** Brokers cannot give legal advice. This is intended to be a legally binding contract. READ IT CAREFULLY. If you do not understand the effect of this contract, consult your attorney BEFORE signing.

Buyer's                            Seller's

Attorney:                           Attorney:

EXECUTED in multiple originals the _13th_ day of _November_, 19 _96_ _(THE EFFECTIVE DATE)._
*(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE AND THE PARTIES' ADDRESSES.)*

Buyer **Mark J.Shipos**                Seller **E.I. DU PONT DE NEMOURS AND COMPANY**

Buyer **Jennifer M. Shipos**                Seller

**855 Augusta #334**

**Houston, TX 77057**      **952-5437**

Buyer's Address        Phone No.         Seller's Address        Phone No.

> The form of this contract has been approved by the Texas Real Estate Commission. Such approval relates to this contract form only. No representation is made as to the legal validity or adequacy of any provision in any specific transaction. It is not suitable for complex transactions. Extensive riders or additions are not to be used. (10-93) TREC NO. 20-2, This form replaces TREC NO. 20-1.

---

## AGREEMENT BETWEEN BROKERS

Listing Broker agrees to pay <u>Vonnie Cobb, Inc. REALTORS</u>,    Other Broker, a fee of _____ 3.000% of the total sales price when the Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

| | | | |
|---|---|---|---|
| **Vonnie Cobb, Inc. REALTORS** | 0280754 | **COLDWELL BANKER UNITED, REALTORS** | 0406046 |
| Other Broker | License No. | Listing Broker | License No. |
| By: | | By: | |
| **DENNIS POKRZYWNICKI** | | **BARBARA NUNNALLY** | |
| **4842 Beechnut** | | **14033 S.W. FREEWAY, SUITE 702** | |
| **Houston, Texas 77096** | **713-664-1818** | **SUGARLAND, TEXAS 77478** | **242-6200** |
| Other Broker's Address | Phone No. | Listing Broker's Address | Phone No. |

---

## RECEIPT

Receipt of ☐ Contract and ☐ $_____ 5,000.00 Earnest Money in the form of _____

is acknowledged.

Escrow Agent: **Fidelity National Title**      By: _____
    **Fidelity National Title**

Date: _____, 19 ____.

                            Address

**001A**                        City             Texas    Zip Code

                                                **TREC NO. 20-2**

Printed with AutoContract software. AutoRealty Products, Inc. 1060 West Pipeline, Suite 101  Hurst, TX 76053  (800) 322-1178    File Name: SHIPOS

Shipos000194

A2042

# DUPONT RIDER TO PURCHASE AGREEMENT

This is a Rider to a Purchase Agreement (the Agreement) dated as of _____ between
E. I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation of Wilmington, Delaware, ("DUPONT") as Seller
and ___Mark J. Shipos___ and wife Jennifer M. Shipos _____ as Buyer, with respect to the land,
buildings, improvements and contents located at: ___931 Bayou Parkway_____ Houston,TX  77077_____

(the "Property").

In the event of any conflict between the provisions of this Rider and the provisions of the Agreement, the provisions of this Rider
shall control.

**1. Seller's Authority:** No agreement for the sale of the property shall be deemed effective unless executed in writing by Seller.
Any offer or counter-offer executed by a real estate broker or agent on behalf of Seller (other than a corporate officer or authorized
signatory of Seller) shall not be binding on Seller unless and until confirmed in writing and signed by Seller.

**2. Condition of Premises:** Buyer understands that Seller is an absentee relocation entity and has never lived on or in the
Property. The Property, including the contents (fixtures, appliances and personal property), being sold and purchased are not new,
and are being sold "as is" in their present condition. Neither Seller nor any of its agents make any representations concerning the
Property, including but not limited to, representations regarding the size of the buildings and improvements, the presence or
absence of toxic or hazardous substances, or the presence or absence of any encroachments or unrecorded easements, except as
follows:

**3. Tests and Inspections:** The following tests or inspections have been conducted in, on or with respect to the Property and
Buyer acknowledges receipt of the documentation specified below in regard to those tests or Inspections:

| Type of Test/Inspection | Documentation Received (Preparer's Name/Date of Report) |
| --- | --- |
| Wood Destroying Insect | |
| | |
| | |
| | |
| | |

The above documents are being given to Buyer for informational purposes only. They represent the opinions of the individuals
or firms who prepared them. Seller makes no representations as to the accuracy of the information given and makes no agreement
to undertake or perform any action recommended in any of the reports.

Unless specifically noted under "Tests/Inspections," Seller has no knowledge concerning the presence of radon gas, asbestos or
other toxic or hazardous substances in the Property. However, Buyer shall not interpret Seller's lack of knowledge as a
representation that the Property is free of radon gas, asbestos or other toxic or hazardous substances.

**4. Buyer's Duty to Inspect/Test:** Buyer has the option to have the Property inspected by a home inspection company who
subscribes to a set of national standards on Buyer's behalf to determine the existence of defects, if any. All inspections shall be
at Buyer's sole cost and expense. Seller recommends that Buyer secure such surveys, professional building inspection reports, any
inspections or reports necessary to determine the presence of radon gas, asbestos or other toxic or hazardous substances in or about
the Property, and other reports and inspections as are appropriate to determine the condition of the Property.

All inspections and tests must be conducted to determine if any major systems and built-in appliances are not in proper working
condition, and any defects reported to Seller in writing within ten (10) days after the date Seller signs this Rider. Such report of
any defects must be accompanied by a photocopy of the complete written report from Buyer's testing company. Within seven (7)
days from the date Seller receives Buyer's written notice of any defects, Seller will advise Buyer or Buyer's attorney as to how
Seller shall proceed. If the defects are those which Seller has already disclosed under Section 2 or 3 of this Rider, the Buyer shall
consummate the purchase transaction according to the terms of the Agreement and this Rider.

Buyer's Initials _____  Seller's Initials _____

A2043

10.  **Execution of Agreement and Rider:** Neither Seller nor Buyer is bound by the Agreement or this Rider unless and until the Agreement and this Rider are executed by both Seller and Buyer.

11.  **Severability:** In the event that any provision of this Rider conflicts with the applicable law of the jurisdiction in which the Property is located, such conflict shall not affect other provisions of this Rider which can be given effect without the conflicting provision.

Seller:        E. L du Pont de Nemours and Company ("DUPONT")

By:

_____
Seller

_____
Date

_____
Buyer

_____
Date

_____
Buyer

_____
Date

Rider to Purchase Agreement                                                                                       Page 3 of 3

Shipos000196

A2044

## HOUSTON ASSOCIATION OF REALTORS ®



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
P.O. BOX 12188, AUSTIN, TX 78711-2188

12-05-94

### AGREEMENT FOR MEDIATION

**ADDENDUM TO EARNEST MONEY CONTRACT CONCERNING THE PROPERTY AT** _____
931 Bayou Parkway, Houston _____ Houston _____

(Street Address and City)

The parties to the contract and any broker who signs this addendum agree to negotiate in good faith in an effort to resolve any dispute related to the contract that may arise between the parties or between a party and a broker.

If the dispute cannot be resolved by negotiation, the dispute shall be submitted to mediation before resort to litigation.

☒ If the need for mediation arises, a mutually acceptable mediator shall be chosen by the parties to the dispute who shall share the cost of mediation services equally.

☐ If the need for mediation arises, mediation services shall be provided by _____

and the cost of mediation services shall be shared equally by the parties to the dispute.

**NOTE:** Mediation is a voluntary dispute resolution process in which the parties to the dispute meet with an impartial person, called a mediator, who would help to resolve the dispute informally and confidentially. Mediators facilitate the resolution of disputes but cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding.

Date: 11/9/96

Buyer Mark J. Shipos

Seller E.I. DU PONT DE NEMOURS AND COM

Buyer Jennifer M. Shipos

Seller

Vonnie Cobb, Inc. REALTORS
Other Broker

COLDWELL BANKER UNITED, REALTORS
Listing Broker

By: DENNIS POKRZYWNICKI

By: BARBARA NUNNALLY

The form of this addendum has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. (12-94) TREC No. 35-0

Shipos000197

A2045



05-13-96

APPROVED BY THE
TEXAS REAL ESTATE COMMISSION

## ADDENDUM FOR SELLER'S DISCLOSURE OF INFORMATION
## ON LEAD–BASED PAINT AND LEAD–BASED PAINT HAZARDS

CONCERNING THE PROPERTY AT <u>931 Bayou Parkway, Houston</u>          Houston

                                   (Street               Address           and             City)

A.  LEAD WARNING STATEMENT:    "Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead–based paint that may place young children at risk of developing lead poisoning.  Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory.  Lead poisoning also poses a particular risk to pregnant women.  The seller of any interest in residential real property is required to provide the buyer with any information on lead–based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead–based paint hazards.  A risk assessment or inspection for possible lead–paint hazards is recommended prior to purchase."

B.  SELLER'S DISCLOSURE:
    1.   PRESENCE OF LEAD–BASED PAINT AND/OR LEAD–BASED PAINT HAZARDS (check one box only):
         ☐  (a)  Known lead–based paint and/or lead–based paint hazards are present in the Property (explain): _____

         ☒  (b)  Seller has no knowledge of lead–based paint and/or lead–based paint hazards in the Property.
    2.   RECORDS AND REPORTS AVAILABLE TO SELLER (check one box only):
         ☐  (a)  Seller has provided the purchaser with all available records and reports pertaining to lead–based paint and/or lead–based paint hazards in the Property (list documents): _____

         ☒  (b)  Seller has no reports or records pertaining to lead–based paint and/or lead–based paint hazards in the Property.

C.  BUYER'S RIGHTS (check one box only):
  ☐  1.  Buyer waives the opportunity to conduct a risk assessment or inspection of the Property for the presence of lead–based paint or lead–based paint hazards.

  ☒  2.  Within ten days after the effective date of this contract, Buyer may have the Property inspected for the presence of lead–based paint and/or lead–based paint hazards.  If lead–based paint or lead–based paint hazards are present, Buyer may terminate this contract by giving Seller written notice within 14 days after the effective date of this contract.

D.  BUYER'S ACKNOWLEDGEMENT (check applicable boxes):
  ☒  1.  Buyer has received copies of all information listed above.

  ☐  2.  Buyer has received the pamphlet Protect Your Family from Lead in your Home.

E.  BROKER'S ACKNOWLEDGEMENT:    Brokers have informed Seller of Seller's obligations under 42 U.S.C. 4852d to: (a) provide Buyer with the federally approved pamphlet on lead poisoning prevention; (b) complete this addendum; (c) disclose any known lead–based paint and/or lead–based paint hazards in the Property; (d) deliver all records and reports to Buyer pertaining to lead–based paint and/or lead–based paint hazards in the Property; (e) provide Buyer a period of up to 10 days to have the Property inspected; and (f) retain a completed copy of this addendum for at least 3 years following the sale. Brokers are aware of their responsibility to ensure compliance.

F.  CERTIFICATION OF ACCURACY:    The following persons have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Seller  E.I./DU PONT DE NEMOURS AND COMPANY        11/13/96  / Date

Seller                                 Date

Listing Broker  COLDWELL BANKER UNITED, REALTORS  11-11-96  Date

Buyer  Mark J. Shipos        11/9/96  Date

Buyer  Jennifer M. Shipos        11/9/96  Date

Other Broker  Vonnie Cobb, Inc. REALTORS        Date

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts.  No representation is made as to the legal validity or adequacy of any provision in any specific transactions.  Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544.

Shipos000198

A2046



# SELLER'S DISCLOSURE NOTICE
### (§5.008, Texas Property Code)
**Printed by the Texas Association of REALTORS®**
**To be completed by the Seller**



Section 5.008 of the Texas Property Code (the "Code") requires a seller of residential property of not more than one dwelling unit to deliver a Seller's Disclosure Notice, completed to the best of the seller's belief and knowledge, to a purchaser on or before the effective date of a contract for the sale of the property. If a contract is entered into without the seller providing the notice, the buyer may terminate the contract for any reason within seven (7) days after receiving the notice. This form complies with and contains additional disclosures which exceed the minimum disclosures required by the Code.

CONCERNING THE PROPERTY AT _931 Bayou Parkway      Houston, TX_
<div align="center">(Street Address and City)</div>

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE PURCHASER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Seller ☒ is ☐ is not occupying the Property. If unoccupied (by Seller), how long since Seller has occupied the Property? _____

1. The Property has the items below: [Mark Yes (Y), No (N), or Unknown (U)] *Note: This notice does not establish which of the items are to be conveyed in a sale of the property. The terms of an earnest money contract will determine which items are to be conveyed.*

| Y | N | U | | Y | N | U | | Y | N | U | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | Attic Fan(s) | ☒ | ☐ | ☐ | French Drain | ☐ | ☒ | ☐ | Pool Maintenance Accessories |
| ☒ | ☐ | ☐ | Auto. Lawn Sprinkler | ☒ | ☐ | ☐ | Gas Fixtures | ☐ | ☒ | ☐ | Pool Heater |
| ☒ | ☐ | ☐ | Cable TV Wiring | ☒ | ☐ | ☐ | Gas Lines (Nat/LP) | ☒ | ☐ | ☐ | Public Sewer System |
| ☒ | ☐ | ☐ | Ceiling Fan(s) | ☒ | ☐ | ☐ | Hot Tub | ☒ | ☐ | ☐ | Rain Gutters |
| ☒ | ☐ | ☐ | Dishwasher | ☐ | ☒ | ☐ | Intercom System | ☐ | ☒ | ☐ | Range |
| ☒ | ☐ | ☐ | Disposal | ☐ | ☒ | ☐ | Microwave | ☐ | ☒ | ☐ | Sauna |
| ☐ | ☒ | ☐ | Evaporative Cooler | ☐ | ☒ | ☐ | Outdoor Grill | ☐ | ☒w/o☐ | | Septic System |
| ☒ | ☐ | ☐ | Exhaust Fan(s) | ☒ | ☐ | ☐ | Oven | ☒ | ☐ | ☐ | Spa |
| ☒ | ☐ | ☐ | Fences | ☒ | ☐ | ☐ | Patio/Decking | ☐ | ☒ | ☐ | Trash Compactor |
| ☒ | ☐ | ☐ | Fire Detection Equipment | ☒ | ☐ | ☐ | Plumbing System | ☒ | ☐ | ☐ | TV Antenna |
| | | | Fireplace(s) & Chimney: | ☐ | ☒ | ☐ | Pool | ☐ | ☒ | ☐ | Wall/Window A/C Units |
| ☐ | ☐ | ☐ |    Woodburning | ☐ | ☒ | ☐ | Pool Equipment | ☒ | ☐ | ☐ | Washer/Dryer Hookups |
| ☒ | ☐ | ☐ |    Mock | | | | | ☒ | ☐ | ☐ | Window Screens |

| Y | N | U | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | Central A/C | If yes: | ☒ Electric ☐ Gas | | Number of Units: _2_ | |
| ☒ | ☐ | ☐ | Central Heat | If yes: | ☒ Electric ☒ Gas ☐ Solar | | Number of Units: _2_ | |
| ☐ | ☐ | ☐ | Carport | If yes: | ☐ Attached ☐ Not Attached | | | |
| ☒ | ☐ | ☐ | Garage | If yes: | ☒ Attached ☐ Not Attached | | | |
| ☒ | ☐ | ☐ | Garage Door Openers | If yes: | Number of Units _2_ Number of Controls _2_ | | | |
| ☐ | ☐ | ☐ | Satellite Dish and Controls | If yes: | ☐ Owned ☐ Leased from_____ | | | |
| ☒ | ☐ | ☐ | Security System | If yes: | ☒ Owned ☐ Leased from_____ | | | |
| ☒ | ☐ | ☐ | Water Heater | If yes: | ☒ Gas ☐ Electric ☐ Solar ☐ Other_____ | | | |
| ☐ | ☒ | ☐ | Water Softener | If yes: | ☐ Owned ☐ Leased from_____ | | | |

Water supply provided by: ☒ City ☐ Well ☐ MUD ☐ Co-Op ☐ Other ☐ Unknown
Was the dwelling built before 1978? ☐ Yes ☒ No ☐ Unknown
Roof Type: _Composition_   Age: _6_ (approx)
Is there an overlay roof covering (shingles or roof covering placed over existing shingles or roof covering)? ☐ Yes ☒ No ☐ Unknown

HAR 102

(TAR-044) 6-21-96*

Page 1 of

A2047

Concerning the Property at _____ 931    Bayou    PKWY.

5. Are you (Seller) aware of any of the following? [Mark Yes (Y) if you are aware, mark No (N) if you are not aware.]

Y N

☐ ☒ Room additions, structural modifications, or other alterations or repairs made without necessary permits or not in compliance with building codes in effect at that time.

☐ ☐ Homeowner's Association or maintenance fees or assessments. If yes, complete:
Amount of fee or assessment: $ _$340.00_ ☒ Mandatory    ☐ Voluntary
Due: ☐ monthly    ☐ quarterly    ☐ annually
Any unpaid fees or assessments for the Property: ☐ Yes    ☒ No    If yes, amount: $_____
Manager's Name:_____    Phone:_____

☐ ☒ Any "common area" (facilities such as pools, tennis courts, walkways, or other) co-owned in undivided interest with others. If yes, complete:
Any optional user fees for common facilities charged: ☐ Yes    ☐ No    If yes, describe:_____

☐ ☒ Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property.
☐ ☒ Any lawsuits or other legal proceedings directly or indirectly affecting the Property. If yes, describe:
Condemnation proceedings:_____
Pending or threatened change in zoning or deed restrictions:_____
Other:_____

☐ ☒ Any death on the Property except for those deaths caused by: natural causes; suicide; or accident unrelated to the condition of the Property.

☐ ☒ Any condition on the Property which materially affects the physical health or safety of an individual.

If the answer to any of the items in Section 5 is yes, explain (attach additional sheets if necessary):_____

6. Within the last 4 years, have you (Seller) received any written inspection reports from persons who regularly provide inspections and are either licensed as inspectors or otherwise permitted by law to perform inspections?
☐ Yes    ☒ No. If yes, attach copies and list the following:

| Date of Inspection | Type of Inspection | Name of Inspector/Company | Number of Pages |
|---|---|---|---|

*Note: A buyer should not rely on the above cited reports as a reflection of the current condition of the Property. A buyer should obtain inspection from inspectors of the buyer's own choice.*

7. Check any tax exemption(s) which you (Seller) currently claim for the Property:    ☒ Homestead    ☐ Senior Citizen
☐ Disabled    ☐ Disabled Veteran    ☐ Agricultural    ☐ Other_____    ☐ Unknown

8. Have you (Seller) ever collected any insurance payments pursuant to a claim made for damage to the Property and not used the proceeds to make the repairs for which the claim was submitted? ☐ Yes    ☒ No    If yes, explain:_____

_Baron_    _10/18/96_    _____    _____
Signature of Seller    Date    Signature of Seller    Date

NOTICE TO PURCHASER: Listing Broker, _Coldwell Banker United_, and Other Broker, _____, advise you that this Seller's Disclosure Notice was completed by Seller, as of the date signed. The Listing Broker and Other Broker have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. This notice is not warranty of any kind by Seller, Seller's Agents, or any other Agent. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY PRIOR TO CLOSING.

The undersigned purchaser hereby acknowledges receipt of the foregoing notice.

_____    _11/9/96_    _Jennifer MShipos_    _11/9/96_
Signature of Purchaser    Date    Signature of Purchaser    Date

HAR 102

(TAR-044) 6-21-96*

Shipos000200

A2048

11/08/1996  08:20    7136663745                VONNIE COBB REALTORS                PAGE  05

(This notice is to be furnished to a prospective buyer/tenant at such time as broker begins assisting buyer/tenant to locate a property.)

# Broker Notice to Buyer/Tenant

As a prospective buyer/tenant, you should know that the listing and cooperating ("selling") brokers and any broker representing you as a buyer's/tenant's broker, possess no special skills, knowledge or expertise concerning the physical or environmental condition of the property or properties introduced to you nor do they represent themselves to be such experts, and, therefore, make no representations, warranties or guarantees regarding the physical or environmental condition of any such property.

To the extent the owner ("seller" or "landlord") of a property has disclosed in writing material information regarding the condition of the property and the same is made available to the undersigned broker or its sales associates, you will be provided a copy of such information. Similarly, broker is obligated to disclose material facts about the property of which broker has actual knowledge.

## Environmental Hazards/Inspection

As the result of concerns regarding environmental hazards (including, but not limited to, asbestos, lead-based paint, urea formaldehyde insulation, radon gas, PCB transformers, underground storage tanks, electromagnetic fields, hazardous or toxic waste and materials, ammonium compounds, solvents, pesticides, acids, DDT, and any other substance on or about the property or forming a component part of the improvements which has heretofore or may in the future be determined to contain toxic or hazardous materials or undesirable substance injurious to the health of occupants of a property), it is recommended that you retain the services of a qualified expert of your choice to inspect and test for the presence of environmental hazards on or about the property as part of an earnest money contract between seller and buyer or a lease between landlord and tenant, if desired. Buyer/Tenant shall be solely responsible for retaining the services of such expert, if any.

## Physical Condition/Inspection

You are advised that you should thoroughly inspect the property and have the physical condition of the property inspected by persons of your choice who are licensed as inspectors by the Texas Real Estate Commission or otherwise permitted by law to perform inspections and take whatever other action you deem necessary or appropriate, including use of the Property Condition Addendum promulgated by the Texas Real Estate Commission as part of an earnest money contract between seller and buyer. If you request broker to furnish a list of inspectors and/or repairmen, broker is not making any representation or warranties as to the capabilities or workmanship of such persons. You are advised to accompany the inspectors during their inspection of the property and to ask any questions you may have regarding the property. You are advised to walk through and visibly inspect the property immediately prior to the closing in a sales transaction or occupancy in a lease transaction. In the event the condition of the property is not then in accordance with the earnest money contract/lease, you should immediately inform the below named Broker.

## MLS / CMLS Information

You should not rely upon information contained in terminal printouts of Multiple Listing Service (MLS) or the Commercial Multiple Listing Service (CMLS) of the HOUSTON ASSOCIATION OF REALTORS® and you should independently verify such information. Such information is furnished by MLS and CMLS participants for dissemination to other MLS and CMLS participants, for their exclusive use. Neither the HOUSTON ASSOCIATION OF REALTORS®, MLS nor CMLS verifies the accuracy of the information,

Selling Broker or buyer's/tenant's broker, if any, shall furnish Listing Broker with a signed copy of this notice at the time an earnest money contract/lease is submitted.

I certify that I have provided the Prospective Buyer/Tenant named herein with a copy of this "Broker Notice to Buyer/Tenant."

I have received, read, and understand the information in this "Broker Notice to Buyer/Tenant."

| | |
|---|---|
| 11-7-96 | MARK J SHIPOS |
| Date | Buyer/Tenant Name |
| DENNIS R POKRZYWNICKI / VONNIE COBB | [signature] |
| Broker/Sales Agent Name (Reason) | Signature |
| [signature] | JENNIFER M SHIPOS |
| Signature | Buyer/Tenant Name |
| VONNIE COBB INC REALTOR | Jennifer M Shipos |
| Company | Signature |
| 4542 BEECHNUT   HOUSTON  TX 77109 C | |
| Address | Address |
| (713)  664-1818 | 952-5437 |
| Phone | Phone |

NOTE: This form furnished by HOUSTON ASSOCIATION OF REALTORS® for the convenience of its members.                HAR 410 7/91

Shipos000201

A2049

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0990020000032**

Tax Year: 2017

🖶 Print

| Owner and Property Information | | |
|---|---|---|
| Owner Name & Mailing Address: | **SILVERMAN PETER J**<br>**12515 WESTERLEY LN**<br>**HOUSTON TX 77077-2417** | Legal Description:  **LT 32 BLK 2**<br>**ASHFORD FOREST SEC 3**<br><br>Property Address:  **12515 WESTERLEY LN**<br>**HOUSTON TX 77077** |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 9,585 SF | 2,409 SF | 7961 | 1128 | 4857C | 488M |

**Value Status Information**

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

**Exemptions and Jurisdictions**

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| **Residential Homestead** | 001 | HOUSTON ISD | 89,420 | Certified: 08/11/2017 | 1.206700 | 1.206700 |
| | 040 | HARRIS COUNTY | 64,420 | Certified: 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 64,420 | Certified: 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | 64,420 | Certified: 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 64,420 | Certified: 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 64,420 | Certified: 08/11/2017 | 0.005200 | 0.005195 |
| | 048 | HOU COMMUNITY COLLEGE | 32,210 | Certified: 08/11/2017 | 0.100263 | 0.100263 |
| | 061 | CITY OF HOUSTON | 64,420 | Certified: 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway.**

**Valuations**

| Value as of January 1, 2016 | | | Value as of January 1, 2017 | | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 87,925 | | Land | 87,925 | |
| Improvement | 272,075 | | Improvement | 262,075 | |
| Total | 360,000 | 292,820 | Total | 350,000 | 322,102 |

**Land**

| | Market Value Land | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 8,000 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 10.00 | 10.00 | 80,000.00 |

A2051

| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 1,585 | 1.00 | 0.50 | 1.00 | -- | 0.50 | 10.00 | 5.00 | 7,925.00 |

## Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1966 | Residential Single Family | Residential 1 Family | Good | 2,409 * | Displayed |

\* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

### Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cond / Desir / Util | Very Good |
| Foundation Type | Slab |
| Grade Adjustment | B+ |
| Heating / AC | Central Heat/AC |
| Physical Condition | Very Good |
| Exterior Wall | Brick / Veneer |
| Element | Units |
| Room: Total | 9 |
| Room: Rec | 1 |
| Room: Half Bath | 1 |
| Room: Full Bath | 2 |
| Room: Bedroom | 4 |
| Fireplace: Masonry Firebrick | 1 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 2,409 |
| OPEN FRAME PORCH PRI | 100 |

## Extra Features

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Frame Detached Garage | Average | Average | 462.00 | 1966 |

A2052

🖨**Print**

**Ownership History: 0990020000032**

**12515 WESTERLEY LN**
**HOUSTON TX 77077**

| Owner | Effective Date |
|---|---|
| SILVERMAN PETER J | 8/13/1990 |
| PRUCHA STEPHEN J & MARINA | 4/9/1986 |
| BARTAY DELMAR | 1/2/1984 |

[end of record]

**-close window-**

A2053



06/30/99  09:21 FAX 972 788 2746      SHANKS TRITTER                    ⌀003

99108831KS27

RETURN ORIGINAL TO:
GMAC MORTGAGE CORPORATION
100 WITMER ROAD
HORSHAM, PENNSYLVANIA 19044

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

T715234                              05/11/99  101052505  T715234        $29.00

STEWART TITLE HOUSTON DIVISION

---

[Space Above This Line For Recording Data]      # 001371897

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on APRIL 30 1999. The grantor is PETER J. SILVERMAN AND SPOUSE, ZHENNIA SILVERMAN

("Borrower"). The trustee is
GEORGE M. SHANKS, JR.
4635 SOUTHWEST FREEWAY, 10TH FLOOR, HOUSTON, TEXAS 77027                , whose address is
("Trustee"). The beneficiary is  GMAC MORTGAGE CORPORATION
which is organized and existing under the laws of PENNSYLVANIA
and whose address is    100 WITMER ROAD
HORSHAM, PENNSYLVANIA 19044                                              ("Lender").
Borrower owes Lender the principal sum of ONE HUNDRED FOURTEEN THOUSAND FIVE
HUNDRED AND NO 7/100 ........... Dollars (U.S. $ .....114,500.00 .........). This debt is evidenced
by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly pay-
ments, with the full debt, if not paid earlier, due and payable on ..... MAY 01, 2029
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described
property located in  HARRIS                                      County, Texas:

LOT THIRTY-TWO (32), IN BLOCK TWO (2) OF ASHFORD FOREST, SECTION THREE
(3), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT
THEREOF RECORDED IN VOLUME 136, PAGE 61 OF THE MAP RECORDS OF HARRIS
COUNTY, TEXAS

which has the address of ..12515 WESTERLEY LANE ........... , ........ HOUSTON .......... ,
                                     [Street]                              [City]
Texas ....77077............................. ("Property Address"):
            [Zip Code]

TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3044 9/90   (page 1 of 8 pages)
ST&L# TX6.NEW   Rev. 06-16-97

FILED
99 MAY 11  PM 12: 39
COUNTY CLERK
HARRIS CO. TEXAS

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

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time 12 U.S.C. §2601 *et seq.* ("RESPA"). unless another law that applies to the Funds sets a lesser amount. If so. Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note, second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**001371897**

ST&L# TX6-2.NEW    Rev. 06-17-97                                    Form 3044 9/90        *(page 2 of 8 pages)*

A2055

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

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days, a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.  **001371897**

ST&L#TX6-3.NEW  Rev. 06-14-97                    Form 3044 9/90         *(page 3 of 8 pages)*

Case 1:17-cv-09002-SGB    Document 23-8    Filed 01/16/18    Page 78 of 107

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

**7. Protection of Lender's Rights in the Property.**    If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.**    If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.**    Lender or its agent may make reasonable entries upon and inspections of the Property Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.**    The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.**    Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the

ST&L#TX6-4.NEW  Rev. 06-16-97   001371897                                        Form 3044 9/90          (page 4 of 8 pages)

A2057

Case 1:17-cv-09002-SGB   Document 23-8   Filed 01/16/18   Page 79 of 107

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

sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several Any Borrower who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend modify forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred

ST&L# TX6-5.NEW   Rev. 06-17-97   **0013771897**

Form 3044 9/90          (page 5 of 8 pages)

A2058

Case 1:17-cv-09002-SGB   Document 23-8   Filed 01/10/18   Page 36 of 10?

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

However, this right to reinstate shall not apply in the case of acceleration under paragraph 17

**19. Sale of Note; Change of Loan Servicer.**   The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any other information required by applicable law

**20. Hazardous Substances.**   Borrower shall not cause or permit the presence, use, disposal  storage or release of any Hazardous Substances on or in the Property  Borrower shall not do  nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene  other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents  materials containing asbestos or formaldehyde and radioactive materials.  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS.   Borrower and Lender further covenant and agree as follows

**21. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law.  Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law.  Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday in the month.  Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

001371897

ST&L# TX6-6.NEW  Rev. 06-17-97                                   Form  3044  9/90       *(page 6 of 8 pages)*

A2059

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

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. **Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

25. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

26. **Waiver of Notice of Intention to Accelerate.** Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

27. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ 1-4 Family Rider
☐ Graduated Payment Rider      ☒ Planned Unit Development Rider      ☐ Biweekly Payment Rider
☐ Balloon Rider      ☐ Rate Improvement Rider      ☐ Second Home Rider
☐ Other(s) [specify]

28. **Purchase Money; Vendor's Lien; Renewal and Extension. [Complete as appropriate]**
The Note secured hereby is in renewal and extension, but not in extinguishment, of that certain indebtedness described on the Renewal And Extension Rider attached hereto and made a part hereof for all purposes.

ST&L# TX6-7.NEW Rev. 06-18-97         Form 3044 9/90         *(page 7 of 8 pages)*

Case 1:17-cv-09002-SCB    Document 25-5    Filed 01/10/18    Page 82 of 107

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

BY SIGNING BELOW Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
PETER J. SILVERMAN              -Borrower

_____ (Seal)
ZHENNIA SILVERMAN              Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              Borrower

——————— [Space Below This Line For Acknowledgement] ———————

STATE OF TEXAS
COUNTY OF  Harris

This instrument was acknowledged before me on
by  PETER J. SILVERMAN AND SPOUSE, ZHENNIA SILVERMAN

**RECORDER'S MEMORANDUM**
Acknowledgment Incomplete

My commission expires:

_____
                              Notary Public

KELLY SAVOY
Notary Public, State of Texas
My Commission Expires 3-10-2001

_____
                              Notary's Name

**001371897**
ST&L# TX6-8.NEW  Rev. 12-04-97

**Form 3044  9/90**

*(page 5 of 5 pages)*

A2061

Case 1:17-cv-09002-SGB   Document 25-3   Filed 01/10/18   Page 40 of 10

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

# PLANNED UNIT DEVELOPMENT RIDER

# 001371897

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **30TH** day of **APRIL, 1999** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **GMAC MORTGAGE CORPORATION** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at **12515 WESTERLEY LANE, HOUSTON, TEXAS 77077**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling together with other such parcels and certain common areas and facilities, as described in **THE COVENANTS, CONDITIONS AND RESTRICTIONS TO WHICH THE PROPERTY IS SUBJECT** ...............................................

.......................................................................................................................

(the "Declaration"). The Property is a part of a planned unit development known as **ASHFORD COMMUNITY ASSOCIATION, INC.** ............

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires including fire and hazards included within the term "extended coverage," then:

    (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

    (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common

**MULTISTATE PUD RIDER**— Single Family— **Fannie Mae / Freddie Mac UNIFORM INSTRUMENT  Form 3150 9/90**
**ST&L# 20.NEWER   Rev. 01-15-97**                                                                    (page 1 of 2 pages)



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

# 001371897

areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable with interest upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider

........................................................(Seal)
                                                -Borrower
PETER J. SILVERMAN

........................................................(Seal)
                                                -Borrower
ZHENNIA SILVERMAN

........................................................(Seal)
                                                -Borrower

........................................................(Seal)
                                                -Borrower

**ST&L# 20-2.NEWER**

Form 3150  9 / 90   (page 2 of 2 pages)

A2063

Case 1:17-cv-09002-SGB   Document 23-3   Filed ...

04/30/99   09:22 FAX 972 788 2746     SHANKS TRITTER     ☑006

## RENEWAL AND EXTENSION RIDER

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

The Note hereby secured is given in renewal and extension of the sum(s) left owing and unpaid on that prior indebtedness which has been paid by the loan proceeds from and thereby merged into the Note hereby secured, such prior indebtedness being described as follows, to-wit:

**Promissory Note**
Date: __AUGUST 13, 1990__
Amount: __121,600.00__
Payee: __FIRST INTERSTATE MORTGAGE COMPANY__

**Deed of Trust**
Date: __AUGUST 13, 1990__
Grantor: __PETER J. SILVERMAN__

Trustee: __RICHARD T. MILLER__
Recording Information: __CLERK'S FILE NO. M-781893__                in the
Real Property Records of __HARRIS__                                  County, Texas.

**Vendors Lien Retained in Deed (If Applicable)**
Date: __AUGUST 13, 1990__
Recording Information: __CLERK'S FILE NO. M-781949__                 in the
Real Property Records of __HARRIS__                                  County, Texas.

**Assignment Information (If Applicable)**
Date:
Assignee:

Assignment Recording Information:                                   in the
Real Property Records of _____                                 County, Texas.

**Modification Information (If Applicable)**
And all modifications and/or extensions thereof.

Said lien(s) being against the herein described property and which said note(s) and lien(s) have this day been transferred and assigned to **GMAC MORTGAGE CORPORATION** and it is expressly agreed by Borrower(s) that said note(s) and lien(s) are hereby renewed, extended and carried forward in full force and effect to secure payment of the Note hereby secured and if not the original owner and holder or if not previously subrogated the holder of the Note hereby secured is hereby subrogated to all the rights, powers and equities of the original owner(s) and holder(s) of the above described indebtedness.

_____          _____
PETER J. SILVERMAN                          ZHENNIA SILVERMAN



ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County Texas.

MAY 1 1 1999

Beverly B. Kaufman
COUNTY CLERK
HARRIS COUNTY TEXAS

RECORDER'S MEMORANDUM
AT THE TIME OF RECORDATION, THIS INSTRUMENT WAS FOUND TO BE INADEQUATE FOR THE BEST PHOTOGRAPHIC REPRODUCTION BECAUSE OF ILLEGIBILITY, CARBON OR PHOTO COPY, DISCOLORED PAPER ETC.

(01-23-96) 5-100636-11

A2064

**T841632**

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

WHEN RECORDED RETURN TO:

07/12/99  101100903  T841632          $11.00

**PETER J SILVERMAN**
**901 THREADNEEDLE ST STE 200**
**HOUSTON, TX 77079**

Loan No. **001371897**

<u>RELEASE OF LIEN</u>

THE STATE OF TEXAS       }          KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS         }

THAT the undersigned, the legal and equitable owner and holder of that one certain promissory note in the original principal sum of $121,500.00 dated August 13, 1990, executed by PETER J. SILVERMAN, A SINGLE MALE, payable to the order of **FIRST INTERSTATE MORTGAGE COMPANY** more fully described in a Deed of Trust duly recorded in File No. M781893, Volume —, Page — on August 20, 1990, of the Deed of Trust Records of HARRIS County, TEXAS; said note being secured by vendor's lien and deed of trust against the following described property, to wit:

* Legal description attached as Exhibit A

For and in consideration of the full and final payment of all indebtedness secured by the aforesaid lien or liens the receipt of which is hereby acknowledged, has release and discharged, and by these presents hereby releases and discharges, the above described property from all liens held by the undersigned securing said indebtedness.

        EXECUTED June 15, 1999.

                                        Wells Fargo Bank, N.A., as successor to First
                                        Interstate Mortgage Company

                                        By: _____
                                             Alicia Policarpio , Assistant Secretary

STATE OF CALIFORNIA
County of   San Diego

On June 15, 1999, before me, Betty J. Hall, personally appeared Alicia Policarpio, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal

_____
Notary's Signature

[Notary seal:
BETTY J. HALL
Comm. #1153368
NOTARY PUBLIC CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. Aug. 26, 2001]                    (Notary's Seal)

                                        FILED FOR RECORD
                                             8:00 AM

                                         JUL 1 3 1999

                                        County Clerk, Harris County, Texas



52E-80-0817

Loan No. 001371897

**EXHIBIT A**

LOT THIRTY-TWO, IN BLOCK TWO OF ASHFORD FOREST, SECTION THREE, AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 136, PAGE 61 OF THE MAP RECORDS OF HARIS COUNTY, TEXAS

JUL 1 3 1999

COUNTY CLERK
HARRIS COUNTY TEXAS

06/30/99  09:21 FAX 972 758 2746     SHANKS TRITTER                    ☒003

99108831K527

RETURN ORIGINAL TO:
GMAC MORTGAGE CORPORATION
100 WITMER ROAD                                    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
HORSHAM, PENNSYLVANIA 19044

T715234                          05/11/99 101452505 T715234      $29.00

STEWART TITLE HOUSTON DIVISION

DT

_____ [Space Above This Line For Recording Data] _____     # 001371897

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on **APRIL 30**
**1999** . The grantor is PETER J. SILVERMAN AND SPOUSE, ZHENNIA SILVERMAN
......................................................("Borrower"). The trustee is.............................. whose address is
GEORGE M. SHANKS, JR.
4635 SOUTHWEST FREEWAY, 10TH FLOOR, HOUSTON, TEXAS 77027
("Trustee"). The beneficiary is .....GMAC MORTGAGE CORPORATION
which is organized and existing under the laws of PENNSYLVANIA
and whose address is      100 WITMER ROAD
HORSHAM, PENNSYLVANIA 19044 ........................................................("Lender").
Borrower owes Lender the principal sum of ONE HUNDRED FOURTEEN THOUSAND FIVE
HUNDRED AND NO /100 ................. Dollars (U.S. $........114,500.00.......). This debt is evidenced
by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly pay-
ments, with the full debt, if not paid earlier, due and payable on ......MAY 01, 2029......
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described
property located in ...HARRIS................................ County, Texas:

LOT THIRTY-TWO (32), IN BLOCK TWO (2) OF ASHFORD FOREST, SECTION THREE
(3), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT
THEREOF RECORDED IN VOLUME 136, PAGE 61 OF THE MAP RECORDS OF HARRIS
COUNTY, TEXAS

which has the address of ..12515 WESTERLEY LANE.............. , .............HOUSTON............. ,
                                         [Street]                                    [City]
Texas .......77077.............................. ("Property Address"):
              [Zip Code]

**TEXAS** — Single Family — Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**     Form 3044  8/90    [page 1 of 8 pages]
ST&L# TX6.NEW   Rev. 06-16-97

FILED
99 MAY 11  PH 12: 39

Silverman000571



EXHIBIT 7/18
4
P. Silverman

A2067

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

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**001371897**

ST&L# TX6-2.NEW    Rev. 06-17-97                    Form 3044 9/90          (page 2 of 8 pages)

Silverman000572

A2068



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

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days, a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.　**001371897**

ST&L# TX6-3.NEW　Rev. 06-14-97　　　　　　　　　　　　　　Form 3044 9/90　　　(page 3 of 5 pages)



Silverman000573

A2069

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

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7 Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest upon notice form Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment of modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the

ST&L# TX6-4.NEW  Rev. 06-16-97  **001371897**                              **Form 3044 9/90**        (page 4 of 8 pages)

Silverman000574

A2070



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

sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred

ST&L# TX6-5.NEW   Rev. 06-17-97    **0013718V7**    Form 3044 9/90    (page 5 of 8 pages)


Silverman000575

A2071

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

However, this right to reinstate shall not apply in the case of acceleration under paragraph 17

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday in the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

001371897

ST&L# TX6-6.NEW Rev. 06-17-97                    Form 3044 9/90          (page 6 of 8 pages)

Silverman000575

A2072

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

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

**22. Release.**   Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Substitute Trustee.**   Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Subrogation.**   Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**25. Partial Invalidity.**   In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**26. Waiver of Notice of Intention to Accelerate.**   Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

**27. Riders to this Security Instrument.**   If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider             ☐ 1-4 Family Rider
☐ Graduated Payment Rider        ☒ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider                  ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ Other(s) [specify]

**28. Purchase Money; Vendor's Lien; Renewal and Extension.  [Complete as appropriate]**
**The Note secured hereby is in renewal and extension, but not in extinguishment, of**
that certain indebtedness described on the Renewal And Extension Rider attached hereto
and made a part hereof for all purposes.

ST&L4 TX6-7.NEW  Rev. 06-18-97                 Form 3044 9/90              (page 7 of 8 pages)

Silverman000577

A2073

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

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
PETER J. SILVERMAN          -Borrower

_____ (Seal)
ZHENNIA SILVERMAN          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

[Space Below This Line For Acknowledgement]

STATE OF TEXAS
COUNTY OF Harris

This instrument was acknowledged before me on
by  PETER J. SILVERMAN AND SPOUSE, ZHENNIA SILVERMAN

**RECORDER'S MEMORANDUM**
Acknowledgment Incomplete

My commission expires:

_____
                    Notary Public

KELLY SAVOY
Notary Public, State of Texas
My Commission Expires 3-10-2001

_____
                    Notary's Name

001371897
ST&L# TX6-8.NEW  Rev. 12-04-97                Form  3044  9/90        (page 5 of 5 pages)

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

# PLANNED UNIT DEVELOPMENT RIDER

# 001371897

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **30TH** day of **APRIL, 1999**
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure
Borrower's Note to **GMAC MORTGAGE CORPORATION** (the "Lender")
of the same date and covering the Property described in the Security Instrument and located at:
**12515 WESTERLEY LANE, HOUSTON, TEXAS 77077**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such
parcels and certain common areas and facilities, as described in **THE COVENANTS, CONDITIONS AND
RESTRICTIONS TO WHICH THE PROPERTY IS SUBJECT**

(the "Declaration"). The Property is a part of a planned unit development known as
**ASHFORD COMMUNITY ASSOCIATION, INC.**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument
Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the. (i) Declaration; (ii) articles of incorporation
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires
including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the
yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage
on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association
policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage
provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair
following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to
Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured
by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that
the Owners Association maintains a public liability insurance policy acceptable in form, amount and extent
of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable
to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common

**MULTISTATE PUD RIDER**—Single Family—**Fannie Mae / Freddie Mac UNIFORM INSTRUMENT Form 3150 9/90**
**STAL# 20.NEWER    Rev. 01-15-97**                                                                 (page 1 of 2 pages)

Silverman000579

A2075



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

# 001,371897

areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable with interest upon notice from Lender to Borrower requesting payment.

By Signing Below, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider

..........................................(Seal)
PETER J. SILVERMAN                -Borrower

......................................(Seal)
ZHENNIA SILVERMAN          -Borrower

..........................................(Seal)
                -Borrower

......................................(Seal)
                -Borrower

ST&L# 20-2.NEWER

Form 3150  9/90    (page 2 of 2 pages)

A2076

04/30/99  09:22 FAX 972 788 2746     SHANKS TRITTER                    ☑006

## RENEWAL AND EXTENSION RIDER

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

The Note hereby secured is given in renewal and extension of the sum(s) left owing and unpaid on that prior indebtedness which has been paid by the loan proceeds from and thereby merged into the Note hereby secured, such prior indebtedness being described as follows, to-wit:

**Promissory Note**
Date: __AUGUST 13, 1990__
Amount: __121,600.00__
Payee: __FIRST INTERSTATE MORTGAGE COMPANY__

**Deed of Trust**
Date: __AUGUST 13, 1990__
Grantor: __PETER J. SILVERMAN__

Trustee: __RICHARD T. MILLER__
Recording Information: __CLERK'S FILE NO. M-781893__ in the
Real Property Records of __HARRIS__ County, Texas.

**Vendors Lien Retained in Deed (If Applicable)**
Date: __AUGUST 13, 1990__
Recording Information: __CLERK'S FILE NO. M-781949__ in the
Real Property Records of __HARRIS__ County, Texas.

**Assignment Information (If Applicable)**
Date: ____
Assignee: ____

Assignment Recording Information: ____ in the
Real Property Records of ____ County, Texas.

**Modification Information (If Applicable)**
And all modifications and/or extensions thereof.

Said lien(s) being against the herein described property and which said note(s) and lien(s) have this day been transferred and assigned to GMAC MORTGAGE CORPORATION and it is expressly agreed by Borrower(s) that said note(s) and lien(s) are hereby renewed, extended and carried forward in full force and effect to secure payment of the Note hereby secured and if not the original owner and holder or if not previously subrogated the holder of the Note hereby secured is hereby subrogated to all the rights, powers and equities of the original owner(s) and holder(s) of the above described indebtedness.

PETER J. SILVERMAN                    ZHENNIA SILVERMAN

RECORDER'S MEMORANDUM
AT THE TIME OF RECORDATION, THIS
INSTRUMENT WAS FOUND TO BE INADEQUATE
FOR THE BEST PHOTOGRAPHIC REPRODUCTION
BECAUSE OF ILLEGIBILITY, CARBON OR
PHOTO COPY, DISCOLORED PAPER, ETC.

MAY 1 1 1999

COUNTY CLERK
HARRIS COUNTY TEXAS

(01-23-96) 5-180630-11

Silverman000581

A2077



T841632

52E-80-0816

WHEN RECORDED RETURN TO:

07/12/99  101100983  T841632        $11.00

PETER J SILVERMAN
901 THREADNEEDLE ST STE 200
HOUSTON, TX 77079

Loan No. 001371897

RELEASE OF LIEN

THE STATE OF TEXAS    }       KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS      }

THAT the undersigned, the legal and equitable owner and holder of that one certain promissory note in the original principal sum of $121,500.00 dated August 13, 1990, executed by PETER J. SILVERMAN, A SINGLE MALE, payable to the order of FIRST INTERSTATE MORTGAGE COMPANY more fully described in a Deed of Trust duly recorded in File No. M781593, Volume —, Page — on August 20, 1990, of the Deed of Trust Records of HARRIS County, TEXAS; said note being secured by vendor's lien and deed of trust against the following described property, to wit:

* Legal description attached as Exhibit A

For and in consideration of the full and final payment of all indebtedness secured by the aforesaid lien or liens the receipt of which is hereby acknowledged, has release and discharged, and by these presents hereby releases and discharges, the above described property from all liens held by the undersigned securing said indebtedness.

EXECUTED June 15, 1999.

Wells Fargo Bank, N.A., as successor to First
Interstate Mortgage Company

By: _____
Alicia Policarpio , Assistant Secretary

STATE OF CALIFORNIA
County of   San Diego

On June 15, 1999, before me, Betty J. Hall, personally appeared Alicia Policarpio, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal

_____
Notary's Signature

BETTY J. HALL
Comm. #1153058
NOTARY PUBLIC  CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. Aug. 28, 2001

(Notary's Seal)

FILED FOR RECORD
8:00 AM

JUL 1 3 1999

_____
County Clerk, Harris County, Texas

Silverman000582

A2078



526~80~0817

Loan No. 001371897

**EXHIBIT A**

LOT THIRTY-TWO, IN BLOCK TWO OF ASHFORD FOREST, SECTION THREE, AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 136, PAGE 61 OF THE MAP RECORDS OF HARIS COUNTY, TEXAS

JUL 1 3 1999

COUNTY CLERK
HARRIS COUNTY TEXAS

Silverman000583

M781949

# GENERAL WARRANTY DEED

# 886455

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

THE STATE OF TEXAS    :

COUNTY OF    HARRIS    :    KNOW ALL MEN BY THESE PRESENTS:

THAT STEPHEN J. PRUCHA AND SPOUSE, MARINA V. PRUCHA

of    HARRIS    County, Texas, hereinafter called "Grantor" (whether
one or more), for and in consideration of the sum of TEN AND NO/100
DOLLARS ($10.00) and other good and valuable consideration to Grantor in
hand paid by PETER J. SILVERMAN, A SINGLE MALE

of    HARRIS    County, Texas, hereinafter called "Grantee" (whether
one or more), whose mailing address is  12515 WESTERLEY LANE
HOUSTON, TEXAS 77079
the receipt and sufficiency of which are hereby acknowledged and
confessed, and for the further consideration of the execution and
delivery by said Grantee of one certain Promissory Note in the principal
sum of ONE HUNDRED TWENTY-ONE THOUSAND FIVE HUNDRED AND NO/100
DOLLARS ($ 121,500.00    ), bearing even date herewith, payable to the
order of FIRST INTERSTATE MORTGAGE COMPANY, A CALIFORNIA CORPORATION
hereinafter called "Mortgagee", bearing interest at the rate therein
provided; said Note containing an attorney's fee clause and various
acceleration of maturity clauses in case of default, and being secured by
Vendor's Lien and Superior Title retained herein in favor of said Grantor
and assigned to Mortgagee, and also being secured by a Deed of Trust of
even date herewith from Grantee to RICHARD T. MILLER
Trustee; and

WHEREAS, Mortgagee has, at the special instance and request of Grantee,
paid to Grantor $ 121,500.00    of the purchase price of the property
hereinafter described, as evidenced by the above described Note, said
Vendor's Lien and Superior Title against said property securing the
payment of said Note are hereby assigned, transferred and delivered
without recourse to Mortgagee, Grantor hereby conveying to said Mortgagee
the said Superior Title to said property, subrogating said Mortgagee to
all the rights and remedies of Grantor in the premises by virtue of said
lien;

And Grantor has GRANTED, SOLD AND CONVEYED, and by these presents does
GRANT, SELL AND CONVEY, unto said Grantee, the following described
real property, to-wit:

LOT THIRTY-TWO (32), IN BLOCK TWO (2) OF ASHFORD FOREST, SECTION THREE (3), AN
ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED
IN VOLUME 136, PAGE 61 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

FILED
2 49 PM '90
Aug 20
COUNTY CLERK
HARRIS COUNTY, TEXAS

TO HAVE AND TO HOLD the above described premises, together with all and
singular the rights and appurtenances thereunto in anywise belonging unto
said Grantee, his heirs and assigns FOREVER. Grantor does hereby bind
himself, his heirs, executors and administrators, TO WARRANT AND FOREVER
DEFEND all and singular the said premises unto the said Grantee, his
heirs and assigns, against every person whomsoever lawfully claiming or
to claim the same or any part thereof.

A2080

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

This Deed is executed, delivered and accepted subject to all and singular any liens securing the payment of any debt created or assumed in connection herewith and described herein, ad valorem taxes for the current and all subsequent years, taxes for subsequent assessments for the current and prior years due to changes in land usage, ownership, or both, zoning ordinances and utility district assessments, if any, applicable to and enforceable against the above described property, and all valid easements, restrictions, mineral reservations and maintenance fund liens, if any, applicable to and enforceable against the above described property as shown by the Records of the County Clerk of the County in which said real property is located.

But it is expressly agreed that the Grantor herein reserves and retains for himself, his heirs and assigns, a VENDOR'S LIEN, as well as the Superior Title, against the above described property, premises and improvements, until the above-described Note and all interest thereon have been fully paid according to the terms thereof, when this Deed shall become absolute.

When this Deed is executed by more than one person, or when the Grantee is more than one person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed correspondingly, and when executed by or to a corporation, the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns." Reference to any gender shall include either gender and, in the case of a corporation, shall include the neuter gender, all as the case may be.

EXECUTED this the 13th day of August , 19 90

X _____
STEPHEN J. PRUCHA

X _____
MARINA V. PRUCHA

THE STATE OF : Pruham+

COUNTY OF : madison

This instrument was acknowledged before me on the 14th day of August , 19 90 , by STEPHEN J. PRUCHA AND SPOUSE, MARINA V. PRUCHA

_____
NOTARY PUBLIC
The State of

My commission expires:

6-13-94

Eleanor Lewis Hixlebik
Notary's Name (printed)

THE STATE OF :

COUNTY OF :

This instrument was acknowledged before me on the ___ day of ,19 , by

as

on behalf of said

_____
NOTARY PUBLIC
The State of

My commission expires:

Notary's Name (printed)

RETURN ORIGINAL TO:
PETER J. SILVERMAN
12515 WESTERLEY LANE
HOUSTON, TEXAS 77079

A2081

185-74-C961

THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number
Sequence on the date and at the time stamped hereon by me, and was
duly RECORDED, in the Official Public Records of Real Property of
Harris County, Texas on.

AUG 20 1990



COUNTY CLERK
HARRIS COUNTY TEXAS

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0984930000004**

Tax Year: 2017

 Print

| Owner and Property Information | |
|---|---|
| Owner Name & Mailing Address: **STAHL TIMOTHY H 265 CHIMNEY ROCK RD HOUSTON TX 77024-5618** | Legal Description: **TR 1C BLK 1 BUFFALO ROCK**<br><br>Property Address: **265 CHIMNEY ROCK RD HOUSTON TX 77024** |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 3,575 SF | 2,043 SF | 7860.02 | 25040 | 5158C | 491F |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| **Residential Homestead Vet Disability #1 10-29 pct** | 025 | SPRING BRANCH ISD | 109,720 | Certified: 08/11/2017 | 1.394500 | 1.394500 |
| | 040 | HARRIS COUNTY | 84,720 | Certified: 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 84,720 | Certified: 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | 84,720 | Certified: 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 84,720 | Certified: 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 84,720 | Certified: 08/11/2017 | 0.005200 | 0.005195 |
| | 061 | CITY OF HOUSTON | 84,720 | Certified: 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway**.

### Valuations

| Value as of January 1, 2016 | | | Value as of January 1, 2017 | | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 231,213 | | Land | 231,213 | |
| Improvement | 145,120 | | Improvement | 182,037 | |
| Total | 376,333 | 362,364 | Total | 413,250 | 398,600 |

### Land

| Market Value Land | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 3,575 | 1.99 | 1.00 | 0.65 | Economic | 1.29 | 50.00 | 64.68 | 231,213.00 |

A2083

**Building**

| Building | Year Built | Remodeled | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|---|
| 1 | 1968 | 1986 | Residential Single Family | Residential 1 Family | Excellent | 2,043 * | Displayed |

* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cost and Design | Partial |
| Cond / Desir / Util | Fair |
| Foundation Type | Slab |
| Grade Adjustment | A |
| Heating / AC | Central Heat/AC |
| Physical Condition | Fair |
| Exterior Wall | Frame / Concrete Blk |
| Exterior Wall | Brick / Masonry |
| Element | Units |
| Room: Total | 6 |
| Room: Rec | 1 |
| Room: Half Bath | 1 |
| Room: Full Bath | 2 |
| Room: Bedroom | 2 |

| Building Areas | |
|---|---|
| Description | Area |
| WOOD DECK PRI | 300 |
| ONE STORY FRAME UPR | 153 |
| OPEN MAS PORCH PRI | 112 |
| ONE STORY FRAME PRI | 90 |
| BASE AREA UPR | 747 |
| ONE STORY FRAME UPR | 153 |
| BASE AREA PRI | 747 |
| ONE STORY MAS PRI | 153 |
| CARPORT PRI | 378 |

A2084

 **Print**

**Ownership History: 0984930000004**

**265 CHIMNEY ROCK RD**
**HOUSTON TX 77024**

| Owner | Effective Date |
|---|---|
| STAHL TIMOTHY H | 10/26/2007 |
| CROSS MARSHA LYNN | 5/3/1999 |
| CROSS MARSHA L | 1/1/1996 |
| BEESON JOHN S | 4/3/1995 |
| KENNEY RAYMOND K | 1/1/1987 |
| SHERIDAN ROBERT JR | 1/2/1984 |

[end of record]

**-close window-**

A2085



BANES000708

A2086

Print Details                                                                   Page 1 of 2

HARRIS COUNTY APPRAISAL DISTRICT                          Tax Year: 2017
REAL PROPERTY ACCOUNT INFORMATION
1245050010004                                            🖨 Print

| Owner and Property Information |||
| Owner Name & Mailing Address: | **WELLING SHAWN S**<br>**8 ASBURY PL**<br>**HOUSTON TX 77007-8003** | Legal Description: | **RES A1 BLK 1**<br>**ASBURY PLACE** |
| | | Property Address: | **5731 LOGAN LN**<br>**HOUSTON TX 77007** |

| State Class Code | Land Use Code | Building Class | Total Units | Land Area | Building Area | Net Rentable Area | Neighborhood | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|---|---|
| F1 -- Real, Commercial | 8001 -- Land Neighborhood Section 1 | E | 0 | 11,702 SF | 4,100 | 0 | 5925.04 | 5257B | 492L |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| None | 001 | HOUSTON ISD | | Supplemental: 09/15/2017 | 1.206700 | 1.206700 |
| | 040 | HARRIS COUNTY | | Supplemental: 09/15/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | | Supplemental: 09/15/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | | Supplemental: 09/15/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | | Supplemental: 09/15/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | | Supplemental: 09/15/2017 | 0.005200 | 0.005195 |
| | 048 | HOU COMMUNITY COLLEGE | | Supplemental: 09/15/2017 | 0.100263 | 0.100263 |
| | 061 | CITY OF HOUSTON | | Supplemental: 09/15/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway.**

### Valuations

| | Value as of January 1, 2016 | | | Value as of January 1, 2017 | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 526,590 | | Land | 473,931 | |
| Improvement | 46,673 | | Improvement | 36,069 | |
| Total | 573,263 | 573,263 | Total | 510,000 | 510,000 |

### Land

| Market Value Land |||||||||||||
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 8001 -- Land Neighborhood Section 1 | 4301 | SF | 11,702 | 1.00 | 1.00 | 0.90 | Corner or Alley | 0.90 | 45.00 | 40.50 | 473,931.00 |

### Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1928 | Res. Struct. Or Conversion | Single-Family Residence | Average | 1,660 | Displayed |
| 2 | 2000 | Res. Struct. Or Conversion | Single-Family Residence | Average | 2,440 | **View** |

### Building Details (1)

A2087

Print Details                                                    Page 2 of 2

| Building Data | |
|---|---|
| Element | Detail |
| Construction Type | Wood / Steel Joist |
| Functional Utility | Fair |
| Heating / AC | Central Heat/AC |
| Partition Type | Normal |
| Physical Condition | Fair |
| Plumbing Type | Adequate |
| Exterior Wall | Frame / Res Stucco |
| Economic Obsolescence | Poor |
| Sprinkler Type | None |
| Cooling Type | Central / Forced |
| Element | Units |
| Wall Height | 10 |
| Interior Finish Percent | 100 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 1,660 |
| PORCH, OPEN -C | 130 |

**Extra Features**

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Porch, Open | Fair | Fair | 130.00 | 1928 |
| 2 | Wood Deck | Fair | Fair | 800.00 | 2001 |

A2088

HCAD Ownership History

🖨 **Print**

**Ownership History: 1245050010004**

**5731 LOGAN LN**
**HOUSTON TX 77007**

| Owner | Effective Date |
|---|---|
| WELLING SHAWN S | 1/1/2004 |

[end of record]

**-close window-**

A2089

DEC. 20. 2002  2:14PM    FIRST AMERICAN ADMIN                NO. 2532   P. 2

**General Warranty Deed**

Date:  *December 20, 2002*              W320637              $13.00
                                       12/30/02  300031526

Grantor:  J. Frederick Welling

Grantor's Mailing Address:

    J. Frederick Welling
    Two Asbury Place
    Houston, Texas 77007
    Harris County

Grantee:  Shawn Sterling Welling

Grantee's Mailing Address:

    Shawn Sterling Welling
    5731 Logan Lane
    Houston, Texas 77007
    Harris County

Consideration:

    The exchange of property, title to which is accepted by Grantor the same as if the consideration represented by the exchange were paid in cash. There is no lien, either expressed or implied, created by the exchange of property. Any such lien is waived and released by Grantor.

Property (including any improvements):

    Being all that certain tract of land out of Lot 6 in Block 48, of the Rice Military Addition, the plat of which is filed of record in Volume 3, Page 41 of the Harris County Map Records, and being more particularly described in Exhibit A.

Reservations from Conveyance:

    None
Exceptions to Conveyance and Warranty:

    None

    Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person

UNOFFICIAL COPY

DEC. 20. 2002  2:14PM    FIRST AMERICAN ADMIN                    NO. 2532   P. 3

whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

When the context requires, singular nouns and pronouns include the plural.

_____
J. Frederick Welling

STATE OF TEXAS          )

COUNTY OF HARRIS        )

This instrument was acknowledged before me on _Decem___, 2002, by J. Frederick Welling.

MAMOON KHAWAJA
NOTARY PUBLIC
STATE OF TEXAS
COMM EXP 07-30-2005

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

J. Frederick Welling
Two Asbury Place
Houston, Texas 77007

UNOFFICIAL COPY

DEC. 20. 2002  2:15PM   FIRST AMERICAN ADMIN                    NO. 2532  P. 4

EXHIBIT "A"

### METES AND BOUNDS DESCRIPTION
#### OF 0.2686 ACRE TRACT OF LAND OUT OF LOT 6 BLOCK 48 OF
#### RICE MILITARY ADDITION IN HARRIS COUNTY, TEXAS

Being a 0.2686 Acre tract of land out of Lot 6, Block 48 of RICE MILITARY ADDITION as recorded in Volume 3 Page 41 of the Harris County Map Records and situated in the John Reinermann Survey, in Harris County, Texas. Said 0.2686 acre tract being more particularly described as follows;

BEGINNING at a 1/2 inch iron pipe found at the intersection of the South right-of-way line of Logan Lane, (40 feet wide), and the East right-of-way line of Birdsall Avenue, (70 feet wide), same point also being the Northwest corner of Lot 6, Block 48 and the POINT OF BEGINNING of the 0.2686 acre tract of land herein described;

THENCE, South 62 deg 34 min 38 sec East, along the South right-of-way line of Logan Lane and the North line of Lot 6, Block 48, a distance of 101.33 feet to a 1 inch iron rod found for the Northeast corner of the 0.2686 acre tract of land herein described;

THENCE, South 00 deg 50 min 23 sec East, within said Lot 6, Block 48 and along the West line of a certain tract of land conveyed to Ray Miller and wife, Veronica Miller in a deed recorded under Clerk File No. F-457118 in Harris County, Texas, a distance of 106.76 feet (called 107 feet), to a 1/2 inch iron rod set for the Southeast corner of this tract and from which a found 5/8 inch iron rod bears North 58 deg 48 min West, 2.55 feet;

THENCE, South 89 deg 27 min 00 sec West, a distance of 89.89 feet to a 1/2 inch iron pipe found on the East right-of-way line of said Birdsall Avenue and West line of Lot 6, Block 48 for the Southwest corner of the tract herein described;

THENCE, North 00 deg 33 min 00 sec West, along the said West line of Lot 6, Block 48 and the East right-of-way line of Birdsall Avenue, a distance of 154.54 feet back to the POINT OF BEGINNING containing 0.2686 Acres (11,702 square feet) of land more or less.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

DEC 3 0 2002

*Loralee G. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS

A2092

N564525

215026KS

RETURN TO:
CORNERSTONE MORTGAGE COMPANY
1535 WEST LOOP S., SUITE 110
HOUSTON, TEXAS 77027
ATTENTION:SHIPPING DEPARTMENT

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

03/04/92  00991352  N564525  $ 21.00

─────────── [Space Above This Line For Recording Data] ───────────

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on  **February 27, 1992** . The grantor is

PHILIP H. AZAR, II , A SINGLE MAN,

("Borrower"). The trustee is  JOSEPH M. HILL , whose address is

6363 WOODWAY, SUITE 800, HOUSTON, TEXAS 77057
("Trustee"). The beneficiary is  CORNERSTONE MORTGAGE COMPANY

which is organized and existing under the laws of  the State of Texas , and whose
address is  1535 WEST LOOP SOUTH, SUITE 110, HOUSTON, TEXAS 77027
("Lender"). Borrower owes Lender the principal sum of
FIVE HUNDRED SIXTY SEVEN THOUSAND FIVE HUNDRED AND 00/100
Dollars (U.S. $  567,500.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on  1st day of March, 2022 .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of
sale, the following described property located in  HARRIS  County, Texas:

Lot THREE (3), of BAYOU BEND ESTATES, a Subdivision in HARRIS County, TEXAS,
according to the Map or Plat thereof, recorded in Volume 302, Page 87, of the MAP
Records of HARRIS County, TEXAS.

EXHIBIT
30
Azar 7/9
PENGAD 800-631-6989

which has the address of  3 MAGNOLIA BEND DRIVE, HOUSTON  [Street, City],
Texas  77024
      [Zip Code]               ("Property Address");

**TEXAS**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Page 1 of 6                Form 3044  9/90
    -6R(TX) (9103)          VMP MORTGAGE FORMS · (313)293-8100 · (800)521-7291

AZAR0001

A2093

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

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16, Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Form 3044 9/90

Azar000072

AZAR0002

A2094

2201



EXHIBIT

3/
Azar 7/9

02-08-85

# ONE TO FOUR FAMILY RESIDENTIAL EARNEST MONEY CONTRACT (RESALE)
## ALL CASH, ASSUMPTION, THIRD PARTY CONVENTIONAL OR OWNER FINANCED

### PROMULGATED BY TEXAS REAL ESTATE COMMISSION

NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** FIMSA, INC. _____ (Seller) agrees to sell and convey to PHILIP H. AZAR II (a single man), Individually _____ (Buyer) and Buyer agrees to buy from Seller the property described below. **as his sole and separate property**

2. **PROPERTY:** Lot **Three (3)** , Block **One (1) Bayou Bend Estates (Vol. 302, p. 87)** Addition, City of **Hunters Creek** , **Harris** County, Texas, known as **3 Magnolia Bend Drive, Houston, Texas 77024** (Address); or as described on attached exhibit, together with the following items, if any: curtains and rods, draperies and rods, valances, blinds, window shades, screens, shutters, awnings, wall-to-wall carpeting, mirrors fixed in place, ceiling fans, attic fans, mail boxes, television antennas, permanently installed heating and air conditioning units and equipment, built-in security and fire detection equipment, lighting and plumbing fixtures, water softener, trash compactor, garage door openers with controls, shrubbery and all other property owned by Seller and attached to the above described real property. All property sold by this contract is called the "Property".

3. **CONTRACT SALES PRICE:**
   A. Cash payable at closing ................................................................... $ **192,500.00**
   B. Sum of all financing described in Paragraph 4 below ...................................... $ **577,500.00**
   C. Sales Price (Sum of A and B) ............................................................ $ **770,000.00**

4. **FINANCING:** (Check applicable boxes below)
   ☐ A. ALL CASH: This is an all cash sale; no financing is involved.
   ☐ B. ASSUMPTION:
      (1) Buyer's assumption of the unpaid principal balance of a first lien promissory note payable to _____
       in present monthly installments of $_____ including principal, interest and any reserve deposits, with Buyer's first installment payment
       being payable on the first installment payment date after closing, the assumed principal balance of which at closing will be $_____
      (2) Buyer's assumption of the unpaid principal balance of a second lien promissory note payable to _____
       in present monthly installments of $_____ , including principal, interest and any reserve deposits, with Buyer's first installment payment
       being payable on the first installment payment date after closing, the assumed principal balance of which at closing will be $_____
     Buyer's assumption of an existing note includes all obligations imposed by the deed of trust securing the note

   If the total principal balance of all assumed loans varies in an amount greater than $350.00 at closing either party may terminate this contract and the Earnest Money shall be refunded to Buyer. If the noteholder on assumption (a) requires Buyer to pay an assumption fee in excess of $_____ in B(1) above or $_____ in B(2) above and Seller declines to pay such excess or (b) raises the existing interest rate above _____ % in B(1) above or _____ % in B(2) above, Buyer may terminate this contract and the Earnest Money shall be refunded to Buyer The cash payable at closing shall be adjusted by the amount of any variance in the loan balance(s) shown above.
   NOTICE TO BUYER: Monthly payments, interest rates or other terms of some loans may be adjusted after closing Before signing the contract, examine the notes and deeds of trust to determine the possibility of future adjustments.

   ☒ C. THIRD PARTY FINANCED:
     ☒ 1. A third party first lien note of $ **577,500.00** , due in full in **30** year(s), payable in initial monthly payments of principal and interest not exceeding $ **Fixed 10 5/8%** for the first **30** year(s) of the loan
     ☐ 2. A third party second lien note of $_____ , due in full in _____ year(s), payable in initial monthly payments of principal and interest not exceeding $_____ for the first _____ year(s) of the loan
     NOTICE TO PARTIES: Before signing this contract Buyer is advised to determine the financing options from lenders. Certain loans have variable rates of interest, some have monthly payments which may not be sufficient to pay the accruing interest, and some have interest rate "buydowns" which reduce the rate of interest for part or all of the loan term at the expense of one or more of the parties to the contract,

   ☐ D. TEXAS VETERANS' HOUSING ASSISTANCE PROGRAM LOAN:
     This contract is also subject to approval for Buyer of a Texas Veterans' Housing Assistance Program Loan (the Program Loan) in an amount of $_____ for a period of at least _____ years at the interest rate established by the Texas Veterans' Land Board at the time of closing.

   ☐ E. SELLER FINANCED: A promissory note from Buyer to Seller in the amount of $_____ , bearing _____ % interest per annum, and payable:

     ☐ 1. In one payment due _____ after the date of the note with interest payable _____
     ☐ 2. In installments of $_____ [ ] including interest [ ] plus interest beginning _____ after the date of the note and continuing at _____ intervals thereafter for _____ year(s) when the entire balance of the note shall be due and payable.

     ☐ 3. Interest only in _____ installments for the first _____ year(s) and thereafter in installments of $_____

Azar000073

AZAR0003

A2095

1/16/2018                                   Property Details
Case 1:17-cv-09002-SGB   Document 23-9   Filed 01/16/18   Page 19 of 104

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0925410000006**

Tax Year: 2017

 Print

| Owner and Property Information | |
|---|---|
| Owner Name & Mailing Address: **BEYOGLU MAHMUT G & JANA C 905 TOWN & COUNTRY BLVD UNIT 462 HOUSTON TX 77024** | Legal Description: **LT 6 BLK 9 WHISPERING OAKS SEC 3** <br> Property Address: **107 WARRENTON DR HOUSTON TX 77024** |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 13,289 SF | 3,184 SF | 7889 | 25016 | 4957D | 490J |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| **Residential Homestead** | 025 | SPRING BRANCH ISD | 184,673 | Certified: 08/11/2017 | 1.394500 | 1.394500 |
| | 040 | HARRIS COUNTY | 159,673 | Certified: 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 159,673 | Certified: 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | 159,673 | Certified: 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 159,673 | Certified: 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 159,673 | Certified: 08/11/2017 | 0.005200 | 0.005195 |
| | 061 | CITY OF HOUSTON | 159,673 | Certified: 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway**.

### Valuations

| | Value as of January 1, 2016 | | | Value as of January 1, 2017 | | |
|---|---|---|---|---|---|---|
| | | Market | Appraised | | Market | Appraised |
| Land | | 676,198 | | Land | 676,198 | |
| Improvement | | 95,802 | | Improvement | 183,802 | |
| Total | | 772,000 | 725,788 | Total | 860,000 | 798,366 |

### Land

| Market Value Land | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 11,300 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 55.00 | 55.00 | 621,500.00 |
| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 1,989 | 1.00 | 0.50 | 1.00 | -- | 0.50 | 55.00 | 27.50 | 54,698.00 |

A2096

**Building**

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1962 | Residential Single Family | Residential 1 Family | Good | 3,184 * | Displayed |

* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cond / Desir / Util | Good |
| Foundation Type | Slab |
| Grade Adjustment | B |
| Heating / AC | Central Heat/AC |
| Physical Condition | Average |
| Exterior Wall | Frame / Concrete Blk |
| Exterior Wall | Brick / Masonry |
| Element | Units |
| Room: Total | 9 |
| Room: Rec | 1 |
| Room: Half Bath | 1 |
| Room: Full Bath | 3 |
| Room: Bedroom | 5 |
| Fireplace: Masonry Firebrick | 1 |

| Building Areas | |
|---|---|
| Description | Area |
| OPEN FRAME PORCH PRI | 240 |
| ATTIC FINISHED | 962 |
| BASE AREA PRI | 2,053 |
| MAS/CONC PATIO PRI | 375 |
| ONE STORY MAS PRI | 169 |
| OPEN FRAME PORCH PRI | 175 |
| OPEN FRAME PORCH PRI | 36 |

**Extra Features**

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Frame Detached Garage | Average | Average | 484.00 | 1962 |

A2097

1/16/2018

Case 1:17-cv-09002-SGB    Document 23-5    Filed 01/16/18    Page 21 of 104

**Print**

**Ownership History: 0925410000006**

**107 WARRENTON DR**
**HOUSTON TX 77024**

| Owner | Effective Date |
|-------|---------------|
| BEYOGLU MAHMUT G & JANA C | 6/5/2009 |
| BEYOGLU MAHMUT G & CANAN | 3/24/2005 |
| CURRIE PATRICIA M & DONALD | 1/16/1996 |
| HILL MORGAN A & NANCY | 11/25/1987 |
| KELLY PATRICK J | 1/2/1984 |

[end of record]

**-close window-**

A2098



BANES000690

03/23/2005 17:07 FAX                                                    ☑ 008/018

AFTER RECORDING MAIL TO:          FILED
MAHMUT GOKHAN BEYOGLU                                    Y356300
107 WARRENTON DRIVE       05 MAR 30 AM 11: 45        03/30/05 200816030      $18.50
HOUSTON, TX 77024

Prepared By:                      COUNTY CLERK
Robertson & Anschutz, P.C.        HARRIS COUNTY, TEXAS
10333 Richmond Avenue, Suite 550
Houston, TX 77042

### GENERAL WARRANTY DEED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS
INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR
SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

STATE OF TEXAS                §
                             § ss.:    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS             §

   THAT PATRICIA M. CURRIE AND DONALD S. CURRIE, WIFE AND HUSBAND, of ___BELL___
County, ___TEXAS___, hereinafter called "Grantor", for and in consideration of the sum of Ten and
No/100 Dollars ($10.00) and other good and valuable consideration to Grantor in hand paid by MAHMUT GOKHAN
BEYOGLU AND SPOUSE, CANAN BEYOGLU, hereinafter called "Grantee", whose mailing address is 107
WARRENTON DRIVE, HOUSTON, TX 77024, the receipt and sufficiency of which is hereby acknowledged, and
the further consideration of the execution and delivery by said Grantee of one certain Promissory Note ("Note I") in
the principal sum of Three Hundred Fifty Six Thousand Two Hundred Fifty and no/100 Dollars ($356,250.00), of even
date herewith, payable to the order of First Magnus Financial Corporation, hereinafter called "First Mortgagee",
bearing interest at the rate therein provided; said Note containing attorney's fee clause and various acceleration of
maturity clauses in case of default, and being secured by Vendor's Lien and Superior Title retained herein in favor of
said First Mortgagee, and also being secured by Deed of Trust of even date herewith from Grantee to Everett L.
Anschutz, Jr., Trustee, and the further consideration of the execution and delivery by said Grantee of one certain other
Promissory Note ("Note II") in the principal sum of One Hundred Eighteen Thousand Seven Hundred Fifty and no/100
Dollars ($118,750.00)of even date herewith, payable to the order of FIRST MAGNUS FINANCIAL CORPORATION
, hereinafter called "Subordinate Mortgagee", bearing interest at the rate therein provided; said Note II containing
attorney's fee clause and various acceleration of maturity clauses in case of default, and being secured by Vendor's Lien
and Superior Title retained herein in favor of said Subordinate Mortgagee, and also being secured by Deed of Trust
of even date herewith from Grantee to EVERETT L. ANSCHUTZ, JR., Trustee, Grantor has GRANTED, SOLD
and CONVEYED, and by these presents does GRANT, SELL and CONVEY, unto said Grantee, the following
described property located in HARRIS County, Texas hereinafter called "Property", to-wit:

       LOT SIX (6), IN BLOCK NINE (9), OF WHISPERING OAKS, SECTION THREE (3), A SUBDIVISION IN HARRIS
       COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 66, PAGE 37, OF
       THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

   Together with Grantor's right, title and interest in all system memberships and/or ownership certificates in any
non-municipal water and/or sewer systems serving said Property.

   First Mortgagee and Subordinate Mortgagee have, at the special instance and request of Grantee, paid to
Grantor a portion of the purchase price of the Property hereinabove described, as evidenced by the above described

(R&A) FMP414 - grtlnwd2.tx - Rev. 11/01/2004          Page 1 of 3



EXHIBIT
Beyoglu 2
Eb 9-18-18

A2100

03/23/2005 17:07 FAX                                                          @ 008/018

Notes, and thus a Vendor's Lien and Deed of Trust Lien against said Property securing the payment of each Note, are hereby assigned, transferred and delivered to each Mortgagee, to the extent of their respective advances, Grantor hereby conveying to said Mortgagees the said Superior Title to said Property, subrogating said Mortgagees to all the rights and remedies of Grantor in the Property by virtue of said liens.

TO HAVE AND TO HOLD the above described Property, together with all and singular the rights and appurtenances thereunto in anywise belonging to said Grantee, Grantee's heirs and assigns, forever. AND Grantor does hereby bind Grantor, Grantor's successors and assigns, to WARRANT and FOREVER DEFEND all and singular the said Property unto said Grantee, Grantee's heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

This conveyance is made subject to all and singular the restrictions, easements, exceptions, conditions and covenants, if any, applicable to and enforceable against the above-described Property as shown by the records of said County, as well as ad valorem taxes for current and subsequent years.

But it is expressly agreed that the Vendor's Lien and Superior Title is retained in favor of the Payees of said Notes against the above-described Property, and improvements, until said Notes and all interest thereon shall have been fully paid according to the terms thereof, when this Deed shall become absolute.

When this Deed is executed by more than one person, or when the Grantee is more than one person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed correspondingly, and when executed by or to a corporation, the words "heirs, executors and administrators" or "heirs and assigns shall be construed to mean "successors and assigns".

EXECUTED this 24 day of MARCH 2005.

_Patricia M Currie_                              _Donald S. Currie_
PATRICIA M. CURRIE                               DONALD S. CURRIE

RP 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

(R&A) FMF414 - grlinwd2.cx - Rev. 11/01/2004          Page 2 of 3

A2101

03/23/2005 17:07 FAX                                                    @010/018

## INDIVIDUAL(S) ACKNOWLEDGEMENT

STATE OF TEXAS, _Harris_ County ss:

This instrument was acknowledged before me on _March 24_ _2005_, by PATRICIA M. CURRIE
AND DONALD S. CURRIE, WIFE AND HUSBAND.

_____
Notary Public

LINDA J. WILLIAMS
Notary Public, State of Texas
My Commission Expires
March 16, 2008

_____
Printed Name of Notary Public

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in file number Sequence on the
date and at the time stamped hereon by me, and was duly RECORDED, in the
Official Public Records of Real Property of Harris County Texas on

MAR 3 0 2005

COUNTY CLERK
HARRIS COUNTY, TEXAS

(R&A) FMF414 - grilmwd2.tx - Rev. 11/01/2004          Page 3 of 3

RP 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

A2102

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0982870000016**

Tax Year: 2017

🖶 **Print**

| Owner and Property Information | | | | | | | |
|---|---|---|---|---|---|---|---|
| Owner Name & Mailing Address: | **CUTTS PAUL R**<br>**311 BLUE WILLOW DR**<br>**HOUSTON TX 77042-1108** | | | Legal Description: | **LT 16 BLK 28**<br>**WALNUT BEND SEC 8** | | |
| | | | | Property Address: | **311 BLUE WILLOW DR**<br>**HOUSTON TX 77042** | | |
| State Class Code | Land Use Code | | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map® |
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | | 8,740 SF | 2,002 SF | 7973.01 | 1135 | 4957C | 489L |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| **Residential Homestead (Multiple)** | 001 | HOUSTON ISD | 94,143 | Certified: 08/11/2017 | 1.206700 | 1.206700 |
| | 040 | HARRIS COUNTY | 214,143 | Certified: 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 214,143 | Certified: 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | FORT OF HOUSTON AUTHY | 214,143 | Certified: 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 214,143 | Certified: 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 214,143 | Certified: 08/11/2017 | 0.005200 | 0.005195 |
| | 048 | HOU COMMUNITY COLLEGE | 147,072 | Certified: 08/11/2017 | 0.100263 | 0.100263 |
| | 061 | CITY OF HOUSTON | 214,143 | Certified: 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway.**

### Valuations

| | Value as of January 1, 2016 | | | Value as of January 1, 2017 | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 113,620 | | Land | 113,620 | |
| Improvement | 180,406 | | Improvement | 189,165 | |
| Total | 294,026 | 246,107 | Total | 302,785 | 270,717 |

### Land

| Market Value Land | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 8,740 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 13.00 | 13.00 | 113,620.00 |

### Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1968 | Residential Single Family | Residential 1 Family | Good | 2,002 * | Displayed |

* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the

A2103

dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cond / Desir / Util | Good |
| Foundation Type | Slab |
| Grade Adjustment | B- |
| Heating / AC | Central Heat/AC |
| Physical Condition | Average |
| Exterior Wall | Brick / Veneer |
| Element | Units |
| Room: Total | 7 |
| Room: Rec | 1 |
| Room: Full Bath | 2 |
| Room: Bedroom | 3 |
| Fireplace: Masonry Firebrick | 1 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 2,002 |
| OPEN FRAME PORCH PRI | 55 |
| MAS/CONC PATIO PRI | 264 |
| OPEN MAS PORCH PRI | 30 |

**Extra Features**

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Frame Detached Garage | Average | Fair | 483.00 | 1968 |
| 2 | Foundation Repaired | Average | Average | 2,002.00 | 1968 |

A2104

1/15/2018                                      HCAD: Ownership History

🖨 **Print**

**Ownership History: 0982870000016**

**311 BLUE WILLOW DR
HOUSTON TX 77042**

Owner                                                              Effective Date

CUTTS PAUL R                                                       1/2/1988

[end of record]

**–close window–**

A2105

# NOTE

US $ 47,900.00 ............

...... HOUSTON ........, Texas

*City*

..... MARCH 8 .........., 19 76

FOR VALUE RECEIVED, the undersigned ("Borrower") promise(s) to pay ALLSTATE ENTERPRISES MORTGAGE CORPORATION ..................................., or order, the principal sum of FORTY SEVEN THOUSAND NINE HUNDRED AND NO/100 ($47,900.00)- Dollars, with interest on the unpaid principal balance from the date of this Note, until paid, at the rate of ....... 8.875 ........ ....................percent per annum. Principal and interest shall be payable at ALLSTATE ........ ENTERPRISES MORTGAGE CORPORATION ............ in consecutive monthly installments of THREE HUNDRED EIGHTY ONE AND 28/100----------------------------Dollars (US $ 381.28 ....................), on the .... FIRST .................day of each month beginning ...... May 1 ................, 19 76. Such monthly installments shall continue until the entire indebtedness evidenced by this Note is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on .... April 1, 2006 ........................

If any monthly installment under this Note is not paid when due and remains unpaid after a date specified by a notice to Borrower, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Note holder. The date specified shall not be less than thirty days from the date such notice is mailed. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. If suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

Borrower shall pay to the Note holder a late charge of ....... 4 .................percent of any monthly installment not received by the Note holder within ............. 15 ........days after the installment is due.

Borrower may prepay the principal amount outstanding in whole or in part. The Note holder may require that any partial prepayments (i) be made on the date monthly installments are due and (ii) be in the amount of that part of one or more monthly installments which would be applicable to principal. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent monthly installments or change the amount of such installments, unless the Note holder shall otherwise agree in writing. If, within five years from the date of this Note, Borrower make(s) any prepayments in any twelve month period beginning with the date of this Note or anniversary dates thereof ("loan year") with money lent to Borrower by a lender other than the Note holder, Borrower shall pay the Note holder (a) during each of the first three loan years 4.4375 ..................percent of the amount by which the sum of prepayments made in any such loan year exceeds twenty percent of the original principal amount of this Note and (b) during the fourth and fifth loan years ........ 3 ................ percent of the amount by which the sum of prepayments made in any such loan year exceeds twenty percent of the original principal amount of this Note.

Presentment, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns.

Any notice to Borrower provided for in this Note shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address stated below, or to such other address as Borrower may designate by notice to the Note holder. Any notice to the Note holder shall be given by mailing such notice by certified mail, return receipt requested, to the Note holder at the address stated in the first paragraph of this Note, or at such other address as may have been designated by notice to Borrower.

The indebtedness evidenced by this Note is secured by a Deed of Trust, dated ... March 8, 1976 ....... ................, and reference is made to the Deed of Trust for rights as to acceleration of the indebtedness evidenced by this Note.

.........................................

PAUL R. CUTTS

311 BLUE WILLOW DRIVE ............

.........................................

DANA I. CUTTS

HOUSTON, TEXAS  77042
.........................................

.........................................

Property Address

*(Execute Original Only)*

TEXAS . . . . . . . . . . . . . . . . . . .

A2106

GENERAL WARRANTY DEED WITH VENDOR'S LIEN IN FAVOR OF THIRD PARTY

THE STATE OF TEXAS }
　　　　　　　　　　　　　　　　KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF  Harris  }

　　THAT　　WE, LAWRENCE A. ROE and wife, KATHRYN L. ROE

(hereinafter called "GRANTORS" whether one or more), for and in consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable considerations cash in hand paid by　PAUL R. CUTTS and wife, DANA I. CUTTS

(hereinafter called "GRANTEES" whether one or more), the receipt and sufficiency of which are hereby acknowledged and confessed, and the further consideration of　FORTY SEVEN THOUSAND NINE HUNDRED AND NO/100
($47,900.00) DOLLARS in hand paid by ALLSTATE ENTERPRISES MORTGAGE
CORPORATION
(hereinafter referred to as "BENEFICIARY") at the special instance and request of the Grantees herein, the receipt of which is hereby acknowledged and confessed, and as evidence of such advancement, the said Grantees herein have executed their note of even date herewith for said amount payable to the order of said Beneficiary, bearing interest at the rate therein provided, principal and interest being due and payable in monthly installments as therein set out, and providing for attorney's fees and acceleration of maturity at the rate and in the events therein set forth, which note is secured by the Vendor's Lien herein reserved and is additionally secured by a Deed of Trust of even date herewith, executed by the Grantees herein in  L. B. Hodges and/or David C. DuBose Trustee, reference to which is here made for all purposes; and in consideration of the payment of the sum above mentioned by the Beneficiary above mentioned, Grantors hereby transfer, set over, assign and convey unto said Beneficiary and assigns, the Vendor's Lien and Superior Title herein retained and reserved against the property and premises herein conveyed, in the same manner and to the same extent as if said note had been executed in Grantors' favor and by said Grantors assigned to the Beneficiary without recourse; have GRANTED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY unto the said Grantees herein, the following described property, together with all improvements thereon, to-wit:

Lot Sixteen (16) in Block Twenty-eight (28) of WALNUT BEND, SECTION EIGHT (8), an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 129, Page 59 of the Map Records of Harris County, Texas.

TO HAVE AND TO HOLD the above described premises, together with, all and singular, the rights and appurtenances thereto in any wise belonging, unto the said Grantees, their heirs and assigns forever. And Grantors do hereby bind themselves, their heirs, executors and administrations, to warrant and forever defend all and singular, the said premises unto the said Grantees, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. Taxes for the current year have been prorated and are assumed by Grantee. This conveyance is made and accepted subject to any and all validly existing restrictions, mineral reservations and interests, conditions, covenants, easements, and rights of way, if any, applicable to and enforceable against the above described property as now reflected by the records of the County Clerk in said County and State.

　　But it is expressly agreed and stipulated that the Vendor's Lien and the Superior Title are retained and reserved in favor of the payee in said note against the above described property, premises and improvements, until said note, and all interest thereon is fully paid according to the face and tenor, effect and reading thereof, when this deed shall become absolute.

　　When this deed is executed by one person, or when the Grantee is one person, the instrument shall read as though pertinent verbs and pronouns were changed to correspond, and when executed by or to a corporation the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "Successors and assigns".

Executed on this the　8th　day of　March　　　, 19 76

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　LAWRENCE A. ROE

THE STATE OF TEXAS:
COUNTY OF  HARRIS　　　　　　　_____
　　　　　　　　　　　　　　　　KATHRYN L. ROE

　　BEFORE ME, the undersigned authority, on this day personally appeared　LAWRENCE A. ROE and wife,

KATHRYN L. ROE
　　　　　　　　　　　　　　　　　　　　　　　　　　　　, known to me to be the person(s)

whose name(s)  are　subscribed to the foregoing instrument, and acknowledged to me that  they　executed the same

for the purposes and consideration therein expressed.

　　GIVEN UNDER MY HAND AND SEAL OF OFFICE, this　　　　　　　day of　March　　　, 19 76

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Notary Public in and for ____ Harris ____ County, Texas

200002

A2107

# DEED OF TRUST

THIS DEED OF TRUST is made this ...... 8th ................. day of ..... MARCH .............,
19.76., among the Grantor, .. PAUL R. CUTTS and wife, DANA I, CUTTS ................
.............................................(herein "Borrower"),................................
L. .B. .HODGES .and/or. DAVID C. DuBOSE ............(herein "Trustee"), and the Beneficiary,
ALLSTATE. ENTERPRISES. MORTGAGE. CORPORATION ......, a corporation organized and
existing under the laws of....... OHIO ......................................, whose address is. 627 South ......
Manchester Avenue, Anaheim, California 92803 ..............(herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
.......................... Harris........., State of Texas:

Lot Sixteen (16) in Block Twenty-eight (28) of WALNUT BEND, SECTION EIGHT (8),
an addition in Harris County, Texas, according to the map or plat thereof
recorded in Volume 129, Page 59 of the Map Records of Harris County, Texas.

which has the address of ... 311 Blue Willow Drive ................., .... Houston .............,
        [Street]                                                    [City]
. Texas, 77042 ............(herein "Property Address");
   [State and Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such
rents), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or
hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be
and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property
(or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

To SECURE to Lender (a) the repayment of the indebtedness evidenced by Borrower's note dated. March 8,..
1976 ...... (herein "Note"), in the principal sum of. FORTY SEVEN THOUSAND NINE .......
HUNDRED and NO/100 ($47,900.00) Dollars, with interest thereon, providing for monthly installments
of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on............
April 1, 2006 ...........................; the payment of all other sums, with interest thereon, advanced
in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and
agreements of Borrower herein contained; and (b) the repayment of any future advances, with interest thereon, made
to Borrower by Lender pursuant to paragraph 21 hereof (herein "Future Advances").

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant
and convey the Property, that the Property is unencumbered, and that Borrower will warrant and defend generally
the title to the Property against all claims and demands, subject to any declarations, easements or restrictions listed
in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

TEXAS—1 to 4 Family—1/76—FNMA/FHLMC UNIFORM INSTRUMENT

200003

A2108

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and interest on any Future Advances secured by this Deed of Trust.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 30 days from the date notice is mailed by Lender to Borrower requesting payment thereof.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any, in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and in the event Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts evidencing such payments. Borrower shall promptly discharge any lien which has priority over this Deed of Trust; provided, that Borrower shall not be required to discharge any such lien so long as Borrower shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender, or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require; provided, that Lender shall not require that the amount of such coverage exceed that amount of coverage required to pay the sums secured by this Deed of Trust.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All premiums on insurance policies shall be paid in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the insurance carrier.

All insurance policies and renewals thereof shall be in form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided such restoration or repair is economically feasible and the security of this Deed of Trust is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Deed of Trust would be impaired, the insurance proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. If under paragraph 18 hereof the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. If a condominium or planned unit development rider is executed by Borrower and recorded together with this Deed of Trust, the covenants and agreements of such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider were a part hereof.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law. Borrower shall pay the amount of all mortgage insurance premiums in the manner provided under paragraph 2 hereof.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

200004

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, there shall be applied to the sums secured by this Deed of Trust such proportion of the proceeds as is equal to that proportion which the amount of the sums secured by this Deed of Trust immediately prior to the date of taking bears to the fair market value of the Property immediately prior to the date of taking, with the balance of the proceeds paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments.

**10. Borrower Not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other right or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17 hereof. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. Uniform Deed of Trust; Governing Law; Severability.** This form of deed of trust combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**17. Transfer of the Property; Assumption.** If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Deed of Trust shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Deed of Trust and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**18. Acceleration; Remedies.** Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting written notice at least 21 days prior to the day of sale at the courthouse door in each of the counties in which the Property is situated. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Such sale shall be made at public vendue between the hours of 10 o'clock a.m. and 4 o'clock p.m. on the first Tuesday in any month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in such order as Trustee may determine. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold in fee simple with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements contained therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's fees and attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

**19. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust, the Note and notes securing Future Advances, if any, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust and in enforcing Lender's and Trustee's remedies as provided in paragraph 18 hereof,

200005

including, but not limited to, reasonable attorney fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

    **20. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

    Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

    **21. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to release of this Deed of Trust, may make Future Advances to Borrower if the Property is not the homestead of Borrower. Such Future Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

    **22. Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall release this Deed of Trust without charge to Borrower. Borrower shall pay all costs of recordation, if any.

    **23. Substitute Trustee.** Lender at Lender's option, with or without cause, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

    **24. Subrogation.** Any of the proceeds of the Note utilized to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, however remote, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

    **25. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Deed of Trust cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected is interpreted so that any charge provided for in this Deed of Trust or in the Note, whether considered separately or together with other charges that are considered a part of this Deed of Trust and Note transaction, violates such law by reason of the acceleration of the indebtedness secured hereby, or for any other reason, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts of such interest or other charges previously paid to Lender in excess of the amounts permitted by applicable law shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note, or, at Lender's option, be refunded.

    **26. Vendor's Lien; Renewal and Extension.** The Note secured hereby is [primarily secured by the Vendor's Lien retained in the Deed of even date herewith conveying the Property to Borrower, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefor.] ✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕ ✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕.

*Delete bracketed clauses as appropriate.

    IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

                          ........................................................

                          PAUL R. CUTTS            —Borrower

                          ........................................................

                          DANA I. CUTTS            —Borrower

STATE OF TEXAS, ....... Harris ........................... County ss:

    BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared . PAUL R. CUTTS and wife, DANA I. CUTTS ........................................, known to me to be the person(s) whose name(s) ...... are .... subscribed to the foregoing instrument, and acknowledged to me that t.hey. executed the same for the purposes and consideration therein expressed.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ................. day of .. March ........, 19 . 76

                          ........................................................

                          Notary Public  in and for Harris County, Texas.

——————————————— (Space Below This Line Reserved For Lender and Recorder) ———————————————

200006

E700844

**GENERAL WARRANTY DEED WITH VENDOR'S LIEN IN FAVOR OF THIRD PARTY**

THE STATE OF TEXAS }

COUNTY OF Harris }

KNOW ALL MEN BY THESE PRESENTS:

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

THAT    WE, LAWRENCE A. ROE and wife, KATHRYN L. ROE

(hereinafter called "GRANTORS" whether one or more), for and in consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable considerations cash in hand paid by    PAUL R. CUTTS and wife, DANA I. CUTTS

(hereinafter called "GRANTEES" whether one or more), the receipt and sufficiency of which are hereby acknowledged and confessed, and the further consideration of   FORTY SEVEN THOUSAND NINE HUNDRED AND NO/100

($47,900.00) DOLLARS in hand paid by ALLSTATE ENTERPRISES MORTGAGE CORPORATION

(hereinafter referred to as "BENEFICIARY") at the special instance and request of the Grantees herein, the receipt of which is hereby acknowledged and confessed, and as evidence of such advancement, the said Grantees herein have executed their note of even date herewith for said amount payable to the order of said Beneficiary, bearing interest at the rate therein provided, principal and interest being due and payable in monthly installments as therein set out, and providing for attorney's fees and acceleration of maturity at the rate and in the events therein set forth, which note is secured by the Vendor's Lien herein reserved and is additionally secured by a Deed of Trust of even date herewith, executed by the Grantees herein to L. B. Hodges and/or David C. DuBose Trustee, reference to which is here made for all purposes; and in consideration of the payment of the sum above mentioned by the Beneficiary above mentioned, Grantors hereby transfer, set over, assign and convey unto said Beneficiary and assigns, the Vendor's Lien and Superior Title herein retained and reserved against the property and premises herein conveyed, in the same manner and to the same extent as if said note had been executed in Grantors' favor and said Grantors assigned to the Beneficiary without recourse; have GRANTED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY unto the said Grantees herein, the following described property, together with all improvements thereon, to-wit:

Lot Sixteen (16) in Block Twenty-eight (28) of WALNUT BEND, SECTION EIGHT (8), an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 129, Page 59 of the Map Records of Harris County, Texas.

TO HAVE AND TO HOLD the above described premises, together with, all and singular, the rights and appurtenances thereto in any wise belonging, unto the said Grantees, their heirs and assigns forever. And Grantors do hereby bind themselves, their heirs, executors and administrations, to warrant and forever defend all and singular, the said premises unto the said Grantees, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. Taxes for the current year have been prorated and are assumed by Grantee. This conveyance is made and accepted subject to any and all validity existing restrictions, mineral reservations and interests, conditions, covenants, easements, and rights of way, if any, applicable to and enforceable against the above described property as now reflected by the records of the County Clerk in said County and State.

But it is expressly agreed and stipulated that the Vendor's Lien and the Superior Title are retained and reserved in favor of the payee in said note against the above described property, premises and improvements, until said note, and all interest thereon is fully paid according to the face and tenor, effect and reading thereof, when this deed shall become absolute.

When this deed is executed by one person, or when the Grantee is one person, the instrument shall read as though pertinent verbs and pronouns were changed to correspond, and when executed by or to a corporation the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "Successors and assigns".

Executed on this the    8th    day of    March    , 19 76

LAWRENCE A. ROE

KATHRYN L. ROE

THE STATE OF TEXAS:
COUNTY OF  HARRIS

BEFORE ME, the undersigned authority, on this day personally appeared    LAWRENCE A. ROE and wife,

KATHRYN L. ROE

, known to me to be the person(s)

whose name(s)   are    subscribed to the foregoing instrument, and acknowledged to me that  they   executed the same

for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this    8    day of    March    , 19 76

J. Files

Notary Public in and for    Harris    County, Texas

Return to: Paul R. Cutts
311 Blue Willow Dr.
Houston, Texas 77042

200007

A2112

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0973400000016**

Tax Year: 2017

🖨 Print

| Owner and Property Information | |
|---|---|
| Owner Name & Mailing Address: | **STRAUSEGODEJORD INGA GODEJORD ARNSTEIN 14334 HEATHERFIELD DR HOUSTON TX 77079-7400** |
| Legal Description: | **LT 16 BLK 22 NOTTINGHAM FOREST SEC 2** |
| Property Address: | **14334 HEATHERFIELD DR HOUSTON TX 77079** |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 9,280 SF | 2,722 SF | 7708 | 25004 | 4857C | 488M |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| **Residential Homestead** | 025 | SPRING BRANCH ISD | 159,325 | Certified: 08/11/2017 | 1.394500 | 1.394500 |
| | 040 | HARRIS COUNTY | 134,325 | Certified: 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 134,325 | Certified: 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | 134,325 | Certified: 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 134,325 | Certified: 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 134,325 | Certified: 08/11/2017 | 0.005200 | 0.005195 |
| | 061 | CITY OF HOUSTON | 134,325 | Certified: 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway**.

### Valuations

| Value as of January 1, 2016 | | | Value as of January 1, 2017 | | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 462,000 | | Land | 462,000 | |
| Improvement | 213,489 | | Improvement | 214,722 | |
| Total | 675,489 | 610,567 | Total | 676,722 | 671,623 |

### Land

| Market Value Land | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 9,200 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 50.00 | 50.00 | 460,000.00 |
| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 80 | 1.00 | 0.50 | 1.00 | -- | 0.50 | 50.00 | 25.00 | 2,000.00 |

### Building

| Building | Year Built | Remodeled | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|---|
| 1 | 1965 | 2004 | Residential Single Family | Residential 1 Family | Good | 2,722 * | Displayed |

* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

| Building Details (1) | |
|---|---|
| Building Data | Building Areas |

A2113

| Element | Detail |
|---|---|
| Cost and Design | Partial |
| Cond / Desir / Util | Very Good |
| Foundation Type | Slab |
| Grade Adjustment | B |
| Heating / AC | Central Heat/AC |
| Physical Condition | Average |
| Exterior Wall | Brick / Veneer |
| Element | Units |
| Room: Total | 7 |
| Room: Rec | 1 |
| Room: Half Bath | 1 |
| Room: Full Bath | 2 |
| Room: Bedroom | 4 |
| Fireplace: Masonry Firebrick | 1 |

| Description | Area |
|---|---|
| BASE AREA PRI | 2,016 |
| OPEN FRAME PORCH PRI | 88 |
| OPEN FRAME PORCH PRI | 138 |
| OPEN FRAME PORCH PRI | 30 |
| ATTIC FINISHED | 706 |

**Extra Features**

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Frame Detached Garage | Fair | Average | 462.00 | 1969 |

A2114

Case 1:17-cv-09002-LAS    Document 266-3    Filed 01/10/23    Page 93 of 163
HCAD: Ownership History                                                                Page 1 of 1
Case 1:17-cv-09002-SGB    Document 23-5    Filed 01/16/18    Page 70 of 104

**Print**

Ownership History: 0973400000016

**14334 HEATHERFIELD DR**
**HOUSTON TX 77079**

| Owner | Effective Date |
|-------|----------------|
| GODEJORD ARNSTEIN | 5/20/2008 |
| STRAUSEGODEJORD INGA | 5/20/2008 |
| ROMEO JOHN M & ETAL | 12/1/1995 |
| DOBBS BARRON D | 1/2/1986 |

[end of record]

**-close window-**

20080267221
05/23/2008 · RP3 · $24.50

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING
INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN
REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:
YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## GENERAL WARRANTY DEED
### (With Third Party Vendor's Lien)

THE STATE OF TEXAS                          §

COUNTY OF  HARRIS                           §

THAT
JOHN ROMEO AND PEGGY ROMEO, HUSBAND AND WIFE

, hereinafter referred to as "Grantor" (whether one or more), for and in consideration of the sum of TEN
AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor in hand paid by
ARNSTEIN GODEJORD AND INGA STRAUSE-GODEJORD, HUSBAND AND WIFE

, hereinafter referred to as "Grantee" (whether one or more), the receipt and sufficiency of which are hereby
acknowledged and confessed, and for the further consideration of the execution and delivery by Grantee of
one certain Promissory Note of even date herewith, in the original principal sum of
Four Hundred  Thousand And No/100
**DOLLARS ($400,000.00** ), payable to the order of
IWAYLOAN, L.P.
, hereinafter called "Mortgagee"; said Promissory Note being secured by a Vendor's Lien and the Superior
Title herein retained and reserved in favor of Grantor and assigned and conveyed, without recourse,  to
Mortgagee, and also being secured by a Deed of Trust of even date herewith from Grantee to
CALVIN C. MANN, JR                                    , Trustee, reference to said Promissory Note
and Deed of Trust being hereby made for all purposes;

Grantor has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND
CONVEY, unto Grantee, the following described real property, to-wit:

LOT SIXTEEN (16), IN BLOCK TWENTY-TWO (22), OF NOTTINGHAM FOREST, SECTION 2, A
SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF
RECORDED IN VOLUME 118, PAGE 67, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

together with all improvements thereon, if any, and all rights, privileges, tenements, hereditaments, rights of
way, easements, appendages and appurtenances, in anyway appertaining thereto, and all right, title, and
interest of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the above described
property or any part thereof (hereinafter referred to as the "Property").

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances
thereto in any wise belonging, unto Grantee and Grantee's heirs or assigns FOREVER. Grantor does hereby
bind Grantor and Grantor's heirs, executors, and administrators TO WARRANT AND FOREVER
DEFEND all and singular the said Property unto Grantee and Grantee's heirs and assigns against every
person whomsoever lawfully claiming or to claim the same, or any part thereof.

But it is expressly agreed that Grantor reserves and retains for Grantor, and Grantor's heirs and assigns, a
Vendor's Lien, as well as the Superior Title, against the Property until the above described Promissory Note
and all interest therein have been fully paid according to the terms thereof, when this Deed shall become
absolute.

WHEREAS, Mortgagee, at the special instance and request of Grantee, having paid to Grantor a portion of

Page 1 of 3

RECORDED AT THE REQUEST
OF FIRST AMERICAN TITLE

1188736-15

A2116

the purchase price of the Property, as evidenced by the above described Promissory Note, Grantor hereby assigns, transfers, conveys and delivers, without recourse, to Mortgagee said Vendor's Lien and Superior Title against said Property to secure the payment of said Promissory Note, and subrogates Mortgagee to all rights and remedies of Grantor in the Property by virtue thereof.

To the extent applicable to and enforceable against the Property, this Deed is executed, delivered and accepted subject to the following: any liens described herein; ad valorem taxes for the current and all subsequent years, and subsequent assessments for prior years due to changes in land usage or ownership; zoning ordinances, utility district assessments, and standby fees, if any; all valid utility easements created by the dedication deed or plat of the platted subdivision in which the Property is located, covenants and restrictions common to the platted subdivision in which the Property is located, mineral reservations, and maintenance or assessment liens (if any), all as shown by the real property records of the County Clerk of the County in which said Property is located; and any title or rights asserted by anyone (including, but not limited to, persons, corporations, governments or other entities) to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or to any land extending from the line of the harbor or bulkhead lines as established or changed by any government or to filled-in lands, or artificial islands, or to riparian rights or other statutory water rights, or the rights or interests of the State of Texas or the public generally in the area extending from the line of mean low tide to the line of vegetation or the right of access thereto, or right of easement along and across the same, if any.

The contract between Grantor, as the seller, and Grantee, as the buyer, may contain limitations as to warranties. To the extent said contract provides for such limitations to survive this conveyance, they shall be deemed incorporated herein by reference. However, the warranty of title contained in this Deed is hereby expressly excluded from any limitations as to warranties contained in the contract referenced in this paragraph.

When this Deed is executed by more than one person, or when Grantee is more than one person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed correspondingly, and when executed by or to a legal entity other than a natural person, the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns". Reference to any gender shall include either gender and in the case of a legal entity other than a natural person, shall include the neuter gender, all as the case may be. The term "Mortgagee" shall include the Mortgagee's heirs, successors and assigns, as applicable.

DATED the 20th          day of May, 2008

_____          _____
JOHN ROMEO                                    PEGGY ROMEO

_____          _____

After Recording Return To Grantee
At GRANTEE'S MAILING ADDRESS:

ARNSTEIN GODEJORD
14334 HEATHERFIELD DRIVE
HOUSTON, TX 77079

RP 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

## ACKNOWLEDGMENTS

The State of TEXAS                                              §

County of HARRIS                                               §

This instrument was acknowledged before me on the 20ᵗʰ day of May 208, by
JOHN ROMEO and PEGGY ROMEO



DEBBIE L. STEINLE
Notary Public, State of Texas
My Commission Expires 03-14-2009

_____
Notary Public

My commission expires:

_____          _____
                                          Notary's Name (printed)

RP 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

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in the number Sequence on the date and at time
stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris
County Texas on

MAY 2 3 2008


COUNTY CLERK
HARRIS COUNTY, TEXAS


COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED
2008 MAY 23 AM 11: 20

_____
Page 3 of 3

A2118

20080267221
05/23/2008 RP3 $24.50

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### GENERAL WARRANTY DEED
(With Third Party Vendor's Lien)

THE STATE OF TEXAS §

COUNTY OF HARRIS §

THAT
JOHN ROMEO AND PEGGY ROMEO, HUSBAND AND WIFE

, hereinafter referred to as "Grantor" (whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor in hand paid by ARNSTEIN GODEJORD AND INGA STRAUSE-GODEJORD, HUSBAND AND WIFE

, hereinafter referred to as "Grantee" (whether one or more), the receipt and sufficiency of which are hereby acknowledged and confessed, and for the further consideration of the execution and delivery by Grantee of one certain Promissory Note of even date herewith, in the original principal sum of
Four Hundred Thousand And No/100
DOLLARS ($400,000.00          ), payable to the order of
IWAYLOAN, L.P.
, hereinafter called "Mortgagee"; said Promissory Note being secured by a Vendor's Lien and the Superior Title herein retained and reserved in favor of Grantor and assigned and conveyed, without recourse, to Mortgagee, and also being secured by a Deed of Trust of even date herewith from Grantee to CALVIN C. MANN, JR                                    , Trustee, reference to said Promissory Note and Deed of Trust being hereby made for all purposes;

Grantor has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY, unto Grantee, the following described real property, to-wit:

LOT SIXTEEN (16), IN BLOCK TWENTY-TWO (22), OF NOTTINGHAM FOREST, SECTION 2, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 118, PAGE 67, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

together with all improvements thereon, if any, and all rights, privileges, tenements, hereditaments, rights of way, easements, appendages and appurtenances, in anyway appertaining thereto, and all right, title, and interest of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the above described property or any part thereof (hereinafter referred to as the "Property");

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, unto Grantee and Grantee's heirs or assigns FOREVER. Grantor does hereby bind Grantor and Grantor's heirs, executors, and administrators TO, WARRANT AND FOREVER DEFEND all and singular the said Property unto Grantee and Grantee's heirs and assigns against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

But it is expressly agreed that Grantor reserves and retains for Grantor, and Grantor's heirs and assigns, a Vendor's Lien, as well as the Superior Title, against the Property until the above described Promissory Note and all interest therein have been fully paid according to the terms thereof, when this Deed shall become absolute.
WHEREAS, Mortgagee, at the special instance and request of Grantee, having paid to Grantor a portion of

Page 1 of 3

RECORDED AT THE REQUEST
OF FIRST AMERICAN TITLE

118876-15 BANES000726



EXHIBIT
Godejord-1
DC                9/17/18

Godejord000028

A2119

the purchase price of the Property, as evidenced by the above described Promissory Note, Grantor hereby assigns, transfers, conveys and delivers, without recourse, to Mortgagee said Vendor's Lien and Superior Title against said Property to secure the payment of said Promissory Note, and subrogates Mortgagee to all rights and remedies of Grantor in the Property by virtue thereof.

To the extent applicable to and enforceable against the Property, this Deed is executed, delivered and accepted subject to the following: any liens described herein; ad valorem taxes for the current and all subsequent years, and subsequent assessments for prior years due to changes in land usage or ownership; zoning ordinances, utility district assessments, and standby fees, if any; all valid utility easements created by the dedication deed or plat of the platted subdivision in which the Property is located, covenants and restrictions common to the platted subdivision in which the Property is located, mineral reservations, and maintenance or assessment liens (if any), all as shown by the real property records of the County Clerk of the County in which said Property is located; and any title or rights asserted by anyone (including, but not limited to, persons, corporations, governments or other entities) to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or to any land extending from the line of the harbor or bulkhead lines as established or changed by any government or to filled-in lands, or artificial islands, or to riparian rights or other statutory water rights, or the rights or interests of the State of Texas or the public generally in the area extending from the line of mean low tide to the line of vegetation or the right of access thereto, or right of easement along and across the same, if any.

The contract between Grantor, as the seller, and Grantee, as the buyer, may contain limitations as to warranties. To the extent said contract provides for such limitations to survive this conveyance, they shall be deemed incorporated herein by reference. However, the warranty of title contained in this Deed is hereby expressly excluded from any limitations as to warranties contained in the contract referenced in this paragraph.

When this Deed is executed by more than one person, or when Grantee is more than one person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed correspondingly, and when executed by or to a legal entity other than a natural person, the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns". Reference to any gender shall include either gender and in the case of a legal entity other than a natural person, shall include the neuter gender, all as the case may be. The term "Mortgagee" shall include the Mortgagee's heirs, successors and assigns, as applicable.

DATED the 20th     day of May, 2009

_____          _____
JOHN ROMEO                       PEGGY ROMEO

After Recording Return To Grantee
At GRANTEE'S MAILING ADDRESS:

ARNSTEIN GODEJORD
14334 HEATHERFIELD DRIVE
HOUSTON, TX 77079

Page 2 of 3

BANES000727

Godejord000029

A2120



ACKNOWLEDGMENTS

The State of TEXAS                    §

County of HARRIS                     §

This instrument was acknowledged before me on the 20th day of May 2008, by
JOHN ROMEO and PEGGY ROMEO

DEBBIE L. STEINLE
Notary Public, State of Texas
My Commission Expires 01-14-2009

_____
Notary Public

My commission expires:

_____

_____
Notary's Name (printed)

MAY 2 3 2008

COUNTY CLERK,
HARRIS COUNTY, TEXAS

FILED
2008 MAY 23 AM 11:20
COUNTY CLERK
HARRIS COUNTY, TEXAS

Page 3 of 3

BANES000728

Godejord000030

A2121

20150045548
02/03/2015    ER    $20.00

**WD**
**X**

### GENERAL WARRANTY DEED
### WITH VENDOR'S LIEN RETAINED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS       §
                          §
COUNTY OF HARRIS       §

**1EE**

    KNOW ALL MEN BY THESE PRESENTS: That **Saromar II, L.L.C.** (the "**Grantor**"), a Texas limited liability company, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration in hand paid by **Good Resources, LLC** ("**Grantee**"), a Texas limited liability company whose address is set forth below, the receipt and sufficiency of which is hereby acknowledged, and of further consideration of the execution and delivery by the Grantee of one (1) certain promissory note (the "**Note**") of even date herewith in the principal sum of **One Hundred Twenty Nine Thousand and No/100 Dollars ($129,000.00)**, payable to the order of Grantor herein as specified in the Note, bearing interest from date at the rate therein specified and containing the usual provisions for acceleration of maturity upon default, the payment of the Note is secured by a vendor's lien retained herein and is further and additionally secured by Deed of Trust of even date herewith from Grantee to **John K. Tyler**, Trustee, containing power of sale, to which reference is here made for all purposes, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto the Grantee herein all that certain property (the "**Real Property**") situated in the above mentioned county, described as follows, to-wit:

**D**

        **Lot Four (4), in Block Two (2), of MEADOWS ON MEMORIAL, an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 295, Page 60 of the Map Records of Harris County, Texas;**

together with (a) all improvements located on the Real Property, if any, (b) any and all appurtenances, easements or rights-of-way affecting the Real Property, and all of Grantor's rights, if any, to use the same, (c) any rights of ingress and egress to and from the Real Property and Grantor's rights to use the same, (d) the mineral rights, if any, owned by Grantor relating to the Real Property, and (e) all right, title and interest of Grantor, if any, in and to (i) any and all roads, streets, alleys and ways (open or proposed) affecting, crossing, fronting or bounding the Real Property, (ii) any and all strips, gores or pieces of property abutting, bounding or which are adjacent or contiguous to the Real Property (however owned or claimed by Grantor), and (iii) all reversionary interests, if any, in and to the Real Property. The Real Property, together with the rights and interests set forth in (a) through (e), inclusive, are herein collectively referred to as the "**Property**". Notwithstanding any contrary provisions hereof, Grantor is conveying the rights set forth in (c) and (e) WITHOUT WARRANTY of any kind, whether express, implied or statutory.

    This conveyance is made SUBJECT TO, all and singular, but only to the extent that the same are currently valid and enforceable against the Property, (a) all rights-of-ways and easements, whether of record or not, (b) all restrictions, covenants and conditions, reservations, mineral severances, oil and gas leases and

1

*14 20190291 / Vm /12*

**STEWART TITLE HOUSTON DIVISION**

all other instruments that affect the Property, and, (c) rights, if any, of adjoining property owners of fences situated on a common boundary line.

TO HAVE AND TO HOLD the Property, subject to the matters herein set forth, together with all and singular the rights and appurtenances thereto in anywise belonging unto the Grantee, its successors and assigns forever; and the Grantor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER DEFEND, all and singular the Property unto the Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

But it is expressly agreed and stipulated that the vendor's lien and superior title are retained against the Property, premises and improvements until the Note and all interest thereon are fully paid according to the face and tenor, effect and reading thereof, when this deed shall become absolute.

Whenever the context of this General Warranty Deed requires, (a) the singular nouns and pronouns include the plural, (b) any gender includes the other genders and (c) the term "successors and assigns" includes legal representatives, heirs, executors, administrators, successors and assigns.

Taxes for the current year have been prorated to the date hereof and the payment of same is hereby assumed by the Grantee.

EXECUTED this 30th day of January, 2015.

Saromar II, L.L.C., a Texas limited liability company          **1OR**

By: _____
    Sami Romman, Manager

Grantee's Address:

P. O. Box 17955
Sugar Land, Texas 77496-7955

THE STATE OF TEXAS          §
                    Travis  §
COUNTY OF ~~HARRIS~~          §

This instrument was acknowledged before me on the 30th day of January, 2015, by **Sami Romman, Manager of Saromar II, L.L.C.**, a Texas limited liability company, on behalf thereof and in the capacity therein stated.

_____
NOTARY PUBLIC - STATE OF TEXAS
Printed Name: _____
My Commission Expires:
07/31/16

2

ER 065 - 71 - 2329

ER 065 - 71 - 2330

20150045548
# Pages 3
02/03/2015   12:21:44 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees 20.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

**Cause No. 17-1300 L**

# WAYNE AND PEGGY HOLLIS
# DOCUMENT EXCHANGE

**After Recording Return To:**
CLAUDIA CARVALHO

Wachovia Bank, National Association
Retail Credit Servicing
P.O. Box 50010
Roanoke, VA 24022

20070742014
12/20/2007  RP3  $64.00

(Space Above This Line For Recording Data)

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6) AND 50(t), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

# TEXAS HOME EQUITY DEED OF TRUST
## (Securing Future Advances)

**This Security Instrument is not intended to finance Trustor's acquisition of the Property.**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined elsewhere in this document. Certain rules regarding the usage of words used in this document are also provided in Section 14.

**(A) "Security Instrument"** means this document, which is dated __29    November, 2007__
**(B) "Borrower"** means the parties obligated on the Debt Instrument.
**(C) "Trustor"** under this Security Instrument is
WAYNE HOLLIS, JR., AND WIFE, PEGGY H HOLLIS

**(D) "Lender"** is Wachovia Bank, National Association.  Lender is a national banking association organized and existing under the laws of the United States of America. Lender's address is Wachovia Bank, National Association, 301 South College Street, VA 0343, Charlotte, N.C.  28288-0343. Lender includes any holder of the Debt Instrument who is entitled to receive payments under the Debt Instrument. Lender is the beneficiary under this Security Instrument.
**(E) "Trustee"** is Trste, Inc.  Trustee's address is Trste Inc., 7711 Plantation Road, VA 0343, Roanoke, VA. 24019.
**(F) "Debt Instrument"** means the open-end line of credit agreement or other credit instrument signed by Borrower and dated __11/29/07__.  The Debt Instrument states that Lender is owed, or may be owed, an amount that may vary from time to time up to a maximum principal sum outstanding at any one time of Dollars (U.S. $ __185000.00__ ) plus interest to be repaid in Periodic Payments and in full not later than __11/28/37__.
Lender is absolutely obligated under the terms of the Debt Instrument to make advances to Borrower so long as Borrower and Trustor comply with the terms of the Debt Instrument and Security Instrument.
**(G) "Property"** means the property located at
__14914 RIVER FRST__
__HOUSTON   TX   77079__ ("Property Address")
and that is further described below under the heading "Transfer of Rights in the Property."
**(H) "Extension of Credit"** means the debt, as defined by Section 50(a)(6) and 50(t), Article XVI of the Texas Constitution, that is evidenced by the Debt Instrument.  "Extension of Credit" also refers to all the documents executed in connection with the debt.
**(I) "Applicable Law"** means all controlling applicable federal law and, to the extent not preempted by federal law, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Trustor or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Periodic Payment"** means the amounts as they become due for (i) principal, interest and other charges as provided for in the Debt Instrument, plus (ii) any amounts under Section 3 of this Security Instrument.

570201 (Rev 02)                                    1                    (09/06) Texas Open-End Deed of Trust 50(a)(6)
*0730200454*

HOLLIS00001

A2126

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Trustor"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Debt Instrument and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all future advances, renewals, extensions and modifications of the Debt Instrument, including any future advances made at a time when no indebtedness is currently secured by this Security Instrument; and (ii) the performance of Trustor's covenants and agreements under this Security Instrument and Borrower's covenants and agreements under the Debt Instrument. For this purpose, Trustor irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the County of _____ HARRIS _____, State of Texas:

DEED DATE:01/21/85 RECORDED: 01/22/85 BOOK/INST: PAGE:
PARCEL/TAX ID #:1000810000012

BLOCK: 8

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. If the Property is a multifamily (2-4 family) dwelling, then the following items now or hereafter attached to the Property to the extent they are fixtures are also covered by this Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

If the Property includes a unit in, together with an undivided interest in the common elements of, a condominium project (the "Condominium Project") and if the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Trustor's interest in the Owners Association and the uses, proceeds and benefits of Trustor's interest to the extent permitted by § 50(a)(6)(H), Article XVI of the Texas Constitution.

If the Property is a part of a planned unit development (the "PUD"), the Property also includes Trustor's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Trustor's interest to the extent permitted by § 50(a)(6)(H), Article XVI of the Texas Constitution.

OWNER COVENANTS that Trustor is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Trustor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

UNIFORM COVENANTS. Trustor and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Debt Instrument and any prepayment charges, late charges and other charges due under the Debt Instrument. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Debt Instrument and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Debt Instrument or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Debt Instrument and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in (or in accordance with) the Debt Instrument or at such other location as may be designated by Lender in accordance with the notice provisions in Section 13. Subject to Applicable Law, Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. Payments shall be applied as permitted by applicable law and as provided in the Debt Instrument.

**2.  Application of Payments or Proceeds.**  Unless other procedures are set forth in the Debt Instrument or Applicable Law and as otherwise described in this Section 2, the following provisions in this Section 2 shall govern the application of payments and proceeds with respect to the Extension of Credit. All payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Debt Instrument; (b) principal due under the Debt Instrument; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Debt Instrument.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges and other charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Debt Instrument.

Unless other procedures are set forth in the Debt Instrument, any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Debt Instrument shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.  Funds for Escrow Items.**  The Lender does not require or provide for escrow at the time this Security Instrument is signed. Accordingly, the provisions of this Section 3 shall only apply if at any time any Escrow Item, as described below and including any Community Association Dues, Fees, and Assessments, is not paid when due, and Lender gives Borrower notice that these provisions will thereafter apply. Until such notice is provided, Borrower shall have no obligation under this Section 3. When the escrow is established, Borrower shall pay to Lender for deposit in an escrow account such amounts (the "Funds") as permitted by applicable law. Thereafter, Borrower shall pay to Lender on the day Periodic Payments are due under the Debt Instrument, until the Debt Instrument is paid in full, a sum to be added to the Funds to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such Community Association Dues, Fees, and Assessments shall be an Escrow Item. Trustor or Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 13 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, if applicable, and (b) not to exceed the maximum amount a lender can require under RESPA, if applicable. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA, if applicable. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA, if applicable.

HOLLIS00003

A2128

RP 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

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA, if applicable. If RESPA is applicable and there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If RESPA is applicable and there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Trustor shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, they shall be paid in the manner provided in Section 3, if Borrower is obligated to do so under Section 3.

Trustor shall promptly discharge any lien which has priority over this Security Instrument unless: (a) such lien was disclosed on the application for the Extension of Credit that Borrower provided to Lender or Trustor agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Trustor is performing such agreement; (b) Trustor contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) Trustor secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument and which was not disclosed on the application for the Extension of Credit that Borrower provided to Lender, Lender may give Trustor a notice identifying the lien. Within 10 days of the date on which that notice is given, Trustor shall satisfy the lien or take one or more of the actions satisfactory to Lender set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Trustor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. If the Property is a multifamily (2-4 family) dwelling, Trustor shall also maintain insurance against rent loss. All such property insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's right to disapprove Trustor's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Trustor.

**IF INSURANCE IS REQUIRED OWNER MAY FURNISH THE INSURANCE THROUGH EXISTING POLICIES OWNER OWNS OR CONTROLS OR OWNER MAY BUY EQUIVALENT INSURANCE COVERAGE THROUGH ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.**

If Trustor fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Trustor, Trustor's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Trustor could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Trustor further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance. If Lender requires, Trustor shall promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices. If Trustor obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Trustor further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance.

HOLLIS00004

A2129

In the event of loss and subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights, the following provisions in this Section 5 shall apply. Trustor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Trustor. Unless Lender and Trustor otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Trustor shall not be paid out of the insurance proceeds and shall be the sole obligation of Trustor. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Trustor. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Trustor abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Trustor does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given.

**6. Occupancy.** Trustor now occupies and uses the Property as Trustor's Texas homestead and shall continue to occupy the Property as Trustor's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Trustor's control.

This Section 6 does not apply if the Property is a multifamily (2-4 family) dwelling, unless Lender and Trustor otherwise agree in writing.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Trustor shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Trustor is residing in the Property, Trustor shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Trustor shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Trustor shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Trustor is not relieved of Trustor's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Trustor notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Debt Instrument and secured by this Security Instrument if, during the application process for the Extension of Credit, Borrower, Trustor or any persons or entities acting at the direction of Borrower or Trustor or with Borrower's or Trustor's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Extension of Credit or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Trustor's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Acknowledgement of Fair Market Value Affidavit as described in Section 25.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Trustor fails to perform the covenants and agreements contained in this Security Instrument or any obligation that is secured by a lien that is superior to this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of any lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Trustor has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is

RP 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

HOLLIS00005

A2130

not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Trustor shall comply with all the provisions of the lease. If Trustor acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower shall not operate to release the liability of Trustor or any Successors in Interest of Trustor. Lender shall not be required to commence proceedings against any Successor in Interest of Trustor or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Trustor or any Successors in Interest of Trustor. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Trustor or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Trustor covenants and agrees that Trustor's obligations and liability shall be joint and several. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several, however, for any extension of credit subject to Tex. Const. Art. XVI § 50(a)(6), no Trustor or spouse of any Trustor will be held personally liable for the amount due under the Debt Instrument, unless the Trustor or the Trustor's spouse is a Borrower who obtained the extension of credit under the Debt Instrument by actual fraud. Any Trustor who signs this Security Instrument but does not execute the Debt Instrument (a "co-trustor"): (a) is signing this Security Instrument only to mortgage, grant and convey the co-trustor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Debt Instrument without the co-trustor's consent.

Borrower's and Trustor's obligations are not assumable. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 18) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with a default by either Borrower or Trustor, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Debt Instrument or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Debt Instrument). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. Notices.** Unless otherwise described in the Debt Instrument or in another agreement between Borrower and Lender or Trustor and Lender, the following provisions regarding notices shall apply. All notices given by Borrower, Trustor or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower or Trustor in connection with this Security Instrument shall be deemed to have been given when mailed by first class mail or when actually delivered to the notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. Notice to any one Trustor shall constitute notice to all Owners unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower or Trustor has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. Trustor shall promptly notify Lender of Trustor's change of address. If Lender specifies a procedure for reporting a change of address, then Borrower or Trustor shall only report a change of address through that specified procedure. There may be only one designated notice address for Borrower under the Extension of Credit at any one time. If no Borrower is also an Trustor there may be one additional designated notice address for Trustor. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower or Trustor. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

RP 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

570201 (Rev 02)                                        6                          (09/06) Texas Open-End Deed of Trust 50(a)(6)

HOLLIS00006

A2131

**14. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and, to the extent not preempted by federal law, the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Debt Instrument conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Debt Instrument which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; (c) the word "may" gives sole discretion without any obligation to take any action; and (d) headings that appear at the beginning of the sections of this Security Instrument are inserted for the convenience of the reader only, shall not be deemed to be a part of this Security Instrument, and shall not limit, extend, or delineate the scope or provisions of this Security Instrument.

**15. Borrower's and Trustor's Copy.** Borrower shall be given one copy of the Debt Instrument and of this Security Instrument. Any Trustor that is not also a Borrower shall also be given one copy of the Debt Instrument and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Trustor.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Trustor at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Trustor is not a natural person and a beneficial interest in Trustor is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Trustor notice of acceleration (and shall notify Borrower as well, if no Trustor is a Borrower). The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which all sums secured by this Security Instrument must be paid. If these sums are not paid to Lender prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower or Trustor.

**17. Trustor's Right to Reinstate After Acceleration.** If Trustor meets certain conditions and the Property is not a multifamily (2-4 family) dwelling, Trustor shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Trustor's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that: (a) Lender is paid all sums which then would be due under this Security Instrument and the Debt Instrument as if no acceleration had occurred; (b) any default of any other covenant or agreement is cured; (c) all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument are paid to Lender; and (d) such action as Lender may reasonably require is taken to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that such reinstatement sums and expenses be paid in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, Trustor shall have the right to reinstate only once in any 24-month period, and this right to reinstate shall not apply in the case of acceleration under Section 16.

**18. Sale of Debt Instrument; Change of Loan Servicer; Notice of Grievance.** The Debt Instrument or a partial interest in the Debt Instrument (together with this Security Instrument) can be sold one or more times without prior notice to either Trustor or Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Debt Instrument and this Security Instrument and performs other mortgage loan servicing obligations under the Debt Instrument, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Debt Instrument. If there is a change of the Loan Servicer, Borrower will be given written notice of the change. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will include any other information required by Applicable Law in connection with a notice of transfer of servicing. If the Debt Instrument is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Debt Instrument, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Debt Instrument unless otherwise provided by the purchaser of the Debt Instrument.

Neither Borrower, Trustor or Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower, Trustor or Lender has notified the other party

HOLLIS00007

A2132

(with such notice given in compliance with the requirements of Section 13) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given pursuant to Section 20 and the notice of acceleration given pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 18. If Borrower and Lender or Trustor and Lender have entered into an agreement to arbitrate disputes, the provisions of any such arbitration agreement shall supersede any provision in this Section 18 that would conflict with the arbitration agreement.

**19. Hazardous Substances.** As used in this Section 19: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Trustor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Trustor shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Trustor shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Trustor has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Trustor learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Trustor shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Trustor and Lender further covenant and agree as follows:

**20. Acceleration; Remedies. Trustor will be in default if (1) any payment required by the Debt Instrument or this Security Instrument is not made when it is due; (2) Lender discovers that Borrower or Trustor has committed fraud or made a material misrepresentation in connection with the Extension of Credit; (3) Borrower or Trustor takes any action or fails to take any action that adversely affects Lender's rights under this Security Instrument, any of Lender's other security for the Debt Instrument, or any right Lender has in the Property. If a default occurs (other than under Section 16, unless Applicable Law provides otherwise), Lender will give Trustor notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Trustor of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Trustor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 20, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.**

**The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Trustor understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Trustor in a judicial proceeding.**

**21. Power of Sale.** It is the express intention of Lender and Trustor that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Trustor that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly,

Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 21 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Trustor in the manner prescribed by Applicable Law. Sale shall be made at a public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Trustor authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Trustor. Trustor covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 21, Trustor or any person holding possession of the Property through Trustor shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Trustor or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**22. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Debt Instrument to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Debt Instrument and assignment of the lien to a lender that is refinancing the Extension of Credit. Trustor shall pay only recordation costs.

OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

**23. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Debt Instrument and Trustor's promises and obligations in this Security Instrument are performed.

Trustor understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Debt Instrument is given without personal liability against each Trustor of the Property and against the spouse of each Trustor unless the Extension of Credit was obtained by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the Trustor and the Trustor's spouse.

If the Extension of Credit is obtained by such actual fraud, then, subject to Section 11, Trustor will be personally liable for the payment of any amounts due under the Debt Instrument or this Security Instrument. This means that a personal judgment could be obtained against Trustor, if Borrower fails to perform Borrower's responsibilities under the Debt Instrument or Trustor fails to perform Trustor's responsibilities under this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Debt Instrument, thereby subjecting Trustor's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 23 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Debt Instrument and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Debt Instrument and this Security Instrument.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

HOLLIS00009

A2134

**25. Provisions Related to Texas Constitution Art. XVI, Section 50(a)(6), and Section 50(t).**

**A. Proceeds.** Trustor has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

**B. No Assignment of Wages.** Trustor has not assigned wages as security for the Extension of Credit.

**C. Acknowledgment of Fair Market Value.** Lender and Trustor have executed a written acknowledgment as to the fair market value of Trustor's Property on the date the Extension of Credit is made.

**D. Acknowledgment of Waiver by Lender of Additional Collateral.** Trustor acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Trustor (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

**26. Multifamily Dwelling Covenants.** If the Property is a multifamily (2-4 family) dwelling, the following lettered paragraphs are additional covenants of this Security Instrument:

**A. Use of Property; Compliance with Law.** Trustor shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Trustor shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**B. Subordinate Liens.** Except as permitted by federal law, Trustor shall not allow any lien inferior to this Security Instrument to be perfected against the Property without Lender's prior written permission.

**27. Condominium and PUD Covenants.** If the Property is a unit in a Condominium Project or a Planned Unit Development, the following lettered paragraphs are additional covenants of this Security Instrument:

**A. PUD or Condominium Obligations.** Trustor shall perform all of Trustor's obligations under the Constituent Documents of the PUD or the Condominium Project, as applicable. If the Property is part of a PUD, the "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. If the Property is part of a Condominium Project, the "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. In either case, Trustor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located within the Condominium Project or PUD, as applicable, which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Trustor's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the Extension of Credit.

Trustor shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements of the Condominium Project, or, if the Property is part of a PUD, to common areas and facilities of the PUD, any proceeds payable to Trustor are hereby assigned and shall be paid to Lender.   Lender shall apply the proceeds to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Trustor.

**C. Public Liability Insurance.** Trustor shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Lender's Prior Consent.** Trustor shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

HOLLIS00010

A2135

**E. Remedies.** If Trustor does not pay condominium or PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the rate provided in the Debt Instrument and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Trustor accepts and agrees to the terms and covenants contained in this Security Instrument.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

**For Individual Trustors:**

_____ (Seal)
Trustor
Printed Name: WAYNE  HOLLIS JR
            (Please Complete)

_____ (Seal)
Trustor
Printed Name: PEGGY H HOLLIS
            (Please Complete)

Trustor _____
Printed Name: _____
            (Please Complete)

_____ (Seal)
Trustor
Printed Name: _____
            (Please Complete)

_____ (Seal)
Trustor
Printed Name: _____
            (Please Complete)

_____ (Seal)
Trustor
Printed Name: _____
            (Please Complete)

**For Non-Individual Trustors:**

Trustor _____

By: _____    By: _____

Title: _____    Title: _____

By: _____    By: _____

Title: _____    Title: _____

A2136

_____ [Space Below This Line for Acknowledgment] _____

**For an Individual (on individual's own behalf or as a sole proprietor):**

State of ___TEXAS_____

County of ___HARRIS_____

This instrument was acknowledged before me on the ___29th___ day of ___November___,
20_07_, by WAYNE  HOLLIS JR
      **PEGGY H HOLLIS**

_____

_____

(Place Notary Stamp Here)               _____
                            Notary Public

      DENNIS SILVA        ___DENNIS Silva_____
    My Commission Expires   Notary Public Name (Printed or Typed)
     August 17, 2009

                     My Commission Expires: ___August 17, 2009___

**For a Corporation or Limited Liability Company:**

State of _____

County of _____

This instrument was acknowledged before me on the _____ day of _____,
20____, by _____ (name of
officer), _____ (title
of officer) of _____ (name of corporation
acknowledging) a _____ (state of
incorporation) corporation or limited liability company, on behalf of said corporation or limited liability
company.

(Place Notary Stamp Here)         _____
                        Notary Public

                     _____
                     Notary Public Name (Printed or Typed)

                     My Commission Expires: _____

**For a Partnership, Limited Partnership, or Limited Liability Partnership:**

State of _____

County of _____

This instrument was acknowledged before me on the _____ day of _____,
20____, by _____ (name of acknowledging
partner or partners), on behalf of _____ (name of
partnership), a partnership, limited partnership, or limited liability partnership.

(Place Notary Stamp Here)         _____
                        Notary Public

     FILED FOR RECORD       _____
        8:00 AM           Notary Public Name (Printed or Typed)

    DEC 2 0 2007       My Commission Expires: _____

    _Beverly B. Kaufman_
   County Clerk, Harris County, Texas

RP 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

570201 (Rev 02)                 12         (09/06) Texas Open-End Deed of Trust 50(a)(6)
                                   *0730200454*

HOLLIS00012

A2137

LEGAL DESCRIPTION
Reference: 0730200454

ALL OF LOT TWELVE (12) AND THE ADJOINING WEST FOURTEEN FEET (14')
OF LOT ELEVEN (11) AND THE EAST FIVE FEET (5') OF LOT THIRTEEN (13), IN
BLOCK EIGHT (8), IN NOTTINGHAM FOREST, SECTION 8, A SUBDIVISION AT
80.86 ACRES OUT OF THE JOEL WHEATON SURVEY, ABSTRACT NO. 24, IN
HARRIS COUNTY, TEXAS, ACCORDING TO MAP THEREOF RECORDED IN
VOLUME 146, PAGE 86, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.



ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in file number Sequence on the date and at time
stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris
County Texas on

DEC 2 0 2007



COUNTY CLERK
HARRIS COUNTY, TEXAS

RP 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

HOLLIS00013

A2138

12/11/2017

Print Details

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**1000810000012**

Tax Year 2017

🖨 Print

### Owner and Property Information

| Owner Name | HOLLIS WAYNE JR   PEGGY | Legal Description | LT 12   TRS 11B   13B BLK 8 |
| Mailing Address | 14914 RIVER FOREST DR | | NOTTINGHAM FOREST SEC 8 |
| | HOUSTON TX 77079-6327 | Property Address | 14914 RIVER FOREST DR |
| | | | HOUSTON TX 77079 |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map |
|---|---|---|---|---|---|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 14,280 SF | 3,536 SF | 7702 | 25004 | 4857A | 488G |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| Residential Homestead (Multiple) | 025 | SPRING BRANCH ISD | 205,123 | Certified 08/11/2017 | 1.394500 | 1.394500 |
| | 040 | HARRIS COUNTY | 308,723 | Certified 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 308,723 | Certified 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | 308,723 | Certified 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 308,723 | Certified 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 308,723 | Certified 08/11/2017 | 0.005200 | 0.005195 |
| | 061 | CITY OF HOUSTON | 308,723 | Certified 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at HCAD s information center at 13013 NW Freeway.

### Valuations

| | Value as of January 1, 2016 | | | | Value as of January 1, 2017 | |
|---|---|---|---|---|---|---|
| | Market | | Appraised | | Market | Appraised |
| Land | 439,600 | | | Land | 439,600 | |
| Improvement | 300,008 | | | Improvement | 304,017 | |
| Total | 739,608 | | 706,792 | Total | 743,617 | 743,617 |

### Land

| | | | | | Market Value Land | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 7,700 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 40.00 | 40.00 | 308,000.00 |
| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 6,580 | 1.00 | 0.50 | 1.00 | -- | 0.50 | 40.00 | 20.00 | 131,600.00 |

### Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1969 | Residential Single Family | Residential 1 Family | Good | 3,536 | Displayed |

All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above attached garages is included in the square footage living area of the dwelling. Living area above detached garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cond / Desir / Util | Excellent |
| Foundation Type | Slab |
| Grade Adjustment | B |
| Heating / AC | Central Heat/AC |
| Physical Condition | Good |
| Exterior Wall | Frame / Concrete Blk |
| Exterior Wall | Brick / Masonry |
| Element | Units |
| Room  Total | 9 |
| Room  Full Bath | 3 |
| Room  Bedroom | 4 |
| Fireplace  Masonry Firebrick | 1 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 1,320 |
| CARPORT PRI | 968 |
| CARPORT PRI | 320 |
| ONE STORY FRAME PRI | 240 |
| ONE STORY MAS PRI | 656 |
| BASE AREA UPR | 1,320 |

### Extra Features

| Line | Description | Quality | Condition | Units | Year Built |
|---|---|---|---|---|---|
| 1 | Frame Detached Garage | Good | Good | 504.00 | 1969 |

HOLLIS00014

A2139

🖶 Print

**Ownership History: 1000810000012**

**14914 RIVER FOREST DR**
**HOUSTON TX 77079**

| Owner | Effective Date |
|---|---|
| HOLLIS WAYNE JR & PEGGY | 1/2/1988 |
| CRAIG JANET EXEQUTRIX | 1/2/1984 |

[end of record]

~close window~

HOLLIS00015

A2140

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**1329650010002**

Tax Year: 2017

Print

| Owner and Property Information | | |
|---|---|---|
| Owner Name & Mailing Address: | **MEMORIAL SMC INVESTMENT 2013 LP**<br>**55 WAUGH DR STE 500**<br>**HOUSTON TX 77007-5840** | Legal Description:     **RES A1 BLK 1**<br>**MAYDE CREEK CROSSING**<br><br>Property Address:     **777 S MAYDE CREEK DR # 379**<br>**HOUSTON TX 77079** |

| State Class Code | Land Use Code | Building Class | Total Units | Land Area | Building Area | Net Rentable Area | Neighborhood | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|---|---|
| B1 -- Real, Residential, Multi-Family | 8000 -- Land Neighborhood General Assignment | E | 379 | 402,668 SF | 617,832 | 0 | 9650 | 4758D | 488B |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| **None** | 019 | KATY ISD | | Name Change: 12/08/2017 | 1.516600 | 1.516600 |
| | 040 | HARRIS COUNTY | | Name Change: 12/08/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | | Name Change: 12/08/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | | Name Change: 12/08/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | | Name Change: 12/08/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | | Name Change: 12/08/2017 | 0.005200 | 0.005195 |
| | 061 | CITY OF HOUSTON | | Name Change: 12/08/2017 | 0.586420 | 0.584210 |
| | 997 | HC ID 4/ENER CORRIDOR | | Name Change: 12/08/2017 | 0.100000 | 0.100000 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway**.

### Valuations

| | Value as of January 1, 2016 | | | Value as of January 1, 2017 | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 8,053,360 | | Land | 8,053,360 | |
| Improvement | 31,953,790 | | Improvement | 34,000,374 | |
| Total | 40,007,150 | 40,007,150 | Total | 42,053,734 | 42,053,734 |

### Land

| Market Value Land | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |

A2141

| 1 | 8000 -- Land Neighborhood General Assignment | 4212 | SF | 402,668 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 20.00 | 20.00 | 8,053,360.00 |

## Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 2014 | Apartment Mid Rise (4 to 12 Stories) | Apartment | Average | 134,918 | Displayed |
| 2 | 2014 | Apartment Mid Rise (4 to 12 Stories) | Clubhouse | Average | 19,230 | View |
| 3 | 2014 | Apartment Mid Rise (4 to 12 Stories) | Apartment | Average | 206,844 | View |
| 4 | 2014 | Parking Garage | Parking Structure | Low | 124,588 | View |
| 5 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 20,053 | View |
| 6 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 7,292 | View |
| 7 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 10,938 | View |
| 8 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 7,292 | View |
| 9 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 9,115 | View |
| 10 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 31,408 | View |
| 11 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 31,408 | View |
| 12 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 3,808 | View |
| 13 | 2014 | Apartment Garden (1 to 3 Stories) | Multiple Res (Low Rise) | Average | 10,938 | View |

Building Details (1)

| Building Data | | | Building Areas | |
|---|---|---|---|---|
| Element | Detail | | Description | Area |
| Exterior Wall | Brick / Stone | | PORCH, ENCL UPR -C | 330 |
| Construction Type | Wood / Steel Joist | | BASE AREA UPR | 26,754 |
| Partition Type | Normal | | PORCH, ENCL UPR -C | 11,559 |
| Heating Type | Hot Air | | PORCH, ENCL UPR -C | 990 |
| Cooling Type | Central / Forced | | PORCH, ENCLOSED -C | 330 |
| Plumbing Type | Adequate | | BASE AREA PRI | 3,692 |
| Sprinkler Type | Wet | | BASE AREA PRI | 3,516 |
| Physical Condition | Avg/Normal | | PORCH, ENCLOSED -C | 3,012 |
| Functional Utility | Avg/Normal | | BASE AREA PRI | 2,890 |
| Economic Obsolescence | Normal | | PORCH, ENCLOSED -C | 2,542 |
| Grade Adjustment | 80% Comm. Grade Adj | | BASE AREA UPR | 21,450 |
| Element | Units | | PORCH, ENCL UPR -C | 7,626 |
| Sprinkler Area | 646652 | | BASE AREA UPR | 14,898 |
| Sprinkler: Wet | 1 | | BASE AREA UPR | 13,524 |
| Elev: Hydro / Pass | 2 | | BASE AREA UPR | 15,957 |
| # Stories | 5 | | PORCH, ENCL UPR -C | 3,156 |
| Parking Spaces | 736 | | BASE AREA UPR | 4,508 |
| Apt: 3-Bedroom Unit | 26 | | BASE AREA UPR | 7,150 |
| Apt: 2-Bedroom Unit | 140 | | PORCH, ENCL UPR -C | 2,542 |

A2142

| Apt: 1-Bedroom Unit | 213 |
|---|---|
| Net Rentable Area | 427362 |
| Interior Finish Percent | 100 |
| Wall Height | 11 |

| | |
|---|---|
| BASE AREA UPR | 5,319 |
| PORCH, OPEN -C | 1,680 |
| BASE AREA UPR | 4,966 |
| BASE AREA PRI | 5,319 |
| BASE AREA PRI | 4,966 |
| BASE AREA PRI | 9 |

**Extra Features**

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 2 | Porch,Open Upper | Average | Average | 4,615.00 | 2014 |
| 3 | Porch, Open | Average | Average | 1,040.00 | 2014 |
| 4 | Porch, Open | Average | Average | 2,080.00 | 2014 |
| 5 | Porch,Open Upper | Average | Average | 9,100.00 | 2014 |
| 6 | Attached Frame Garage | Average | Average | 5,225.00 | 2014 |
| 7 | Porch, Open | Average | Average | 2,387.00 | 2014 |
| 8 | Porch, Enclosed | Average | Average | 2,816.00 | 2014 |
| 9 | Attached Frame Garage | Average | Average | 1,900.00 | 2014 |
| 10 | Porch, Open | Average | Average | 868.00 | 2014 |
| 11 | Porch, Enclosed | Average | Average | 1,024.00 | 2014 |
| 12 | Attached Frame Garage | Average | Average | 2,850.00 | 2014 |
| 13 | Porch, Open | Average | Average | 1,302.00 | 2014 |
| 14 | Porch, Enclosed | Average | Average | 1,536.00 | 2014 |
| 15 | Attached Frame Garage | Average | Average | 1,900.00 | 2014 |
| 16 | Porch, Open | Average | Average | 868.00 | 2014 |
| 17 | Porch, Enclosed | Average | Average | 1,024.00 | 2014 |
| 18 | Attached Frame Garage | Average | Average | 2,375.00 | 2014 |
| 19 | Porch, Open | Average | Average | 1,085.00 | 2014 |
| 20 | Porch, Enclosed | Average | Average | 1,280.00 | 2014 |
| 21 | Attached Frame Garage | Average | Average | 8,000.00 | 2014 |
| 22 | Porch, Open | Average | Average | 5,568.00 | 2014 |
| 23 | Porch, Enclosed | Average | Average | 3,712.00 | 2014 |
| 24 | Porch,Open Upper | Average | Average | 704.00 | 2014 |
| 25 | Attached Frame Garage | Average | Average | 8,000.00 | 2014 |
| 26 | Porch, Open | Average | Average | 5,568.00 | 2014 |
| 27 | Porch, Enclosed | Average | Average | 3,712.00 | 2014 |
| 28 | Porch,Open Upper | Average | Average | 704.00 | 2014 |
| 29 | Attached Frame Garage | Average | Average | 950.00 | 2014 |
| 30 | Porch, Open | Average | Average | 522.00 | 2014 |
| 31 | Porch, Enclosed | Average | Average | 448.00 | 2014 |

A2143

| 32 | Attached Frame Garage | Average | Average | 2,850.00 | 2014 |
| 33 | Porch, Open | Average | Average | 1,302.00 | 2014 |
| 34 | Porch, Enclosed | Average | Average | 1,536.00 | 2014 |
| 35 | Wet Sprinkler | Average | Average | 646,652.00 | 2014 |
| 36 | Paving - Heavy Concrete | Average | Average | 70,000.00 | 2014 |
| 37 | Swimming Pool | Average | Average | 2,250.00 | 2014 |
| 38 | Swimming Pool | Average | Average | 960.00 | 2015 |

A2144

Print

| Ownership History: 1329650010002 | |
|---|---|
| 777 S MAYDE CREEK DR 379<br>HOUSTON TX 77079 | |
| Owner | Effective Date |
| MEMORIAL SMC INVESTMENT 2013 LP | 6/28/2013 |

[end of record]

-close window-

A2145

## SPECIAL WARRANTY DEED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS      §
                        §      KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS        §

That SCD MEMORIAL PLACE II, LLC, a Delaware limited liability company, and SCD MEMORIAL LAKES I, LLC, a Delaware limited liability company ("***SCD I***" and collectively with SCD Memorial Place II, LLC, "***Grantors***" and each individually, a "***Grantor***"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration in hand paid to Grantors by MEMORIAL SMC INVESTMENT 2013 LP, a Texas limited partnership ("***Grantee***"), with an address and place of business at 55 Waugh Drive, Suite 500, Houston, Texas 77007, the receipt and sufficiency of which consideration are hereby acknowledged and confessed, have GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents GRANT, BARGAIN, SELL and CONVEY unto Grantee the real property owned by the respective Grantor situated in Harris County, Texas, and described on Exhibit A attached hereto and incorporated herein by reference for all purposes (the "***Property***"), subject to (a) all matters of record and to all matters that a current survey would reflect, to the extent the same are valid and enforceable against the Property and (b) the restrictions, reservations and covenants contained in Exhibit B attached hereto.

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging, unto Grantee, its successors and assigns, forever; and each Grantor does hereby bind itself and its successors to warrant and forever defend all and singular the portion of the Property conveyed unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under each such Grantor but not otherwise, subject however to the matters set forth above. Each party comprising Grantors is making the warranty made in this Special Warranty Deed only as to the portion of the Property owned by such Grantor.

Ad valorem taxes with respect to the Property for the current year have been prorated as of the date hereof and Grantee assumes the obligation to pay ad valorem taxes after the date hereof.

*[Signatures and acknowledgments appear on the following pages.]*

15730189v.17

1

TA 1520349S·H

A2146

EXECUTED as of the 8th day of July , 2016.

Grantors:

SCD MEMORIAL PLACE II, LLC,
a Delaware limited liability company

By: _____
Name: Shawn Hurley
Title: Manager

By: _____
Name: Christopher T. Cardinale
Title: Manager

STATE OF Washington §
                            §
COUNTY OF King §

This instrument was acknowledged before me on June 21 , 2016, by Shawn Hurley, Chris Cardinale Manager of SCD MEMORIAL PLACE II, LLC, a Delaware limited liability company on behalf of said limited liability company.

Julie A. Baldwin
Printed Name of Notary Public
Notary Public, State of Washington

Julie A. Baldwin

My Commission expires:

10/19/16

JULIE A. BALDWIN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
10-19-16

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

RP-2016-297^^6

A2147

STATE OF Washington §
§
COUNTY OF King §

Christopher This instrument was acknowledged before me on June 21 , 2016, by
9B Chris Cardinale , Manager of SCD MEMORIAL PLACE II, LLC,
a Delaware limited liability company on behalf of said limited liability company.

Printed Name of Notary Public Julie A. Baldwin
Notary Public, State of Washington

My Commission expires:

10/19/16

JULIE A. BALDWIN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
10-19-16

RP-2016-297~~6

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

A2148

SCD MEMORIAL LAKES I, LLC,
a Delaware limited liability company

By: _____
Name: Shawn Hurley
Title: Manager

By: _____
Name: Christopher T. Cardinale
Title: Manager

STATE OF Washington   §
                      §
COUNTY OF King        §

This instrument was acknowledged before me on June 21 , 2016, by
Shawn Hurley , Manager of SCD MEMORIAL LAKES I, LLC,
a Delaware limited liability company on behalf of said limited liability company.

_____
Printed Name of Notary Public Julie A. Baldwin
Notary Public, State of Washington

My Commission expires:

10/19/16

JULIE A. BALDWIN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
10-19-16

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

RP-2016-297??6

A2149

STATE OF _Washington_ §
                      §
COUNTY OF _King_      §

_Christopher_ This instrument was acknowledged before me on _June 21_____, 2016, by
_B_ _Chris Cardinale_____, _Manager_____ of SCD MEMORIAL LAKES I, LLC,
a Delaware limited liability company on behalf of said limited liability company.

_Julie A. Baldwin_
Printed Name of Notary Public _Julie A. Baldwin_
Notary Public, State of _Washington_____

My Commission expires:

_10/19/16_____

JULIE A. BALDWIN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
10-19-16

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

RP-2016-297~36

A2150

Grantee:

MEMORIAL SMC INVESTMENT 2013 LP,
a Texas limited partnership

By:  Grayco Project SMC GP LLC,
     a Texas limited liability company,
     its general partner

By: _____
Name: _____
Title: _____

STATE OF __TEXAS__        §
                          §
COUNTY OF __HARRIS__      §

This instrument was acknowledged before me on __June 24__, 2016, by __JOHN J. GRAY, III__, __PRESIDENT__ of Grayco Project SMC GP LLC, general partner of MEMORIAL SMC INVESTMENT 2013 LP, a Texas limited partnership, on behalf of said limited partnership.

Celeste M. Flores
Notary Public, State of Texas
Commission # 6608423
Expires: 02/21/2018

_____
Printed Name of Notary Public
Notary Public, State of __TEXAS__

My Commission expires:

__02|21|18__

RP-2016-297036

WHEN RECORDED RETURN TO:
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
Attention: Kurt Nondorf

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

A2151

## EXHIBIT A

### PROPERTY DESCRIPTION

All that certain 3,644 square feet out of Unrestricted Reserve "A", Mayde Creek Crossing according to the plat thereof filed at Film Code Number 641191 Harris County Map Records, Joel Wheaton Survey, A-80, and being more particularly described by metes and bounds as follows, all coordinates and bearings being referenced to the Texas Coordinate System of 1983.

BEGINNING at a found 5/8" iron rod in the south right-of-way line of Memorial Drive (100' wide) marking the north end of a cut-back corner for the west right-of-way line of South Mayde Creek Drive (width varies), having coordinates of Y=13,846,511.99, X=3,039,002.76;

THENCE S01°17'21" E – 55.43' to a set 5/8" iron rod with cap for corner;

THENCE N88°42'26" E - 10.00' to a set 5/8" iron rod with cap for corner;

THENCE S01°17'34" E - 15.00', with the aforementioned west right-of-way line of South Mayde Creek Drive to a set 5/8" iron rod with cap for corner;

THENCE S88°42'26" W - 10.00' to a set 5/8" iron rod with cap for corner;

THENCE S01°17'34" E - 155.30' to a set 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 40°53'02", a radius of 278.53', a chord which bears S21°44'03" E - 194.56';

THENCE with said curve for an arc length of 198.75' to a set 5/8" iron rod with cap marking a point on a curve to the right having a central angle of 19°00'56", a radius of 50.00', a chord which bears S32°40'05" E - 16.52';

THENCE with said curve for an arc length of 16.59' to a set 5/8" iron rod with cap for angle point;

THENCE S23°09'37" E - 45.27' to a set 5/8" iron rod with cap marking a point on a curve to the right having a central angle of 21°02'22", a radius of 50.00', a chord which bears S12°38'26" E - 18.26';

THENCE with said curve for an arc length of 18.36' to a set 5/8" iron rod with cap for angle point;

THENCE S02°08'26" E - 123.77' to a set 5/8" iron rod with cap for corner;

THENCE S87°59'23" W - 5.00' to a set 5/8" iron rod with cap for corner;

THENCE N02°08'26" W - 123.76' to a set 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 21°02'22", a radius of 45.00', a chord which bears N12°38'26" W - 16.43';

THENCE with said curve for an arc length of 16.52' to a set 5/8" iron rod with cap for angle point;

THENCE N23°09'37" W - 45.27' to a set 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 19°00'56", a radius of 45.00', a chord which bears N32°40'05" W - 14.87';

THENCE with said curve for an arc length of 14.93' to a set 5/8" iron rod with cap marking a point on a curve to the right having a central angle of 40°52'59", a radius of 283.54', a chord bearing of N21°44'03" W - 198.05';

THENCE with said curve for an arc length of 202.32' to a set 5/8" iron rod with cap for angle point;

THENCE N01°17'34" W – 155.30' to a set 5/8" iron rod with cap for corner;

THENCE S88°42'26" W - 5.00' to a set 5/8" iron rod with cap for corner;

THENCE N01°17'34" W – 70.27' to a set 5/8" iron rod with cap for corner;

THENCE N87°46'28" E - 10.00' to the POINT OF BEGINNING containing 3,644 square feet (0.0837 acres) more or less.

RP-2016-297~~6

15730189v.17

A2152

### EXHIBIT B

#### RESTRICTIONS, RESERVATIONS AND COVENANTS

Grantors reserve for the benefit of Grantors' real property and improvements described on Exhibit C (the "***Grantors' Parcels***"), all rights not inconsistent with "Grantee's Rights," including without limitation in such reserved rights the exclusive right to grant or modify easements and/or create or modify restrictive covenants affecting the Property without the necessity of joinder by Grantee, provided Grantee receives ten (10) days advance notice and such easements or restrictions (or modifications thereof) do not materially and adversely affect Grantee's Rights. "***Grantee's Rights***" shall mean access, signage and underground electrical power, all as approved by Grantors. The diagram attached as Exhibit D is approved by Grantors as to size, design, sign face and location of the sign and as to location of the reflected underground electric utility line. Grantee may only install, maintain, modify and/or replace such sign and utility line at reasonable times coordinated with Grantors after submittal by Grantee and approval of all plans therefor by Grantors (which approval may not be unreasonably withheld, conditioned or delayed, and shall be based upon similar or equivalent size, design and location of signage and power as shown on Exhibit D), and Grantee shall promptly restore the surface of the Property thereafter to its original condition, all in accordance with applicable law and at Grantee's sole risk and expense. Without limitation of the foregoing, it shall be reasonable to require underground boring to avoid disturbance of existing roadways or improvements. Grantors shall respond to a written request from Grantee within fourteen (14) days of receipt, and if a response is not timely given, then Grantee shall deliver a second notice containing the following statement in bold capital letters: "**FAILURE TO RESPOND TO THIS REQUEST SHALL BE DEEMED APPROVAL.**" If Grantors have not responded to this second request within five (5) business days after receipt, the request shall be deemed approved. Grantee agrees that it shall not: alter existing grade, landscape, fence, or obstruct the Property or use the Property in any manner that interferes with operations on the Grantors' Parcels. However, Grantee may landscape the portion of the Property in the area immediately in front of Grantee's sign consistent in style and maintenance with Grantors' Parcels, provided Grantee and Grantors may trim the other party's landscaping as reasonably necessary to insure visibility of their respective signage. Each party shall each carry appropriate liability insurance with respect to their respective use of the Property in commercially reasonable amounts and coverages and naming the other party (or parties) as additional insured(s).

Within ten (10) business days of written request therefor, Grantee shall confirm to any owner of the Grantors' Parcels and to other third parties reasonably requested by such owner, such factual matters with respect to the obligations hereunder as such owner shall reasonably request. In addition to any other remedies and rights, in the event of any violation or attempted or threatened violation of any right or obligation hereunder, either party shall be entitled to injunctive relief mandating compliance and may obtain a decree specifically enforcing the performance of such obligation. The parties acknowledge and stipulate the inadequacy of legal remedies and the irreparable harm which would be caused by any such breach. The prevailing party in any proceeding seeking to enforce compliance shall recover reasonable attorneys' fees and costs. This grant satisfies the option given in Article IV Sec. 4(f) of Declaration of Reciprocal Easements, Covenants, Conditions and Restrictions (Clerk's File No. 20130323532 of Harris County Real Property Records); and the easement granted in Article IV Sec. 4(a)-(e)

RP-2016-297^96

B-I

A2153

thereof is hereby terminated. Grantee agrees that it may not transfer the Grantee's Rights independent of the Grayco Tract (as defined in such Declaration). The provisions of this Deed are binding upon and shall benefit the parties and their successors and assigns.

In addition to the rights granted in this deed, SCD I agrees that it shall promptly after the date of this deed provide electrical service at a junction box on the western boundary of the Property, near the proposed sign, sufficient to light the sign permitted by the terms of this <u>Exhibit</u> <u>B</u>, in accordance with plans reasonably approved by Grantee. The cost of providing the line shall be reimbursed by Grantee to SCD I within 30 days of delivery of invoice, together with reasonable evidence of costs. Grantee shall be responsible for constructing any necessary improvements from the junction box to the sign, in accordance with plans reasonably approved by SCD I. For so long as Grantee maintains an approved sign on the Property and subject to force majeure, SCD I shall furnish electricity to such service line for such sign. Grantee shall pay an annual contribution of $100 in reimbursement of any electricity consumed through such line promptly after invoice. So long as the electricity is provided as set forth in this paragraph, Grantee shall not utilize the rights to electric power which are part of Grantee's Rights. This paragraph, as well as the other provisions of this <u>Exhibit B</u>, shall be binding upon and inure to the benefit of the parties' successors and permitted assigns.

RP-2016-297036

B-2

15730189v.17

**EXHIBIT C**

GRANTORS' PARCELS

TRACT 1
METES AND BOUNDS DESCRIPTION
6.2580 ACRES OUT OF THE
JOEL WHEATON SURVEY, A-80
HOUSTON, HARRIS COUNTY, TEXAS

All that certain 6.2580 acre tract of land located in the Joel Wheaton Survey, A-80, being out of that certain 21.4048 acre tract of land described in a deed dated 02-27-2012, from Road Bay Investments, LLC to SCD Memorial Lakes I, LLC, filed in the Official Public Records of Real Property of Harris County Texas at Clerk File Number 20120080515 and being more particularly described by metes and bounds as follows, all bearings being referenced to the Texas Coordinate System of 1983.

BEGINNING at a found 5/8" iron rod in the south right-of-way line of Memorial Drive (100' wide) marking the north end of a cut-back corner for the west right-of-way line of South Mayde Creek Drive (width varies) having coordinates of Y=13846511.99 X= 3039002.76;

THENCE S 47° 13' 46" E - 13.91', with said cut-back corner to a found PK nail for angle point;

THENCE S 1° 17' 34" E - 216.06', with the aforementioned west right-of-way line to a found 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 01°18'47", a radius of 268.47', a chord which bears S01°57'58" E - 6.15';

THENCE with said curve, continuing with said west right-of-way line for an arc length of 6.15' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 339.67' to a set 5/8" iron rod with cap for corner;

THENCE S00°01'20" W - 98.50' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 92.84' to a set 5/8" iron rod with cap for corner;

THENCE S00°01'20" W - 65.67' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 99.00' to a set 5/8" iron rod with cap for corner;

THENCE S00°00'00" E - 7.13' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 174.77' to a set 5/8" iron rod with cap for corner;

THENCE N00°49'48" W - 1.82', with the north line of Block 2, Memorial Thicket, Section One according to the plat thereof filed at Volume 285, Page 107 Harris County Map Records to a found 5/8" iron rod marking a point on a curve to the left having a central angle of 22°22'24", a radius of 156.00', a chord which bears N24°24'56" W - 60.53';

THENCE with said curve, continuing with said north line for an arc distance of 60.92' to a found 5/8" iron rod for corner;

THENCE N49°49'24" E - 31.32', continuing with said north line to a found 5/8" iron rod for corner;

THENCE N72°26'19" W - 230.58', continuing with said north line to a found 1/2" iron rod for angle point;

THENCE N79°14'24" W - 100.83', continuing with said north line to a found 5/8" iron rod for angle point;

THENCE S67°46'16" W - 131.28' to a found 5/8" iron rod marking the Point of Curvature of a curve to the right having a central angle of 83°01'02", a radius of 75.00', a chord which bears N70°43'14" W - 99.41',

RP-2016-297^^6

C-1

A2155

THENCE with said curve for an arc distance of 108.67' to a found 5/8" iron rod marking the Point of Tangency;

THENCE N29°12'34" W - 74.39' to a found 3/4" iron rod for angle point;

THENCE N74°59'38" W - 13.95' to a found 5/8" iron rod with cap marking a point on a curve to the right having a central angle of 03°39'41", a radius of 1,095.47', a chord which bears N60°47'26" E - 69.99';

THENCE with said curve and with the aforementioned south right-of-way line of Memorial Drive for an arc length of 70.00' to a found 3/4" iron rod for corner;

THENCE S16°34'30" W - 13.95', with the west line of Unrestricted Reserve "B", Memorial Thicket, Section Two according to the plat thereof filed at Volume 293, Page 147, Harris County Map Records,  to a found 5/8" iron rod for angle point;

THENCE S29°12'34" E - 74.38', continuing with said west line to a found 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 83°01'39", a radius of 25.00', a chord which bears S70°47'38" E - 33.14';

THENCE with said curve, continuing with said west line for an arc length of 36.23' to a found 5/8" iron rod with cap for angle point;

THENCE N67°46'25" E - 146.09' to a found 5/8" iron rod for angle point;

THENCE S79°14'24" E - 118.61' to a found 5/8" iron rod with cap for angle point;

THENCE S72°26'19" E - 70.49' to a found 5/8" iron rod with cap for corner;

THENCE N00°02'36" E - 193.39' to a found 1/2" iron rod marking a point on a curve to the right having a central angle of 04°06'56", a radius of 1,095.47', a chord which bears N85°42'47" E - 78.67';

THENCE with said curve and with the aforementioned south right-of-way line of Memorial Drive for an arc length of 78.69' to a found 3/4" iron rod for angle point;

THENCE N87°46'28" E - 754.49', continuing with said south right-of-way line to THE POINT OF BEGINNING containing 6.2580 acres, (272,600 square feet) of land more or less.
Compiled from survey by:

**PREJEAN & COMPANY, INC.**
Surveying / Mapping
6/10/2016

RP-2016-297?6

C-2

15730189v.17

A2156

TRACT 2
METES AND BOUNDS DESCRIPTION
5.9459 ACRES OUT OF THE
JOEL WHEATON SURVEY, A-80
HOUSTON, HARRIS COUNTY, TEXAS

All that certain 5.9459 acre tract of land located in the Joel Wheaton Survey, A-80, being out of that certain 21.4048 acre tract of land described in a deed dated 02-27-2012, from Road Bay Investments, LLC to SCD Memorial Lakes I, LLC, filed in the Official Public Records of Real Property of Harris County Texas at Clerk File Number 20120080515 and being more particularly described by metes and bounds as follows, all bearings being referenced to the Texas Coordinate System of 1983.

COMMENCING at a found 5/8" iron rod in the south right-of-way line of Memorial Drive (100' wide) marking the north end of a cut-back corner for the west right-of-way line of South Mayde Creek Drive (width varies) having coordinates of Y=13846511.99 X= 3039002.76;

THENCE S 47° 13' 46" E - 13.91', with said cut-back corner to a found PK nail for angle point;

THENCE S 1° 17' 34" E - 216.06', with the aforementioned west right-of-way line to a found 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 01°18'47", a radius of 268.47', a chord which bears S01°57'58" E - 6.15';

THENCE with said curve, continuing with said west right-of-way line for an arc length of 6.15' to a set 5/8" iron rod with cap marking the POINT OF BEGINNING of the herein described tract;

THENCE N89°58'40" W - 339.67' to a set 5/8" iron rod with cap for corner;

THENCE S00°01'20" W - 98.50' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 92.84' to a set 5/8" iron rod with cap for corner;

THENCE S00°01'20" W - 65.67' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 99.00' to a set 5/8" iron rod with cap for corner;

THENCE S00°00'00" E - 7.13' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 174.77' to a set 5/8" iron rod with cap for corner;

THENCE with the north line of Block 2, Memorial Thicket, Section One according to the plat thereof filed at Volume 285, Page 107 Harris County Map Records for the following 6 (six) courses and distances:

    THENCE S00°49'48" E - 68.13' to a found 5/8" iron rod for angle point;
    THENCE S24°02'46" E - 58.40' to a found 5/8" iron rod for angle point;
    THENCE S38°54'24" E - 66.85' to a found 5/8" iron rod for angle point;
    THENCE S54°18'44" E - 72.07' to a found 5/8" iron rod for angle point;
    THENCE S62°36'21" E - 114.94' to a found 5/8" iron rod for angle point;
    THENCE S79°26'58" E - 181.28' to a found 5/8" iron rod for angle point;

THENCE N02°00'37" W - 61.76', with the west line of a 9.2440 acre tract of land described in a deed dated 07-01-2013 from SCD Memorial Lakes I, LLC to Memorial SMC Investment 2013 LP filed in the Official Public Records of Real Property of Harris County, Texas at Clerk File Number 20130323531 to a found 5/8" iron rod with cap for corner

THENCE with the north line of said 9.2440 acre tract for the following 3 (three) courses and distances:

15730189v.17

RP-2016-297°°6

THENCE N87°59'23" E - 396.23' to a found 5/8" iron rod with cap for corner;
THENCE N02°00'37" W - 25.00' to a found 5/8" iron rod with cap for corner;
THENCE N87°59'23" E - 25.00' to a found 5/8" iron rod with cap for corner;

THENCE N02°00'37" W - 59.57' with the aforementioned west right-of-way line of South Mayde Creek Drive to a found 5/8" iron rod marking a point on a curve to the left having a central angle of 21°59'00", a radius of 270.00', a chord which bears N12°59'59" W - 102.96';

THENCE with said curve continuing with said west right-of-way line for an arc distance of 103.59' to a found 5/8" iron rod for angle point;

THENCE N23°59'34" W - 39.87', continuing with said west right-of-way line to a found "X" in concrete marking a point on a curve to the right having a central angle of 41°34'13", a radius of 268.47', a chord which bears N23°24'28" W - 190.54';

THENCE with said curve, continuing with said west right-of-way line for an arc distance of 194.78' to the POINT OF BEGINNING containing 5.9459 acres (259,005 square feet) of land more or less.
Compiled from survey by:

**PREJEAN & COMPANY, INC.**
Surveying / Mapping
6/10/2016

RP-2016-297°°6

C-4

15730189v.17

**EXHIBIT D**

**APPROVED SIGN/ELECTRIC LINE**



D-2

A2159

RP-2016-297836

15730189v.17

Case 1:17-cv-09002-SGB    Document 23-8    Filed 01/16/18    Page 34 of 107

D-3



A2160



D-4

A2161

RP-2016-297836

# Pages 17

07/08/2016 03:02 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

STAN STANART

COUNTY CLERK

Fees  $76.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

A2162

This instrument electronically filed by:
Title Houston Holdings
7600 San Felipe, Suite 1020
Houston, Texas 77063
Tele: 713-589-9000

## SPECIAL WARRANTY DEED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |

That SCD MEMORIAL PLACE II, LLC, a Delaware limited liability company, and SCD MEMORIAL LAKES I, LLC, a Delaware limited liability company ("***SCD I***" and collectively with SCD Memorial Place II, LLC, "***Grantors***" and each individually, a "***Grantor***"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration in hand paid to Grantors by MEMORIAL SMC INVESTMENT 2013 LP, a Texas limited partnership ("***Grantee***"), with an address and place of business at 55 Waugh Drive, Suite 500, Houston, Texas 77007, the receipt and sufficiency of which consideration are hereby acknowledged and confessed, have GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents GRANT, BARGAIN, SELL and CONVEY unto Grantee the real property owned by the respective Grantor situated in Harris County, Texas, and described on Exhibit A attached hereto and incorporated herein by reference for all purposes (the "***Property***"), subject to (a) all matters of record and to all matters that a current survey would reflect, to the extent the same are valid and enforceable against the Property and (b) the restrictions, reservations and covenants contained in Exhibit B attached hereto.

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging, unto Grantee, its successors and assigns, forever; and each Grantor does hereby bind itself and its successors to warrant and forever defend all and singular the portion of the Property conveyed unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under each such Grantor but not otherwise, subject however to the matters set forth above. Each party comprising Grantors is making the warranty made in this Special Warranty Deed only as to the portion of the Property owned by such Grantor.

Ad valorem taxes with respect to the Property for the current year have been prorated as of the date hereof and Grantee assumes the obligation to pay ad valorem taxes after the date hereof.

*[Signatures and acknowledgments appear on the following pages.]*

15730189v.17

1

*TA1520349S.H*

EXECUTED as of the _8th_ day of _July_, 2016.

Grantors:

SCD MEMORIAL PLACE II, LLC,
a Delaware limited liability company

By: _____
Name: _Shawn Hurley_
Title: _Manager_

By: _____
Name: _Christopher T. Cardinale_
Title: _Manager_

STATE OF _Washington_ §
                       §
COUNTY OF _King_       §

    This instrument was acknowledged before me on _June 21_, 2016, by
_Shawn Hurley_, ~~the Corporate Manager~~ of SCD MEMORIAL PLACE II, LLC,
a Delaware limited liability company on behalf of said limited liability company.

_Julie A. Baldwin_
Printed Name of Notary Public
Notary Public, State of _Washington_

_Julie A. Baldwin_

My Commission expires:

_10/19/16_

JULIE A. BALDWIN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
10-19-16

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

A2164

STATE OF _Washington_  §
                       §
COUNTY OF _King_       §

_Christopher T._
_PB_   _Chris Cardinale_ This instrument was acknowledged before me on _June 21_____, 2016, by
_Chris Cardinale_____, _Manager_____ of SCD MEMORIAL PLACE II, LLC,
a Delaware limited liability company on behalf of said limited liability company.

_Julie A. Baldwin_
Printed Name of Notary Public _Julie A. Baldwin_
Notary Public, State of _Washington_____

My Commission expires:

_10/19/16_____

> JULIE A. BALDWIN
> **STATE** OF WASHINGTON
> **NOTARY PUBLIC**
> **MY COMMISSION EXPIRES**
> **10-19-16**

SCD MEMORIAL LAKES I, LLC,
a Delaware limited liability company

By: _____
Name: Shawn Hurley
Title: Manager

By: _____
Name: Christopher T. Cardinale
Title: Manager


STATE OF Washington    §
                       §
COUNTY OF King         §

This instrument was acknowledged before me on ___June 21___, 2016, by ___Shawn Hurley___, ___Manager___ of SCD MEMORIAL LAKES I, LLC, a Delaware limited liability company on behalf of said limited liability company.

_____
Printed Name of Notary Public Julie A. Baldwin
Notary Public, State of Washington

My Commission expires:

___10/19/16___

JULIE A. BALDWIN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
10-19-16

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

A2166

STATE OF Washington    §
                       §
COUNTY OF King         §

Christopher This instrument was acknowledged before me on June 21 _____, 2016, by
     as Chris Cardinale _____, Manager _____ of SCD MEMORIAL LAKES I, LLC,
     a Delaware limited liability company on behalf of said limited liability company.

Printed Name of Notary Public Julie A. Baldwin
Notary Public, State of Washington

My Commission expires:

_____ 10/19/16 _____

> JULIE A. BALDWIN
> STATE OF WASHINGTON
> NOTARY PUBLIC
> MY COMMISSION EXPIRES
> 10-19-16

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

A2167

Grantee:

MEMORIAL SMC INVESTMENT 2013 LP,
a Texas limited partnership

By: Grayco Project SMC GP LLC,
    a Texas limited liability company,
    its general partner

By:_____
Name:_____
Title:_____

STATE OF _TEXAS_    §
                 §
COUNTY OF _HARRIS_   §

    This instrument was acknowledged before me on _June 24_, 2016, by
_JOHN J. GRAY, III_, _PRESIDENT_ of Grayco Project SMC GP
LLC, general partner of MEMORIAL SMC INVESTMENT 2013 LP, a Texas limited
partnership, on behalf of said limited partnership.



_____
Printed Name of Notary Public
Notary Public, State of _TEXAS_

My Commission expires:

_02|21|18_

WHEN RECORDED RETURN TO:
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
Attention: Kurt Nondorf

SIGNATURE PAGE TO SPECIAL WARRANTY DEED

15730189v.17

A2168

## EXHIBIT A

## PROPERTY DESCRIPTION

All that certain 3,644 square feet out of Unrestricted Reserve "A", Mayde Creek Crossing according to the plat thereof filed at Film Code Number 641191 Harris County Map Records, Joel Wheaton Survey, A-80, and being more particularly described by metes and bounds as follows, all coordinates and bearings being referenced to the Texas Coordinate System of 1983.

BEGINNING at a found 5/8" iron rod in the south right-of-way line of Memorial Drive (100' wide) marking the north end of a cut-back corner for the west right-of-way line of South Mayde Creek Drive (width varies), having coordinates of Y=13,846,511.99, X=3,039,002.76;

THENCE S01°17'21" E - 55.43' to a set 5/8" iron rod with cap for corner;

THENCE N88°42'26" E - 10.00' to a set 5/8" iron rod with cap for corner;

THENCE S01°17'34" E - 15.00', with the aforementioned west right-of-way line of South Mayde Creek Drive to a set 5/8" iron rod with cap for corner;

THENCE S88°42'26" W - 10.00' to a set 5/8" iron rod with cap for corner;

THENCE S01°17'34" E ~ 155.30' to a set 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 40°53'02", a radius of 278.53', a chord which bears S21°44'03" E - 194.56';

THENCE with said curve for an arc length of 198.75' to a set 5/8" iron rod with cap marking a point on a curve to the right having a central angle of 19°00'56", a radius of 50.00', a chord which bears S32°40'05" E - 16.52';

THENCE with said curve for an arc length of 16.59' to a set 5/8" iron rod with cap for angle point;

THENCE S23°09'37" E - 45.27' to a set 5/8" iron rod with cap marking a point on a curve to the right having a central angle of 21°02'22", a radius of 50.00', a chord which bears S12°38'26" E - 18.26';

THENCE with said curve for an arc length of 18.36 to a set 5/8" iron rod with cap for angle point;

THENCE S02°08'26" E - 123.77' to a set 5/8" iron rod with cap for corner;

THENCE S87°59'23" W - 5.00' to a set 5/8" iron rod with cap for corner;

THENCE N02°08'26" W - 123.76' to a set 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 21°02'22", a radius of 45.00', a chord which bears N12°38'26" W - 16.43';

THENCE with said curve for an arc length of 16.52' to a set 5/8" iron rod with cap for angle point;

THENCE N23°09'37" W - 45.27' to a set 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 19°00'56", a radius of 45.00', a chord which bears N32°40'05" W - 14.87';

THENCE with said curve for an arc length of 14.93' to a set 5/8" iron rod with cap marking a point on a curve to the right having a central angle of 40°52'59", a radius of 283.54', a chord bearing of N21°44'03" W - 198.05';

THENCE with said curve for an arc length of 202.32' to a set 5/8" iron rod with cap for angle point;

THENCE N01°17'34" W ~ 155.30' to a set 5/8" iron rod with cap for corner;

THENCE S88°42'26" W - 5.00' to a set 5/8" iron rod with cap for corner;

THENCE N01°17'34" W - 70.27' to a set 5/8" iron rod with cap for corner;

THENCE N87°46'28" E - 10.00' to the POINT OF BEGINNING containing 3,644 square feet (0.0837 acres) more or less.

A-1

A2169

**EXHIBIT B**

RESTRICTIONS, RESERVATIONS AND COVENANTS

      Grantors reserve for the benefit of Grantors' real property and improvements described on Exhibit C (the "*Grantors' Parcels*"), all rights not inconsistent with "Grantee's Rights," including without limitation in such reserved rights the exclusive right to grant or modify easements and/or create or modify restrictive covenants affecting the Property without the necessity of joinder by Grantee, provided Grantee receives ten (10) days advance notice and such easements or restrictions (or modifications thereof) do not materially and adversely affect Grantee's Rights. "*Grantee's Rights*" shall mean access, signage and underground electrical power, all as approved by Grantors. The diagram attached as Exhibit D is approved by Grantors as to size, design, sign face and location of the sign and as to location of the reflected underground electric utility line. Grantee may only install, maintain, modify and/or replace such sign and utility line at reasonable times coordinated with Grantors after submittal by Grantee and approval of all plans therefor by Grantors (which approval may not be unreasonably withheld, conditioned or delayed, and shall be based upon similar or equivalent size, design and location of signage and power as shown on Exhibit D), and Grantee shall promptly restore the surface of the Property thereafter to its original condition, all in accordance with applicable law and at Grantee's sole risk and expense. Without limitation of the foregoing, it shall be reasonable to require underground boring to avoid disturbance of existing roadways or improvements. Grantors shall respond to a written request from Grantee within fourteen (14) days of receipt, and if a response is not timely given, then Grantee shall deliver a second notice containing the following statement in bold capital letters: "**FAILURE TO RESPOND TO THIS REQUEST SHALL BE DEEMED APPROVAL.**" If Grantors have not responded to this second request within five (5) business days after receipt, the request shall be deemed approved. Grantee agrees that it shall not: alter existing grade, landscape, fence, or obstruct the Property or use the Property in any manner that interferes with operations on the Grantors' Parcels. However, Grantee may landscape the portion of the Property in the area immediately in front of Grantee's sign consistent in style and maintenance with Grantors' Parcels, provided Grantee and Grantors may trim the other party's landscaping as reasonably necessary to insure visibility of their respective signage. Each party shall each carry appropriate liability insurance with respect to their respective use of the Property in commercially reasonable amounts and coverages and naming the other party (or parties) as additional insured(s).

      Within ten (10) business days of written request therefor, Grantee shall confirm to any owner of the Grantors' Parcels and to other third parties reasonably requested by such owner, such factual matters with respect to the obligations hereunder as such owner shall reasonably request. In addition to any other remedies and rights, in the event of any violation or attempted or threatened violation of any right or obligation hereunder, either party shall be entitled to injunctive relief mandating compliance and may obtain a decree specifically enforcing the performance of such obligation. The parties acknowledge and stipulate the inadequacy of legal remedies and the irreparable harm which would be caused by any such breach. The prevailing party in any proceeding seeking to enforce compliance shall recover reasonable attorneys' fees and costs. This grant satisfies the option given in Article IV Sec. 4(f) of Declaration of Reciprocal Easements, Covenants, Conditions and Restrictions (Clerk's File No. 20130323532 of Harris County Real Property Records); and the easement granted in Article IV Sec. 4(a)-(e)

B-1

A2170

thereof is hereby terminated. Grantee agrees that it may not transfer the Grantee's Rights independent of the Grayco Tract (as defined in such Declaration). The provisions of this Deed are binding upon and shall benefit the parties and their successors and assigns.

In addition to the rights granted in this deed, SCD I agrees that it shall promptly after the date of this deed provide electrical service at a junction box on the western boundary of the Property, near the proposed sign, sufficient to light the sign permitted by the terms of this Exhibit B, in accordance with plans reasonably approved by Grantee. The cost of providing the line shall be reimbursed by Grantee to SCD I within 30 days of delivery of invoice, together with reasonable evidence of costs. Grantee shall be responsible for constructing any necessary improvements from the junction box to the sign, in accordance with plans reasonably approved by SCD I. For so long as Grantee maintains an approved sign on the Property and subject to force majeure, SCD I shall furnish electricity to such service line for such sign. Grantee shall pay an annual contribution of $100 in reimbursement of any electricity consumed through such line promptly after invoice. So long as the electricity is provided as set forth in this paragraph, Grantee shall not utilize the rights to electric power which are part of Grantee's Rights. This paragraph, as well as the other provisions of this Exhibit B, shall be binding upon and inure to the benefit of the parties' successors and permitted assigns.

B-2

A2171

## EXHIBIT C

### GRANTORS' PARCELS

TRACT 1
METES AND BOUNDS DESCRIPTION
6.2580 ACRES OUT OF THE
JOEL WHEATON SURVEY, A-80
HOUSTON, HARRIS COUNTY, TEXAS

All that certain 6.2580 acre tract of land located in the Joel Wheaton Survey, A-80, being out of that certain 21.4048 acre tract of land described in a deed dated 02-27-2012, from Road Bay Investments, LLC to SCD Memorial Lakes I, LLC, filed in the Official Public Records of Real Property of Harris County Texas at Clerk File Number 20120080515 and being more particularly described by metes and bounds as follows, all bearings being referenced to the Texas Coordinate System of 1983.

BEGINNING at a found 5/8" iron rod in the south right-of-way line of Memorial Drive (100' wide) marking the north end of a cut-back corner for the west right-of-way line of South Mayde Creek Drive (width varies) having coordinates of Y=13846511.99 X= 3039002.76;

THENCE S 47° 13' 46" E - 13.91', with said cut-back corner to a found PK nail for angle point;

THENCE S 1° 17' 34" E - 216.06', with the aforementioned west right-of-way line to a found 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 01°18'47", a radius of 268.47', a chord which bears S01°57'58" E - 6.15';

THENCE with said curve, continuing with said west right-of-way line for an arc length of 6.15' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 339.67' to a set 5/8" iron rod with cap for corner;

THENCE S00°01'20" W - 98.50' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 92.84' to a set 5/8" iron rod with cap for corner;

THENCE S00°01'20" W - 65.67' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 99.00' to a set 5/8" iron rod with cap for corner;

THENCE S00°00'00" E - 7.13' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 174.77' to a set 5/8" iron rod with cap for corner;

THENCE N00°49'48" W - 1.82', with the north line of Block 2, Memorial Thicket, Section One according to the plat thereof filed at Volume 285, Page 107 Harris County Map Records to a found 5/8" iron rod marking a point on a curve to the left having a central angle of 22°22'24", a radius of 156.00, a chord which bears N24°24'56" W - 60.53';

THENCE with said curve, continuing with said north line for an arc distance of 60.92' to a found 5/8" iron rod for corner;

THENCE N49°49'24" E - 31.32', continuing with said north line to a found 5/8" iron rod for corner;

THENCE N72°26'19" W - 230.58', continuing with said north line to a found 1/2" iron rod for angle point;

THENCE N79°14'24" W - 100.83', continuing with said north line to a found 5/8" iron rod for angle point;

THENCE S67°46'16" W - 131.28' to a found 5/8" iron rod marking the Point of Curvature of a curve to the right having a central angle of 83°01'02", a radius of 75.00', a chord which bears N70°43'14" W - 99.41',

C-1

THENCE with said curve for an arc distance of 108.67' to a found 5/8" iron rod marking the Point of Tangency;

THENCE N29°12'34" W - 74.39' to a found 3/4" iron rod for angle point;

THENCE N74°59'38" W - 13.95' to a found 5/8" iron rod with cap marking a point on a curve to the right having a central angle of 03°39'41", a radius of 1,095.47', a chord which bears N60°47'26" E - 69.99';

THENCE with said curve and with the aforementioned south right-of-way line of Memorial Drive for an arc length of 70.00' to a found 3/4" iron rod for corner;

THENCE S16°34'30" W - 13.95', with the west line of Unrestricted Reserve "B", Memorial Thicket, Section Two according to the plat thereof filed at Volume 293, Page 147, Harris County Map Records,  to a found 5/8" iron rod for angle point;

THENCE S29°12'34" E - 74.38', continuing with said west line to a found 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 83°01'39", a radius of 25.00', a chord which bears S70°47'38" E - 33.14';

THENCE with said curve, continuing with said west line for an arc length of 36.23' to a found 5/8" iron rod with cap for angle point;

THENCE N67°46'25" E - 146.09' to a found 5/8" iron rod for angle point;

THENCE S79°14'24" E - 118.61' to a found 5/8" iron rod with cap for angle point;

THENCE S72°26'19" E - 70.49' to a found 5/8" iron rod with cap for corner;

THENCE N00°02'36" E - 193.39' to a found 1/2" iron rod marking a point on a curve to the right having a central angle of 04°06'56", a radius of 1,095.47', a chord which bears N85°42'47" E - 78.67';

THENCE with said curve and with the aforementioned south right-of-way line of Memorial Drive for an arc length of 78.69' to a found 3/4" iron rod for angle point;

THENCE N87°46'28" E - 754.49', continuing with said south right-of-way line to THE POINT OF BEGINNING containing 6.2580 acres, (272,600 square feet) of land more or less.
Compiled from survey by:

**PREJEAN & COMPANY, INC.**
Surveying / Mapping
6/10/2016

TRACT 2
METES AND BOUNDS DESCRIPTION
5.9459 ACRES OUT OF THE
JOEL WHEATON SURVEY, A-80
HOUSTON, HARRIS COUNTY, TEXAS

All that certain 5.9459 acre tract of land located in the Joel Wheaton Survey, A-80, being out of that certain 21.4048 acre tract of land described in a deed dated 02-27-2012, from Road Bay Investments, LLC to SCD Memorial Lakes I, LLC, filed in the Official Public Records of Real Property of Harris County Texas at Clerk File Number 20120080515 and being more particularly described by metes and bounds as follows, all bearings being referenced to the Texas Coordinate System of 1983.

COMMENCING at a found 5/8" iron rod in the south right-of-way line of Memorial Drive (100' wide) marking the north end of a cut-back corner for the west right-of-way line of South Mayde Creek Drive (width varies) having coordinates of Y=13846511.99 X= 3039002.76;

THENCE S 47° 13' 46" E - 13.91', with said cut-back corner to a found PK nail for angle point;

THENCE S  1° 17' 34" E - 216.06', with the aforementioned west right-of-way line to a found 5/8" iron rod with cap marking a point on a curve to the left having a central angle of 01°18'47", a radius of 268.47', a chord which bears S01°57'58" E - 6.15';

THENCE with said curve, continuing with said west right-of-way line for an arc length of 6.15' to a set 5/8" iron rod with cap marking the POINT OF BEGINNING of the herein described tract;

THENCE N89°58'40" W - 339.67' to a set 5/8" iron rod with cap for corner;

THENCE S00°01'20" W - 98.50' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 92.84' to a set 5/8" iron rod with cap for corner;

THENCE S00°01'20" W - 65.67' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 99.00' to a set 5/8" iron rod with cap for corner;

THENCE S00°00'00" E - 7.13' to a set 5/8" iron rod with cap for corner;

THENCE N89°58'40" W - 174.77' to a set 5/8" iron rod with cap for corner;

THENCE with the north line of Block 2, Memorial Thicket, Section One according to the plat thereof filed at Volume 285, Page 107 Harris County Map Records for the following 6 (six) courses and distances:

    THENCE S00°49'48" E - 68.13' to a found 5/8" iron rod for angle point;
    THENCE S24°02'46" E - 58.40' to a found 5/8" iron rod for angle point;
    THENCE S38°54'24" E - 66.85' to a found 5/8" iron rod for angle point;
    THENCE S54°18'44" E - 72.07' to a found 5/8" iron rod for angle point;
    THENCE S62°36'21" E - 114.94' to a found 5/8" iron rod for angle point;
    THENCE S79°26'58" E - 181.28' to a found 5/8" iron rod for angle point;

THENCE N02°00'37" W - 61.76', with the west line of a 9.2440 acre tract of land described in a deed dated 07-01-2013 from SCD Memorial Lakes I, LLC to Memorial SMC Investment 2013 LP filed in the Official Public Records of Real Property of Harris County, Texas at Clerk File Number 20130323531 to a found 5/8" iron rod with cap for corner

THENCE with the north line of said 9.2440 acre tract for the following 3 (three) courses and distances:

C-3

A2174

THENCE N87°59'23" E - 396.23' to a found 5/8" iron rod with cap for corner;
THENCE N02°00'37" W - 25.00' to a found 5/8" iron rod with cap for corner;
THENCE N87°59'23" E - 25.00' to a found 5/8" iron rod with cap for corner;

THENCE N02°00'37" W - 59.57' with the aforementioned west right-of-way line of South Mayde Creek Drive to a found 5/8" iron rod marking a point on a curve to the left having a central angle of 21°59'00", a radius of 270.00', a chord which bears N12°59'59" W - 102.96',

THENCE with said curve continuing with said west right-of-way line for an arc distance of 103.59' to a found 5/8" iron rod for angle point;

THENCE N23°59'34" W - 39.87', continuing with said west right-of-way line to a found "X" in concrete marking a point on a curve to the right having a central angle of 41°34'13", a radius of 268.47', a chord which bears N23°24'28" W - 190.54';

THENCE with said curve, continuing with said west right-of-way line for an arc distance of 194.78' to the POINT OF BEGINNING containing 5.9459 acres (259,005 square feet) of land more or less.
Compiled from survey by:

**PREJEAN & COMPANY, INC.**
Surveying / Mapping
6/10/2016

C-4

A2175

15730189v.17

**EXHIBIT D**

APPROVED SIGN/ELECTRIC LINE

D-2



Elevation View - Single Sided
(Straight Sign)

End View
(Straight Sign)

3'-0"    12'-2"    9'-0"    2'-0" Base    1'-10"

1" Push-thru acrylic
[Letters are side¾
w/ 1st surface vinyl]

Alum. Channel logo
on 1" Alum. stand-offs
mounted on ½" cast
stone [Logo is reverse
lit for halo lighting]

.125" Alum. Cabinet
[Brushed Alum. face]

1/8" Alum. base cladding
on internal Alum. frame.
Sign base to match
commercial property signage.
[Powder coating Black powdercoat]

¾" Acrylic FCO Address
[Stud mounted to sign base]

parkside
AT MEMORIAL

777 S. Mayde Creek Dr.

**JDM Designs**

(281) 356-6131 Fax (281) 356-6227
14135 STAGECOACH RD, STAGECOACH, TX. 77355

| Project: Parkside at Memorial - Main ID Ground Sign | | | CUSTOMER APPROVAL |
| SCALE: ¾" = 1'-0" | DRAWING BY: DV #9455 A-5 | DATE: 05-17-16 | DATE: |

THIS IS AN ORIGINAL UNPUBLISHED DRAWING CREATED BY JDM DESIGNS, INC. IT IS SUBMITTED FOR YOUR PERSONAL USE IN CONNECTION WITH A PROJECT BEING PLANNED FOR YOU BY JDM DESIGNS, INC. IT IS NOT TO BE SHOWN TO ANYONE OUTSIDE YOUR ORGANIZATION, NOR IS IT TO BE USED, REPRODUCED, COPIED, OR EXHIBITED IN ANY FASHION.
**ALL RIGHTS RESERVED!**

A2176

15730189v.17

D-3



JDM Designs
Michael Minchew JDM, Inc.
(281) 356-6131 Fax (281) 356-6227
14135 STAGECOACH RD STAGECOACH, TX. 77355

| Project: Parkside at Memorial - Main ID Ground Sign | | | CUSTOMER APPROVAL | |
|---|---|---|---|---|
| SCALE: ¾" = 1'-0" | DRAWING BY: DV #9455 A-5 | DATE: 05-17-16 | DATE: | |

THIS IS AN ORIGINAL UNPUBLISHED DRAWING CREATED BY JDM DESIGNS, INC. IT IS SUBMITTED FOR YOUR PERSONAL USE, IN CONNECTION WITH A PROJECT BEING PLANNED FOR YOU BY JDM DESIGNS, INC. IT IS NOT TO BE SHOWN TO ANYONE OUTSIDE YOUR ORGANIZATION, NOR IS IT TO BE USED, REPRODUCED, COPIED, OR EXHIBITED IN ANY FASHION. ALL RIGHTS RESERVED!

A2177



D-4

15730189v.17

1/15/2018                                      HCAD Real Property Account Information

HARRIS COUNTY APPRAISAL DISTRICT                                              Tax Year: 2017
REAL PROPERTY ACCOUNT INFORMATION
**1075160000010**

🖶 Print

| Owner and Property Information | | |
|---|---|---|
| Owner Name & Mailing Address: | **MILTON ARNOLD P**<br>**850 SILVERGATE DR**<br>**HOUSTON TX 77079-5068** | Legal Description:     **LT 10 BLK 4**<br>**FLEETWOOD SEC 3 R/P**<br><br>Property Address:    **850 SILVERGATE DR**<br>**HOUSTON TX 77079** |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 8,000 SF | 2,835 SF | 2836 | 19004 | 4757B | 488F |

**Value Status Information**

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2017 | Yes |

**Exemptions and Jurisdictions**

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| **Residential Homestead (Multiple)** | 019 | KATY ISD | 45,000 | Certified: 08/11/2017 | 1.516600 | 1.516600 |
| | 040 | HARRIS COUNTY | 244,974 | Certified: 08/11/2017 | 0.416560 | 0.418010 |
| | 041 | HARRIS CO FLOOD CNTRL | 244,974 | Certified: 08/11/2017 | 0.028290 | 0.028310 |
| | 042 | PORT OF HOUSTON AUTHY | 244,974 | Certified: 08/11/2017 | 0.013340 | 0.012560 |
| | 043 | HARRIS CO HOSP DIST | 244,974 | Certified: 08/11/2017 | 0.171790 | 0.171100 |
| | 044 | HARRIS CO EDUC DEPT | 244,974 | Certified: 08/11/2017 | 0.005200 | 0.005195 |
| | 061 | CITY OF HOUSTON | 244,974 | Certified: 08/11/2017 | 0.586420 | 0.584210 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway**.

**Valuations**

| Value as of January 1, 2016 | | | Value as of January 1, 2017 | | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 84,925 | | Land | 84,925 | |
| Improvement | 339,947 | | Improvement | 339,947 | |
| Total | 424,872 | 418,378 | Total | 424,872 | 424,872 |

**Land**

| | Market Value Land | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 7,800 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 10.75 | 10.75 | 83,850.00 |
| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 200 | 1.00 | 0.50 | 1.00 | -- | 0.50 | 10.75 | 5.38 | 1,075.00 |

A2179

**Building**

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|----------|------------|------|-------|---------|------------|------------------|
| 1 | 1976 | Residential Single Family | Residential 1 Family | Excellent | 2,835 * | Displayed |

\* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

Building Details (1)

| Building Data | |
|---------------|---|
| Element | Detail |
| Cond / Desir / Util | Very Good |
| Foundation Type | Slab |
| Grade Adjustment | A+ |
| Heating / AC | Central Heat/AC |
| Physical Condition | Average |
| Exterior Wall | Frame / Concrete Blk |
| Exterior Wall | Brick / Masonry |
| Element | Units |
| Room: Total | 10 |
| Room: Rec | 1 |
| Room: Half Bath | 1 |
| Room: Full Bath | 3 |
| Room: Bedroom | 5 |
| Fireplace: Masonry Firebrick | 1 |

| Building Areas | |
|----------------|---|
| Description | Area |
| ONE STORY MAS PRI | 105 |
| BASE AREA PRI | 532 |
| OPEN MAS PORCH PRI | 36 |
| ONE STORY MAS PRI | 504 |
| ONE STORY MAS PRI | 396 |
| ONE STORY MAS PRI | 298 |
| ONE STORY MAS PRI | 72 |
| MAS/BRK GARAGE PRI | 480 |
| BASE AREA UPR | 532 |
| ONE STORY FRAME UPR | 396 |

A2180

HCAD Ownership History

🖨 **Print**

**Ownership History: 1075160000010**

**850 SILVERGATE DR
HOUSTON TX 77079**

| Owner | Effective Date |
|-------|----------------|
| MILTON ARNOLD P | 1/2/1988 |

[end of record]

**-close window-**

A2181

F563594

1-19-78    04808 *F  563594  LST A PD        9.00

**WARRANTY DEED WITH VENDOR'S LIEN**                                    WD/VL EA

THE STATE OF TEXAS
COUNTY OF HARRIS                 } KNOW ALL MEN BY THESE PRESENTS:    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

THAT, AFFILIATED HOMES, INC., a Texas corporation, acting herein by and through its duly authorized officer, of the County of Harris,          State of Texas          (hereinafter called "GRANTORS" whether one or more), for and in consideration of the sum of TEN DOLLARS ($10.00) cash and other good and valuable considerations in hand paid by ARNOLD POWELL MILTON and wife, VIRGINIA PHILLIPS MILTON

(hereinafter called "GRANTEES" whether one or more), the receipt and sufficiency of which are hereby acknowledged and confessed, and the further consideration of the sum of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000) paid by WEYERHAEUSER MORTGAGE COMPANY OF TEXAS,

(hereinafter referred to as "BENEFICIARY") at the special instance and request of the Grantees herein, the receipt of which is hereby acknowledged and confessed, and as evidence of such advancement, the said Grantees herein have executed their Note of even date herewith for said amount payable to the order of said Beneficiary, bearing interest at the rate therein provided, principal and interest being due and payable in monthly installments of

each, commencing on June 1, 1978                     , and continuing until the principal and interest are fully paid, except that the final payment, if not sooner paid, shall be due and payable on May 1, 2008,
                    which Note is secured by the Vendor's Lien herein reserved and is additionally secured by a Deed of Trust of even date herewith, executed by the Grantees herein to WESTWOOD ASSOCIATES, a California corporation, Trustee, reference to which is here made for all purposes; and in consideration of the payment of the sum above mentioned by the Beneficiary above mentioned, Grantors hereby transfer, set over, assign and convey unto said Beneficiary and assigns, the Vendor's Lien and superior title herein retained and reserved against the property and premises herein conveyed, in the same manner and to the same extent as if said Note had been executed in Grantor's favor and by said Grantors assigned to the Beneficiary without recourse;

FILED
Jan 19  2 02 PM 1978

has   GRANTED, SOLD and CONVEYED, and by these presents does   GRANT, SELL and CONVEY, unto the said Grantees herein of County of  Harris        , State of Texas      , all that certain lot, tract or parcel of land, together with all improvements thereon, lying and being situated in the County of Harris        , State of Texas   , more particularly described as follows, to-wit:

Lot Ten (10), Block Four (4), FLEETWOOD, SECTION THREE (3), a subdivision in Harris County, Texas, according to the Map or Plat thereof recorded in Volume 224, Page 91 of the Map Records of Harris County, Texas.

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/5/2017
**Stan Stanart, County Clerk**
Harris County, Texas

Isabel C. Garcia          — Deputy     CON:22521711192181263

MIL000019


EXHIBIT
35 7/10
A. Milton

Milton000019

A2182

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

WD/VL-2B

THIS conveyance is made and accepted expressly subject to any and all restrictions, covenants, conditions, assessments, agreements, maintenance charges, royalty interests, mineral interests and reservations, and easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect and shown of record in the hereinabove mentioned County and State, and to all zoning laws, regulations, and ordinances of municipal and/or governmental authorities, if any, but only to the extent they are still in effect relating to the hereinabove described property.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Grantees, their                                          heirs and assigns forever:

and Grantor            does hereby bind itself, its successors and assigns           , to

WARRANT and FOREVER DEFEND, all and singular the said premises unto the said Grantees, their

heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof, except taxes for the current year, which have been prorated as of the date hereof and are assumed by the Grantee(s), and all easements and valid restrictions affecting the property now on file or of record in the office of the County Clerk of said County.

But it is expressly agreed and stipulated that the Vendor's Lien is retained against the above described property, premises and improvements, until the above described note    , and all interest thereon, are fully paid according to   its        face and tenor, effect and reading, when this Deed shall become absolute.

EXECUTED this the    17TH    day of    APRIL                , A.D. 1978.

AFFILIATED HOMES, INC.

By _____
                                        President

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential Information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/5/2017
**Stan Stanart, County Clerk**
Harris County, Texas

_____  **Deputy**     CON:225217|192181263
Isabel C. Garcia

MIL000020

A2183

ACK-3
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

THE STATE OF TEXAS        }      X

COUNTY OF HARRIS       }      X

     BEFORE ME, the undersigned authority, on this day personally appeared   *HENRY C. THOMPSON*

       President of AFFILIATED HOMES, INC. .              , a corporation, known to me to be the

person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that

   he    executed the same for the purposes and consideration therein expressed, as the act and deed of such

corporation, and in the capacity therein stated.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE this   *17th*   day of   *April, 1978.*

                           *Linda Kaye Woerz*

                    Notary Public in and for Harris       County, Texas

                        LINDA KAYE WOERZ
                        Notary Public           ACK-2
                    My Commission Expires   *5-31-79*

THE STATE OF TEXAS        }      X

COUNTY OF            }      X

     BEFORE ME, the undersigned authority, on this day personally appeared

       President of                        , a corporation, known to me to be the

person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that

   he    executed the same for the purposes and consideration therein expressed, as the act and deed of such

corporation, and in the capacity therein stated.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE this         day of

RETURN TO
AMERICAN TITLE COMPANY
HARRIS COUNTY ABSTRACT CO.
2ND FLOOR NIELS ESPERSON BLDG.
HOUSTON, TEXAS 77002         Notary Public in and for   .            County, Texas
GF-231836   LKW/cms

THE STATE OF TEXAS        }                   ACK-1

COUNTY OF            }

     BEFORE ME, the undersigned authority, on this day personally appeared

known to me to be the person    whose name       subscribed to the foregoing instrument, and acknowledged

to me that    he    executed the same for the purposes and consideration therein expressed.

     GIVEN under my hand and seal of office, this         day of

                     Notary Public in and for            County, Texas

---

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/5/2017
**Stan Stanart, County Clerk**
Harris County, Texas

       ___ Deputy    CON:225217/192181263

**Isabel C. Garcia**



MIL000021

A2184

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



STATE OF TEXAS
COUNTY OF HARRIS

I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

APR 19 1978

COUNTY CLERK,
HARRIS COUNTY, TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/5/2017
**Stan Stanart, County Clerk**
Harris County, Texas



Isabel C. Garcia                    Deputy         CON:22521711921181263

MIL000022

Milton000022

A2185