**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| IN RE DOWNSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | Master Docket No. 17-9002 |
| | Senior Judge Loren A. Smith |
| THIS DOCUMENT RELATES TO: | |
| ALL DOWNSTREAM CASES | |

**CORRECTED JOINT STATUS REPORT**[1]

In accordance with the Court's September 10, 2026 Order (ECF No. 619) and September 28, 2026 Order (ECF No. 628), the parties file this joint status report.

**Plaintiffs' Position**

The Court Ordered the co-lead attorneys for the plaintiffs and defendant to file a joint status and to "(1) propose a trial schedule with a proposed number of properties to assess damages; or (2) provide a plan to resolve this matter without additional litigation, including settlement." Plaintiffs' Counsel has been advised again that the government does not view the Downstream litigation as being in a settlement posture and that without a damages trial leading to a final judgment, or perhaps an interlocutory appeal of the Court's April 22, 2026 Opinion & Order (ECF No. 603), government is unwilling to engage in settlement discussions.

Plaintiffs advise the Court again of their willingness to discuss settlement directly with the government or with the assistance of a Court appointed mediator.

[1] The United States filed the parties' joint status report with typographical errors in its position statement on page five, from before the parties finalized the joint status report for filing. The United States thus files this corrected version and apologizes for any confusion.

Plaintiffs' proposed trial plan is consistent with their understanding of the Court's "Opinion & Order," (ECF No. 603), which found "JUDGMENT in favor of plaintiffs and shall be entered upon a determination of damages." Plaintiffs ask the Court to set the matter for a damages trial for the bellwether/test properties and six other properties selected by plaintiffs for a total of 18 plaintiffs' properties to be tried in the first damages trial. Plaintiffs suggest that the Court should consider setting a second damages trial after the conclusion of the first trial, with the number of plaintiffs to be tried in that second trial determined shortly after the second trial date is scheduled. Plaintiffs anticipate that the first damages trial will be instructive as to how many plaintiffs can be reasonably combined for future trials.

The parties have not yet designated damages experts nor conducted damages expert discovery, but each of the bellwether/test propriety plaintiffs were previously deposed, their properties were inspected, and some damage documentation was produced. Thus, Plaintiffs propose that the Court's scheduling order allow a reasonable period for the bellwether/test propriety Plaintiffs to supplement their production, for the additional six Plaintiffs to produce their damage documentation and to be deposed should the government so choose, for all parties to designate experts, and for expert depositions, if any, before trial.

Plaintiffs estimate that the damages trial could be completed in **15 trial days** or less. Plaintiffs propose the following scheduling deadlines:

Identification of the six non-bellwether/non-test property cases to be tried: **November 30, 2026**

Completion of fact discovery: **February 19, 2027**

Designation of Experts for Plaintiffs: **February 26, 2027**

Designation of Experts for Defendants: **March 26, 2027**

Completion of expert discovery: **April 26, 2027**

Joint Status Report due proposing schedule for pre-trial and trial proceedings: **May 4, 2027**

**Trial Date:** As scheduled in the Court's Pre-Trial Order

**The United States' Position**

The United States understands the Court's interest in moving this longstanding case forward. But as Plaintiffs reference, the United States cannot engage in settlement negotiations or mediation based on the Court's interlocutory liability decision on bellwether claims. Thus, the United States may ask the Court to issue an order under 28 U.S.C. § 1292(d)(2) to permit an interlocutory appeal of the Court's April 2026 decision. It reserves the right to do so if authorized by the Solicitor General and, by proposing a schedule below, is not waiving any right to seek interlocutory appeal of the Court's liability bellwether decision.

As to any schedule, the United States opposes Plaintiffs' proposal. Plaintiffs' proposal is inconsistent with Judge Lettow's approach in the upstream docket, which Plaintiffs have professed an interest in following. *See* Joint Status Report 3 (Sept. 8, 2026), Dkt. No. 618. Their proposed schedule would also infringe on the United States' ability to defend itself and receive a fair trial and is not feasible.

In the upstream docket, Judge Lettow first held a trial on liability, for thirteen bellwether claims. *In re Upstream Addicks & Barker (Tex.) Flood Control Reservoirs*, 146 Fed. Cl. 219, 227 (2019), *aff'd sub nom. Ablan v. United States*, 162 F.4th 1364 (Fed. Cir. 2025). He did so beginning May 6, 2019, and trial took ten days. *Id.* at 228. The court issued its liability bellwether decision on December 17, 2019. *See id.*

Next, the court narrowed the number of bellwethers from thirteen to "six test plaintiffs . . . for the just compensation phase." *In re Upstream Addicks & Barker (Tex.) Flood Control Reservoirs*, 162 Fed. Cl. 495, 502 (2022), *aff'd in part, vacated in part*, *Ablan*, 162 F.4th

at 1370. The court held a just compensation trial on those six test plaintiffs beginning May 31, 2022—about two-and-a-half years after the court issued its liability decision. *Id.* Trial lasted eleven days. *Id.*

Contrary to the upstream docket, Plaintiffs propose adding claims for the just compensation phase. They propose adding six additional plaintiffs, which is 50% more claims than the Court's liability proceedings included. It would be twelve more plaintiffs than in the upstream just compensation phase.

And yet, despite Plaintiffs' proposed increase in the number of claims, they also propose a much *shorter* period for discovery than was ultimately necessary in the upstream docket. Thus, while it took the parties about two-and-a-half years to get to trial on six bellwether claims upstream, Plaintiffs propose completing all just compensation discovery for sixteen to eighteen claims in only about five months. They seem to think this may be manageable because the liability bellwethers were deposed and produced some documents that might relate to just compensation. But hidden in Plaintiffs' claim is the fact that the parties have *never* engaged in *any* just compensation discovery. *See* Order (Apr. 19, 2018), Dkt. No. 92 (first phase about "jurisdictional and liability issues"); *see also* Scheduling Order (July 2, 2018), Dkt. No. 106 (setting schedule to "adjudicate contested issues concerning jurisdiction and a trial on liability" (capitalization altered)). Thus, Plaintiffs' proposal to complete fact discovery in just about two-and-a-half months (a period that includes all the December holidays and New Year's) fails to provide adequate time.

The significance of this case and the amounts at stake warrant sufficient time for the parties to engage in discovery and prepare their cases. Rushing through fact discovery between Thanksgiving and New Year's does not provide that time. Likewise, providing only five months

for the United States to obtain expert reports and requiring they be disclosed barely a month after the close of fact discovery is not reasonable. Trying to force the completion of all just compensation discovery on eighteen claims in less than half-a-year does not give sufficient seriousness to the issues and size and scope of this case. This is all the more apparent when it took the upstream parties two-and-a-half years to finish discovery and pretrial proceedings on just six claims.

On top of these concerns, there are problems specific to Plaintiffs' proposal to add claims to the just compensation phase. As noted, Plaintiffs seek to add six additional plaintiffs to the just compensation proceedings. Practically, that further undermines their rushed scheduling proposal because the parties have completed *no* discovery *at all* on these still-unknown plaintiffs. The United States has taken no liability discovery from these plaintiffs, so it does not know the location of their properties, whether they in fact owned them when Hurricane Harvey struck Houston, or anything else about these landowners and their claims. And it cannot begin to assess just compensation when it does not know anything about the flooding these plaintiffs experienced. Plaintiffs' proposal would, in essence, foist a mini-liability phase onto the United States at the same time as just compensation. Such a prejudicial imposition would make it impossible for the United States to defend itself. It would need to address liability for six new claims while also litigating just compensation on those and twelve other claims, all in a period of less than half-a-year, a period which, again, includes the end-of-year holidays. Judge Lettow's approach shows Plaintiffs' request is unreasonable. Judge Lettow winnowed the number of bellwethers from thirteen in the liability phase to a subset of just six, for which the parties had completed liability discovery and whose claims Judge Lettow had addressed in his liability decision. Plaintiffs, however, propose adding new claims about which the parties know nothing.

What's more, the Court cannot hold a just compensation trial or enter any just compensation judgment for plaintiffs not part of the Court's liability decision. This case is not a class action. And the Court has conducted only bellwether proceedings, finding the United States liable as to just twelve claims. *See In re Downstream Addicks & Barker (Tex.) Flood Control Reservoirs*, 181 Fed. Cl. 225, 233 (2026). It cannot enter a just compensation judgment for non-bellwether claims for which there have been no liability proceedings. The Court recognized a similar notion when it issued its order to show cause on the stayed claims after it initially dismissed the test plaintiffs in 2020. *See* Scheduling Order & Order to Show Cause (Mar. 13, 2020), Dkt. No. 208. And the doctrine of nonmutual offensive collateral estoppel does not apply against the United States. *United States v. Mendoza*, 464 U.S. 154, 157–64 (1984). So in addition to the practical impediments to adding new, non-bellwether claims to the just compensation phase, such an approach faces a legal bar too.

At bottom, if Plaintiffs believe Judge Lettow's approach provides a reasonable path forward, then the parties should follow that path: the parties should identify a subset of the liability bellwethers and take the time necessary to conduct discovery and prepare their cases. Under Plaintiffs' theory, the potential liability in this case could be in the billions of dollars. There are thousands of claims. It is not hyperbole to describe this case as one of the largest takings cases the Court of Federal Claims has heard. It should thus be given the seriousness and time necessary to litigate it that it deserves. After all, just compensation "is 'just' both to an owner whose property is taken and to the public that must pay the bill." *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 (1950). As Judge Bonilla has observed, "[t]he concept of just compensation . . . requires consideration of not only the equity due the party whose property is taken but the public fisc which must bear the burden of payment." *Collective*

*Edge, LLC v. United States*, 171 Fed. Cl. 736, 752 (2024). This is necessary because awarding a property owner more than the fair value of what he has been deprived of is "unjust to the public." *See Baumann v. Ross*, 167 U.S. 548, 574 (1897). Ensuring the United States has the time necessary to litigate and defend itself is vital to the notion of "just compensation."

To that end, the United States proposes the following schedule for next steps in the case, without prejudice to the United States seeking interlocutory appeal of the Court's April 2026 opinion:

| **Event** | **Deadline** |
|---|---|
| After meeting and conferring, the parties file a notice with the Court identifying no more than six of the existing liability bellwethers to proceed with just compensation; fact discovery on just compensation as to this subset of bellwether plaintiffs opens with the filing of this notice. | December 1, 2026 |
| Bellwether Just Compensation Fact Discovery Closes | April 30, 2027 |
| Plaintiffs' Expert Disclosure(s) Under Rule 26(a)(2) Due | July 30, 2027 |
| United States' Expert Disclosure(s) Under Rule 26(a)(2) Due | September 30, 2027 |
| Plaintiffs' Rebuttal Expert Disclosure(s), if any, Due | October 29, 2027 |
| Expert Discovery Closes | December 17, 2027 |
| Parties File a Joint Status Report Proposing Next Steps, Such as Summary Judgment or Trial | January 12, 2028 |

Dated: October 23, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/Brian R. Herman*

BRIAN R. HERMAN
Assistant Section Chief
AMBER DUTTON-BYNUM
GENEVIEVE GEIGER
ALISON VICKS
Trial Attorneys
United States Department of Justice
Energy & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 532-3278
Brian.Herman@usdoj.gov
*Counsel for the United States*

*/s/Rand P. Nolen* (with consent)

*Rand P. Nolen*
**KHERKHER GARCIA LLP**
2925 Richmond Ave., Suite 1560
Houston, Texas 77098
Telephone: (713)333-1030
rnolen@kherkhergarcia.com

*/s/Jack E. McGehee* (with consent)

Jack E. McGehee
**MCGEHEE, CHANGE, BARNES, LANDGRAF**
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
Telephone: (713) 864-4000
jmcgehee@lawtx.com

*/s/Richard Warren Mithoff* (with consent)
Richard Warren Mithoff
**MITHOFF LAW FIRM**
500 Dallas Street, Ste. 3450
Houston, Texas 77002
Telephone: (713) 654-1122
mithoff@mithofflaw.com

Appointed *Co-Lead Counsel for Plaintiffs*

*/s/Russell S. Post* (with consent)
Russell S. Post
Parth S. Gejji
Bennett Ostdiek
**BECK REDDEN L.L.P.**
4500 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 951-6292
rpost@beckredden.com

*Of Counsel for Plaintiffs*