**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| IN RE DOWNSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | Master Docket No. 17-9002 |
| | Senior Judge Loren A. Smith |
| THIS DOCUMENT RELATES TO: | (E-Filed November 20, 2026) |
| ALL DOWNSTREAM CASES | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO CERTIFY THE COURT'S APRIL 22, 2026 OPINION AND ORDER FOR INTERLOCUTORY APPEAL**

Rand P. Nolen
**KHERKHER GARCIA L.L.P.**
2925 Richmond Ave., Suite 1560
Houston, Texas 77098
Telephone: (713) 333-1030
rnolen@kherkhergarcia.com

Richard Warren Mithoff
**MITHOFF LAW**
500 Dallas Street, Ste. 3450
Houston, Texas 77002
Telephone: (713) 654-1122
mithoff@mithofflaw.com

*Of Counsel:*
Russell S. Post
Parth S. Gejji
**BECK REDDEN L.L.P.**
4500 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 951-6292
rpost@beckredden.com

## I. Introduction.

The Government asks the Court to certify its April 22, 2026 Opinion and Order ("Opinion"), Dkt. 603, for interlocutory appeal under 28 U.S.C. § 1292(d)(2). Dkt. 645. But "interlocutory appeals are reserved for exceptional or rare cases." *Fisher v. United States*, 149 Fed. Cl. 204, 206 (2020) (cleaned up); *see also Fujitsu Ltd. v. Tellabs, Inc.*, 539 F. App'x 1005, 1006 (Fed. Cir. 2013) ("Both the legislative history of Section 1292(b) and the case law emphasize that appellate courts should only grant interlocutory appeals under rare circumstances."). Section 1292(d)(2) is reserved for exceptional cases. This is not one.

The Plaintiffs' properties flooded in August 2017. More than eight years later—after a round of summary-judgment briefing, an appeal, a remand, another round of summary-judgment briefing, supplemental briefing on *Ideker Farms* and *Ablan*, a bench trial, and related briefing—on April 22, 2026, this Court found the Government liable. Dkt. 603. On November 3, 2026, the Court adopted a schedule to try damages. Dkt. 644. Three days later, the Government filed its motion. Dkt. 645. This Court should not reward the Government's delay with an opportunity to take an interlocutory appeal that will prolong this litigation even further. The Government's motion fails every requirement of § 1292(d)(2). The reasons to deny the motion are:

1. The Government waited 198 days to seek an "immediate" appeal. It waited 91 days after the deadline to seek certiorari in *Ablan* passed. That was the very event the Government said it was waiting on.

2. The motion presents no controlling question of *pure* law. The Government challenges how the Court applied binding Federal Circuit precedent to a trial record. Its own authority calls that "[t]he antithesis of a proper § 1292(b) appeal." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

3. There is no substantial ground for difference of opinion. The Federal Circuit has already answered each question the Government raises in *St. Bernard Parish*, *Ideker Farms*, *TrinCo*, and, on the same dams and the same storm, in *Ablan*. The Government chose not to seek certiorari in *Ablan*. Dkt. 645 at 8.

4. An immediate appeal would delay this case, not advance it. Each of the Government's theories would, at best, send the case back to this Court for more fact-finding. The Opinion resolves twelve bellwether claims out of more than 3,000.

The fastest route to a final resolution is the one the Court has already set: a damages trial, a final judgment, and a single appeal of both liability and damages. The motion should be denied.

## II. Background.

### A. The Court Decided Causation, Necessity, and Relative Benefits After a Full Record and a Trial.

In *Milton v. United States*, the Federal Circuit reversed this Court's dismissal and remanded with four questions. 36 F.4th 1154, 1163 (Fed. Cir. 2022). Two of them are the subject of the Government's motion: whether the Plaintiffs "established causation when considering the impact of the entirety of government actions that address the relevant risk," and "whether the Government can invoke the necessity doctrine as a defense." *Id.* (cleaned up); Dkt. 603 at 12. The parties then briefed those questions at length.[1] The Court held a trial on two questions: whether "there [was] an emergency that necessitated" opening the gates, and "[w]hat would have happened if the gates had remained closed." Dkt. 514 at 1; Dkt. 603 at 12.

After *Ablan v. United States*, 162 F.4th 1364 (Fed. Cir. 2025), issued, the Court ordered supplemental briefing on its effect. Dkt. 594. The Government argued then, as it does now, that this case is different from the upstream case and *Ablan*. Dkt. 598 at 5–10. The Plaintiffs explained why *Ablan* is squarely on point on certain issues. Dkt. 599 at 2–12.

---

[1] *See, e.g.*, Dkt. 266 at 33–49, 63–65; Dkt. 281 at 6–13; Dkt. 451 at 2–5; Dkt. 453 at 1–2 (causation, necessity, *Hardwicke*, and *Ideker Farms*); Dkt. 576 at 1–20; Dkt. 580 at 3–14 (necessity and causation after trial).

On April 22, 2026, the Court answered all four questions for the Plaintiffs. Dkt. 603. It held that the induced-surcharge releases under Section 7-05(b) effected both a temporary and a permanent taking. Dkt. 603 at 16–29. The Government does not seek review of those holdings.

On causation, the Court applied *St. Bernard Parish Government v. United States*, 887 F.3d 1354 (Fed. Cir. 2018) and *Ideker Farms, Inc. v. United States*, 71 F.4th 964 (Fed. Cir. 2023), identified the relevant risk, and measured causation against a world in which the gates stayed closed. Dkt. 603 at 29–35. It then weighed the competing expert evidence property by property, credited the Plaintiffs' expert over the Government's, and held that the test properties experienced more flooding than if the Government had kept the gates closed. Dkt. 603 at 35–37. On necessity, the Court applied *TrinCo Investment Co. v. United States*, 722 F.3d 1375 (Fed. Cir. 2013) and *Ablan* and found, on the trial record, that no actual emergency or imminent danger existed. Dkt. 603 at 37–43. Among other things, the Corps released water because its 2012 Water Control Manual "'dictated it'"; "risk of failure remained minimal"; Addicks peaked at 109.09 feet while its spillway design flood was 115 feet; Barker peaked at 101.6 feet while its spillway design flood was 108 feet; and the emergency level the Corps claims it reached applies when "'there is not an *immediate threat* of dam failure.'" *Id.* at 39–42. On relative benefits, the Court held that the Government had not carried its burden, that the benefits it offered were general rather than special, and that the issue may be developed further "with additional discovery." *Id.* at 44–47.

**B. The Government Waited More Than Six Months to Seek an Appeal.**

The Government's resistance to resolving this case predates the Opinion. In January 2026, shortly after *Ablan* issued, the Court proposed a short pause for settlement discussions. The Government opposed "any period of pausing this litigation for settlement discussions." Jan. 15, 2026 Hr'g Tr. 7:8–15, 8:7–9. It told the Court that it did "not believe that *Ablan* applies in a meaningful way" to the downstream case. *Id.* at 8:1–9.

After the Opinion issued, the Government did not move for certification. Instead, on July 14, 2026, it asked the Court to defer any schedule until it decided whether to seek certiorari in *Ablan*. This time, it argued that *Ablan* "was critical to this Court's ruling." Dkt. 607 at 4. It mentioned "any form of potential appeal in this case" only as one path forward to consider later. *Id.* at 6. The certiorari deadline was August 7, 2026. *Id.* at 1. The Court ordered the Government to report its decision by August 10. Dkt. 608.

The Government did not seek certiorari. Dkt. 618 at 1. Even so, on September 8, 2026, it asked for more time "to explore asking the Court to certify its liability decision for interlocutory appeal," and proposed that the parties report back by December 7, 2026 if no motion had been filed. *Id.* at 3. The Plaintiffs warned that this "piecemeal approach will lengthen, not shorten, final resolution of this litigation." *Id.* at 4. At the September 9, 2026 status conference, the Plaintiffs noted that the delay was already "substantial." Sept. 9, 2026 Hr'g Tr. 5:13–22. The Court directed the parties to propose a trial plan. *Id.* at 7:6–17, 8:22–9:13.

On October 23, 2026, the Government again said only that it "may" seek certification "if authorized by the Solicitor General." Dkt. 643 at 3. On November 3, 2026, the Court adopted the Plaintiffs' proposed schedule. Dkt. 644. Fact discovery closes February 19, 2027; expert discovery closes April 26, 2027; and a joint status report proposing trial dates is due May 4, 2027. *Id.* The Government filed its motion on November 6, 2026. Dkt. 645.

## III. Argument & Authorities.

### A. The Government Cannot Satisfy Section 1292(d)(2).

Certification requires the Court to find that (1) the order involves a controlling question of law, (2) there is substantial ground for difference of opinion on that question, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(d)(2).

All three requirements must be met, and the movant bears the burden on each. *See Starr Int'l Co. v. United States*, 112 Fed. Cl. 601, 603 (2013). Because § 1292(d)(2)'s language tracks § 1292(b), cases construing that statute are persuasive. *Abbey v. United States*, 89 Fed. Cl. 425, 429 (2009). Interlocutory appeals are "'reserved for exceptional or rare cases and should be authorized only with great care as to avoid unnecessary and piecemeal litigation.'" *Starr*, 112 Fed. Cl. at 603 (quoting *Jaynes v. United States*, 69 Fed. Cl. 450, 460 (2006)); *see also Fujitsu*, 539 F. App'x at 1006 ("Both the legislative history of Section 1292(b) and the case law emphasize that appellate courts should only grant interlocutory appeals under rare circumstances."). "Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). And the decision rests in the Court's "'sound discretion.'" *Starr*, 112 Fed. Cl. at 603 (quoting *Petro-Hunt, L.L.C. v. United States*, 91 Fed. Cl. 447, 452 (2010)); *see Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).

**1. The Government has delayed and this Court should not reward the delay.**

Section 1292(d)(2) speaks of an "immediate appeal" and gives a party only ten days to petition the Federal Circuit once an order is certified. 28 U.S.C. § 1292(d)(2). That structure assumes prompt action. It is abusive for a party to sit on an interlocutory ruling for months and then ask the Court to re-issue it with a certification statement. A request for certification must be made within a reasonable time. *See, e.g.*, *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675–76 (7th Cir. 2000). This Court has denied a Government certification motion as untimely where "[r]easonable diligence would have demanded that Defendant file a motion to certify for interlocutory appeal, if that was its choice, long before" it did. *Starr*, 112 Fed. Cl. at 603.

So too here. The Government filed this motion 198 days after the Opinion. Nothing in the Opinion changed in the meantime. The questions the Government now raises are not new.

The Government argued causation in its 2019 cross-motion. *See In re Downstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 147 Fed. Cl. 566 (2020), *rev'd and remanded sub nom. Milton v. United States*, 36 F.4th 1154 (Fed. Cir. 2022). The Federal Circuit remanded causation and necessity in 2022. *Milton*, 36 F.4th at 1163. And the parties briefed, re-briefed, and tried those issues before the Court decided them. The only intervening event was the Court's November 3, 2026 order adopting the Plaintiffs' schedule over the Government's objection. Dkt. 644.

The *Ablan* certiorari question does not excuse the delay. The Government has repeatedly said that *Ablan* does not control here. Jan. 15, 2026 Hr'g Tr. 8:1–9; Dkt. 598 at 10; Dkt. 618 at 2 ("Causation was not at issue in *Ablan*."). On the Government's own account, then, whether to seek Supreme Court review of the upstream judgment had nothing to do with whether to seek review of this Court's downstream rulings. And even accepting the Government's rationale, the certiorari deadline passed on August 7, 2026. Dkt. 607 at 1. The Government then waited another 91 days. Saying an interlocutory appeal "may" be sought is not seeking one. Dkt. 643 at 3; *see also* Dkt. 607 at 6. The Government's internal process for obtaining the Solicitor General's authorization is no reason to hold a case of this age in abeyance. The Plaintiffs, who have waited since 2017, should not bear the cost of that delay.

**2. The motion does not present a controlling question of pure law.**

A "question of law" under § 1292(b) means "an abstract legal issue or what might be called one of 'pure' law," which "the court of appeals 'can decide quickly and cleanly without having to study the record.'" *McFarlin*, 381 F.3d at 1258 (quoting *Ahrenholz*, 219 F.3d at 677). It "does not mean the application of settled law to fact." *Id.* Indeed, "[t]he antithesis of a proper § 1292(b) appeal is one that turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.* at 1259. That standard is from the Government's own authority. *See* Dkt. 645 at 22.

The Government calls each of its issues a "threshold, outcome-determinative legal question[]." Dkt. 645 at 13. Labels aside, each asks the Federal Circuit to revisit how this Court applied settled standards to a trial record. Takings cases are poor candidates for that exercise because liability turns on "situation-specific factual inquiries." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 32 (2012).

*Causation.* The governing rule is not disputed. A plaintiff must show what would have occurred absent the government action, considering "the impact of the entirety of government actions that address the relevant risk." *St. Bernard Parish*, 887 F.3d at 1362, 1364. The Federal Circuit framed the remand question in those exact terms. *Milton*, 36 F.4th at 1163. The dispute is over how that rule applies here: what the "relevant risk" was and which of the Government's many actions over eighty years "address[ed]" it. The Court answered that question from the record. It found that the Plaintiffs challenge a discrete 2017 decision to invoke Section 7-05(b) of the Water Control Manual, not the construction or general operation of the dams, and that the relevant risk was "intentional induced flooding from an express regulation that defendant followed." Dkt. 603 at 30–31. It called the choice of baseline "a case-specific inquiry." *Id.* at 31.

The *Hardwicke* question is no different. *See John B. Hardwicke Co. v. United States*, 467 F.2d 488 (Ct. Cl. 1972). Under *Ideker Farms*, the question is whether "a reasonable property owner at the time the taking occurred would have understood" the challenged action to be "probably within the scope of" the original project. *Ideker Farms*, 71 F.4th at 982 (cleaned up). That inquiry turns on the project's history and purpose, the development of the surrounding area, and what a reasonable landowner would expect. The Court considered each. Dkt. 603 at 33–35. That is a mixed question of law and fact, resolved on this record.

*Necessity.* Whether an "actual emergency" and "imminent danger" existed is a factual question. The parties agreed that "factual disputes necessitated a limited trial," and the first trial question was whether there was "an emergency." Dkt. 603 at 2, 12; Dkt. 514. The Government's motion confirms the point: it argues that "the evidence shows an emergency." Dkt. 645 at 20.

The Government tries to recast the Court's findings as a "hindsight" legal standard. *Id.* at 12–13, 17. But the Court's conclusion does *not* depend on hindsight. The Court relied on facts the Corps knew in real time: the Corps opened the gates because a 2012 regulation "'dictated it'"; its own risk analysis put the risk of failure at zero below 111.6 feet, while the most extreme forecast was 112 feet and Addicks peaked at 109.09 feet; the emergency level the Corps claims it reached applies when "'there is not an *immediate threat* of dam failure'"; and the Corps acted before failure was imminent. Dkt. 603 at 39–42. The post-storm Report of Performance confirmed those facts; it did not create them. *Id.* at 40–41. Because the result would be the same even if the Government's characterization of the Opinion were correct, the hindsight question is not "controlling."

*Relative benefits.* The Court did not finally resolve this defense. It held that the Government had not carried its burden on this record and stated that the Government "may better illustrate the special benefits afforded to plaintiffs' properties" "with additional discovery and time to develop its case." *Id.* at 47. The Court described the defense as "premature." *Id.* at 48. A question the Court has expressly left open is not a controlling question ripe for interlocutory review. And the Court's ruling rests on a ground the motion does not address: the benefits the Government identified were general benefits common to all Buffalo Bayou residents, not special benefits to these properties. *Id.* at 46 (citing *City of Van Buren v. United States*, 697 F.2d 1058, 1062 (Fed. Cir. 1983) and *Hendler v. United States*, 175 F.3d 1374, 1380 (Fed. Cir. 1999)). That independent ground would stand regardless of how the baseline question is answered.

**3. There is no substantial ground for difference of opinion.**

A substantial ground for difference of opinion typically requires "two different, but plausible, interpretations of a line of cases," a conflict between controlling precedent and a later Supreme Court decision, or a substantial difference of opinion among the judges of this Court. *Klamath Irrigation Dist. v. United States*, 69 Fed. Cl. 160, 163 (2005). A party's disagreement with a ruling is not enough. If it were, "virtually every ruling could be certified for interlocutory appeal." *United Launch Servs., LLC v. United States*, 139 Fed. Cl. 721, 724 (2018); *see Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("That settled law might be applied differently does not establish a substantial ground for difference of opinion."). The Government identifies no conflict in controlling authority. It points instead to its own briefs, to the length of the Court's analysis, and to cases the Court considered and distinguished. Dkt. 645 at 2, 13–18.

*Causation and Hardwicke.* The Government says that "the Court itself acknowledged" that Supreme Court precedent supports a world-without-the-dams baseline. Dkt. 645 at 13. It did not. The Court recognized that *United States v. Archer*, 241 U.S. 119 (1916), *Sanguinetti v. United States*, 264 U.S. 146 (1924), and *United States v. Sponenbarger*, 308 U.S. 256 (1939), used that baseline and then explained why they do not control: those plaintiffs challenged the "construction and operation of flood control projects, not a discrete decision made by Corps members to comply with a regulation." Dkt. 603 at 30. Distinguishing precedent is the ordinary work of a trial court. It is not evidence of a split.

The Federal Circuit's most recent decision supports the Court's Opinion. In *Ideker Farms*, the Federal Circuit affirmed a causation baseline measured against the world just before the challenged 2004 Changes, not a world without the Missouri River Mainstem System of dams and the Bank Stabilization and Navigation Project. 71 F.4th at 981–82. It also applied the *Hardwicke* rule. *Id.* at 982–85.

*Arkansas Game* does not suggest otherwise. The parties there agreed at argument to compare deviation-period flooding with flooding before the dam was built, but because the Corps' release policy "largely mimicked the pre-dam water flows," both baselines produced the same result. *Ark. Game & Fish Comm'n v. United States*, 736 F.3d 1364, 1372 n.2 (Fed. Cir. 2013); Dkt. 603 at 30–31. The court had no occasion to decide which baseline governs. Nor can the Government's suggestion that the *Hardwicke* rule may not exist, Dkt. 645 at 15, survive *Ideker Farms*, which applied it. *Hardwicke* is a precedential decision of the Court of Claims that binds this Court and Federal Circuit panels unless overruled *en banc*. *See S. Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc); Dkt. 603 at 31 n.10. The footnote in *St. Bernard Parish* the Government invokes noted that the parties had not raised *Hardwicke* and that, on those facts, the risk-increasing action came first. 887 F.3d at 1367 n.14. A footnote about a different sequence of events does not conflict with a later, directly applicable decision.

*Necessity.* The Federal Circuit has held that the necessity defense requires "an imminent danger and an actual emergency." *TrinCo*, 722 F.3d at 1378, 1380. It has warned against extending the defense to any government action that is "part of an effort" to protect the public. *Id.* at 1378. And in *Ablan*, on the same dams during the same storm, it rejected the defense because "the government, as it does in every flooding case, allocated the location of water between private citizens. In doing so, it aided some property owners (downstream residents) and harmed others (upstream residents)." 162 F.4th at 1378 (footnote omitted). The Government chose not to seek certiorari in *Ablan*. This Court applied *TrinCo* and *Ablan* to findings that the Corps did the same thing here, in reverse. Dkt. 603 at 39, 41.

The Government's contrary authorities do not change the analysis. The Restatement (Second) of Torts § 196 states a common-law tort privilege based on the actor's reasonable belief. Dkt. 645 at 17. *TrinCo* states the Fifth Amendment rule, and it binds this Court. In any event, the reasonable-belief language goes to whether the invasion was "actually necessary." *TrinCo*, 722 F.3d at 1380 ("The defense requires both an actual emergency and an imminent danger met by a response that is actually necessary."). The Court did not reach that element because the Plaintiffs did not dispute the reasonableness of the releases. Dkt. 603 at 38. The Court decided the case on the antecedent prerequisites *TrinCo* requires.

The Government's reliance on *TrinCo* on remand fares no better. That decision drew the same line this Court drew: the "actually necessary" component is measured at the time of the emergency, while the existence of an actual emergency and imminent danger is a separate inquiry. *Id.* at 37–38 (citing *TrinCo Inv. Co. v. United States*, 130 Fed. Cl. 592, 599, 601 (2017)).

*Orr v. United States*, 166 Fed. Cl. 1 (2023), turned on its facts: by the Government's own description, a reservoir within inches of the top of its operational pool and at risk of overtopping its gates. Dkt. 645 at 18. Here, the Court found the reverse. Dkt. 603 at 41. Different outcomes on different records are not a split of authority. And *Orr* predates *Ablan*.

Finally, *Baker v. City of McKinney*, 84 F.4th 378 (5th Cir. 2023), concerned police damaging property during an "'active emergency.'" Dkt. 645 at 17–18. Indeed, *Ablan* itself cited *Baker* for the distinction between "'flooding case[s]'" and "'necessity during an active emergency.'" *Ablan*, 162 F.4th at 1378 n.6 (quoting *Baker*, 84 F.4th at 384–85). *Baker* supports the Plaintiffs, not the Government.

*Relative benefits.* The Government cites *Sponenbarger*, *Stueve Bros. Farms, LLC v. United States*, 737 F.3d 750 (Fed. Cir. 2013), and *Alford v. United States*, 961 F.3d 1380 (Fed. Cir. 2020). Dkt. 645 at 16. The Court considered *Sponenbarger* and *Alford*. Dkt. 603 at 44–47.

*Stueve Bros.*, by the Government's own description, asked whether "the construction" of a flood-control project imposed a greater flood burden than the land bore before construction, not whether a later, discrete operational decision did. Dkt. 645 at 16. And in *Ideker Farms*, the Federal Circuit held that "the benefits of the 1944 FCA should not be weighed against the detriments of the 2004 Changes." 71 F.4th at 985–86. The Court followed that holding. Again, the special-versus-general-benefits ruling stands independently. Dkt. 603 at 46–47.

**4. An immediate appeal would not materially advance the ultimate termination of this litigation.**

An immediate appeal "materially advance[s]" the litigation when it "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. The liability trial is over. The only proceeding left is the damages phase the Court just scheduled. Dkt. 644. An interlocutory appeal would add a second appeal to this case, not shorten it.

*Reversal would not end the case.* The Government concedes that an appeal "might not immediately and automatically lead to judgment for the United States." Dkt. 645 at 20. That is an understatement.

On causation, the Court never made findings on a world without the dams; having adopted the gates-closed baseline, it declined to reach Dr. Nairn's no-dams model. Dkt. 603 at 36. The Government now asserts that "[t]he evidence is uniform" on that hypothetical. Dkt. 645 at 19. It is not, and the Court found Dr. Nairn's work less reliable on the scenarios it did reach. Dkt. 603 at 36–37. A reversal would require new findings, and likely new evidence, on a counterfactual Houston without the dams.

On necessity, a new standard would require the Court to reweigh the trial record. And on the Court's existing findings, the result would be the same.

On relative benefits, the Court has left the issue open for further development. *Id.* at 47. In the upstream case, the Federal Circuit took up the related special-benefits question when it reviewed the damages decision. *See Ablan*, 162 F.4th at 1383.

*The appeal would reach twelve claims out of more than 3,000.* The Opinion decides liability for the bellwether properties only. The Government has told the Court that it "cannot enter a just compensation judgment for non-bellwether claims for which there have been no liability proceedings." Dkt. 643 at 6.[2] On the Government's own view, then, a Federal Circuit ruling on twelve bellwether claims would not terminate the litigation as to the thousands of others. The damages bellwethers, by contrast, are designed to inform how all claims are valued.

*The final-judgment path is faster.* Under the Court's schedule, expert discovery closes April 26, 2027. Dkt. 644. An interlocutory appeal would take far longer. The Federal Circuit would first have to decide whether to accept the petition. Once an appeal is docketed, its median time to decision in appeals from this Court was 16.5 months in fiscal year 2025.[3] A decision would likely arrive in 2028, after the time in which damages could be tried and judgment entered. Moreover, a remand after an interlocutory appeal would then restart proceedings in this Court, and a second appeal after damages would follow. That is exactly the "piecemeal approach" the Plaintiffs warned against. Dkt. 618 at 4.

---

[2] The Government believes "there may be significantly more than 3,000 claims in the downstream sub-docket." Dkt. 607 at 5 n.1.

[3] U.S. Court of Appeals for the Federal Circuit, *Median Time to Disposition in Cases Terminated After Hearing or Submission* (FY 2025), https://www.cafc.uscourts.gov/wp-content/uploads/reports-stats/FY2025/MedianDispositionTime-Merits.pdf (16.5 months for appeals from the Court of Federal Claims in FY 2025; 17.0 months in FY 2024).

The upstream case shows the better course. There, the case proceeded from the liability decision to a just compensation trial and judgment, and the Federal Circuit reviewed liability, class certification, and damages in a single appeal. *Ablan*, 162 F.4th at 1370; Dkt. 643 at 3–4. The Government urged the Court to “follow that path.” Dkt. 643 at 6. It should be held to that position.

*The baseline-and-valuation argument proves too much.* The Government argues that the damages phase may proceed “based on incorrect legal standards.” Dkt. 645 at 2. That risk exists in every case in which liability is decided before damages. If it justified certification, every liability ruling would be certified. The Opinion is the law of the case for the damages phase, and the Government can preserve its objections for a single appeal from final judgment.

*An appeal would not promote settlement.* The Government opposed even a short pause for settlement discussions before the Opinion issued. Jan. 15, 2026 Hr’g Tr. 7:8–15, 8:7–9. It has refused to negotiate since. Dkt. 643 at 1, 3. The Plaintiffs have repeatedly offered to mediate, with or without a court-appointed mediator. Dkt. 607 at 3; Dkt. 618 at 3; Dkt. 643 at 1. The Government says it “likely needs to be able to test the Court’s liability decision on appeal.” Dkt. 618 at 2. An appeal from final judgment gives it that test only once and with a damages record in hand. A damages determination gives both sides what they need to value these claims. A ruling on bellwether liability does not.

**B. The Court Should Exercise Its Discretion to Deny Certification.**

The Government’s real argument for an “exceptional” case is size: thousands of claims and “possibly billions of dollars.” Dkt. 645 at 3. But size does not make settled legal questions unsettled. Every large judgment against the United States affects the public fisc. If that were enough, every significant takings case would qualify for interlocutory review. The Federal Circuit framed the remand questions here, and it will review this Court’s answers in the ordinary course.

The equities point the same way. The Government took the Plaintiffs' properties in 2017. Some were displaced for months; some for up to a year. Dkt. 603 at 18, 23. They have litigated a dismissal, an appeal, a remand, two rounds of summary-judgment briefing, and a trial. These downstream property owners deserve to have their day in court and receive just compensation.

**IV. Conclusion.**

The Court should deny the United States' Motion to Certify the Court's April 22, 2026 Opinion and Order for Interlocutory Appeal. Dkt. 645. Plaintiffs seek all relief to which they may be justly entitled.

Respectfully submitted this 19th day of November, 2026.

/s/ Rand P. Nolen
Rand P. Nolen
**KHERKHER GARCIA L.L.P.**
2925 Richmond Ave., Suite 1560
Houston, Texas 77098
Telephone: (713) 333-1030
rnolen@kherkhergarcia.com

*Appointed Co-Lead Counsel for Plaintiffs*

/s/ Richard Warren Mithoff
Richard Warren Mithoff
**MITHOFF LAW**
500 Dallas Street, Ste. 3450
Houston, Texas 77002
Telephone: (713) 654-1122
mithoff@mithofflaw.com

*Appointed Co-Lead Counsel for Plaintiffs*

*Of Counsel:*

Russell S. Post
Parth S. Gejji
Bennett Ostdiek
**BECK REDDEN L.L.P.**
4500 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 951-6292
rpost@beckredden.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing instrument was served on all counsel of record registered for electronic service via CM/ECF on November 19, 2026.

*/s/ Rand P. Nolen*
Rand P. Nolen